**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

M.A., et al.,

*Plaintiffs*,

v.

Alejandro Mayorkas, Secretary of the Department of Homeland Security, in his official capacity, et al.,

*Defendants.*

No. 23-cv-_______________

**PLAINTIFFS' UNOPPOSED[1] MOTION FOR LEAVE TO PROCEED UNDER PSEUDONYMS AND TO FILE SUPPORTING EXHIBITS UNDER SEAL**

Plaintiffs are 13 asylum seekers who have suffered past persecution and fear continued persecution in their countries of origin and in Mexico, which has been designated as a third country of removal or return for some. Plaintiffs fear that their persecution will become more severe if their identities and status as asylum applicants are publicly disclosed. Because of the "sensitive and highly personal" nature of their cases, they seek leave to proceed under the pseudonyms M.A., R.S., M.P., J.P., E.B., M.N., K.R., M.R., B.H., L.A., R.V., Y.F., and M.S. *See Nat'l Ass'n of Waterfront Emp'rs v. Chao*, 587 F. Supp. 2d 90, 99 (D.D.C. 2008). Plaintiffs ask this Court to grant them leave to proceed under a pseudonym for the following reasons: (1) The complaint filed contemporaneously with this motion and subsequent pleadings will contain sensitive, personal information, including details of trauma they suffered, of Plaintiffs' abusers, and of Plaintiffs'

[1] Pursuant to Local Civil Rule 7(m), Plaintiffs' counsel conferred with Defendants' counsel, who indicated that Defendants do not oppose the relief requested in this motion.

current whereabouts; (2) Plaintiffs are at risk of harm in their countries of origin and/or in Mexico; (3) Some plaintiffs have been forced to return to Mexico while they wait for the opportunity to seek asylum while other plaintiffs face imminent removal from the United States to their countries of origin or have been deported and are in hiding in their countries of origin; (4) Plaintiffs fear that, should their information become public, they would likely become victims of retributive violence in their countries of origin and/or in Mexico; and (5) Plaintiffs fear that, should their information become public, their family members could become victims of retributive violence. For these reasons, Plaintiffs respectfully request leave to proceed pseudonymously.

Plaintiffs also respectfully move this Court for leave to file under seal Plaintiffs' declarations in support of this motion, *see attached* Exhibits, which contain their full names and sensitive, personal information about their asylum claims.

## I. The Use of Pseudonyms Is Justified Here.

While the general rule is that complaints state the names of the parties, *see* Fed. R. Civ. P. 10(1), this Court has the discretion to allow a plaintiff to proceed anonymously. *See United States v. Microsoft Corp.*, 56 F.3d 1448, 1464 (D.C. Cir. 1995). Courts may permit the use of pseudonyms when "the impact of the plaintiff's anonymity" outweighs "the public interest in open proceedings and on fairness to the defendant." *Chao*, 587 F. Supp. 2d at 99; *see also Qualls v. Rumsfeld*, 228 F.R.D. 8, 10 (D.D.C. 2005). At the time of filing, plaintiffs need only make a "colorable argument in support of the request." *Qualls*, 228 F.R.D. at 10. Courts examine: (1) whether the plaintiff's request is intended "to preserve privacy in a matter of a sensitive and highly personal nature"; (2) whether the plaintiff has a reasonable expectation of "physical or mental harm"; (3) whether the plaintiff is a minor; (4) whether the defendant is the government; and (5) the type of prejudice the defendant might experience if the plaintiff proceeds anonymously. *Chao*, 587 F. Supp. 2d at 99; *see also United States v. Hubbard*, 650 F.2d 293, 317–21 (D.C. Cir.

1980) (setting forth a balancing test that considers, inter alia, "the strength of the . . . property and privacy interests" involved with the "possibility of prejudice" to those opposing disclosure). Courts in this District have exercised broad discretion to "allow plaintiffs to proceed under a pseudonym in cases involving matters of a sensitive and highly personal nature." *Doe v. Cabrera*, 307 F.R.D. 1, 4 (D.D.C. 2014) (citing *Chao*, 587 F.Supp.2d at 99); *see also Yaman v. U.S. Dep't of State*, 786 F.Supp.2d 148, 152–53 (D.D.C. 2011); *Doe v. Von Eschenbach*, No. 06–2131, 2007 WL 1848013, at *2 (D.D.C. June 27, 2007).

Here, Plaintiffs' claims are sensitive and highly personal. Plaintiffs are asylum seekers who face a significant risk of persecution—including possible physical harm or death—if their identities are publicly revealed through this lawsuit. Each of the Defendants is a government agency or official sued in an official capacity, and Defendants will experience no prejudice from allowing Plaintiffs to proceed pseudonymously. In light of the extreme sensitivities of Plaintiffs' case and the potential danger posed to Plaintiffs and their families, the public interest does not require the use of their full names. In short, the relevant factors in this case weigh heavily in favor of allowing Plaintiffs to proceed under pseudonyms. *See Chao*, 587 F. Supp. 2d at 99.

### A. Plaintiffs' Claims Are Sensitive and Highly Personal, and Public Disclosure Could Result in Physical or Mental Harm to Plaintiffs and Their Families.

Plaintiffs seek to proceed under pseudonyms to protect their privacy and safety, as well as the safety of family members who remain in their countries of origin. While the public typically has an interest in "knowing the facts surrounding judicial proceedings," this case is one in which anonymity is necessary "to preserve privacy in a matter of a sensitive and highly personal nature" and to protect Plaintiffs from possible future harm. *Doe v. Von Eschenbach*, 2007 WL 1848013, at *1–2 (D.D.C. June 27, 2007).

Each of Plaintiffs' asylum claims is highly sensitive and personal:

<u>Plaintiff M.A.</u> fled her native Guatemala following continual abuse and threats by her husband, a member of the MS-13 gang, and his cohorts. Over the year of their marriage, M.A. endured constant abuse, including rape and a knife stabbing. After she separated from him, her husband continued to target her and her family at their home, warning that he would not let M.A. live. In April 2023, a group of men, including her husband, broke into her parents' house and gang-raped her. When M.A. was finally able to walk following the gang rape, she tried to file a police report but they would not take her report seriously, forcing M.A. to flee for her life. She was unable to feel safe in Mexico because of her husband's connections through his gang throughout that country. Despite her fear of persecution in Guatemala, she was deported there on or about June 17, 2023. She now lives in hiding from her husband and his gang.

<u>Plaintiff R.S.</u> is a Salvadoran woman who was forced to flee her country after a members of a gang killed her brother and began targeting and threatening her. In 2022, gang members barged into the house where R.S. was staying and attacked her, torturing her over the course of a day to the point that they broke one of her ribs. She was also sexually assaulted at gunpoint. When the gang members finally left, they issued her a death threat and warned that they would kill her family if she went to the police. Thus, R.S. had to flee to the United States. On the way, while traveling through Mexico, she was robbed by men who targeted her and other migrants. R.S. is now facing imminent deportation to El Salvador despite her fear of persecution there.

<u>Plaintiff M.P.</u> had to flee his native Guatemala after his sister-in-law was brutally attacked by a group associated with organized crime. In early May 2023, M.P.'s sister-in-law was stopped and pulled off a motorcycle, and subsequent beaten and kicked in the head, while M.P. was forced to watch at a gun-point. After, M.P. received death threats himself. As a result, M.P., his sister-in-law, and her children decided to flee. While the family traveled through Mexico, they were stopped

several times by criminals who demanded extortion payments to allow migrants to pass. M.P. has been deported to Guatemala despite his fear of persecution there.

Plaintiff J.P. is a political activist associated with an opposition political party in Venezuela. He organized and participated in various demonstrations against the government under President Nicolas Maduro. As a result, he was beaten and threatened by members of the Venezuelan national guard and a paramilitary organization, los colectivos. After fleeing, he was the victim of violence in Mexico twice: First, on his way to the U.S.-Mexico border, cartel members forced him and others to get off a bus and beat and robbed them; then, he was robbed by police officers while in Juarez, and threatened with death if he attempted to seek help. J.P. is currently living in a migrant camp in Matamoros, Mexico, where he is fearful for his life given the violence he has already experienced.

Plaintiff E.B. is a Venezuelan man who fled to the United States because of threats from the paramilitary group, los colectivos. As a government employee, E.B. refused to participate in government corruption, leading to targeting by los colectivos, who work alongside the government. On his way to the United States through Mexico, E.B. was detained by Mexican immigration officials, who ordered him to leave the country within 15 days. E.B. attempted to seek asylum in the United States, but was forced to return and wait in Mexico. He is now living in fear in Matamoros, which is notoriously dangerous, especially for migrants.

Plaintiff M.N. is a native of the Dominican Republic who had to flee for her safety from her stepfather. For about the past year, M.N. and her mother endured physical and emotional abuse at the hands of her stepfather. After her stepfather beat and raped M.N., her mother tried to file a report with the police but they did not protect her. When M.N. went into hiding several hours away, her stepfather was able to find her. He appeared outside her hiding spot with a gun, threatening to kill her. M.N. decided to flee to the United States, and on the way, she was physically

and sexually assaulted, and robbed while traveling through Mexico. She is now facing imminent deportation to the Dominican Republic despite her fear of persecution there.

Plaintiff K.R. is a Honduran woman who has been threatened, extorted, and beaten by members of a powerful gang because of her defiance of them. She has resisted their efforts to recruit her teen children. As a result, gang members beat and sexually assaulted K.R., including multiple times in front of her children. In February 2023, the gang issued their last warning to K.P. that they would kill her if she did not comply, forcing the family to flee. They did not feel safe in Guatemala or Mexico because of the gang's connections in those countries. While in Mexico, the family was assaulted and robbed by people dressed as police. K.P. was separated from her children, who have found shelter in the United States, but she now faces imminent deportation to Honduras despite her fear of persecution there.

Plaintiff M.R. is a former business owner from Ecuador who had to flee after being threatened with death by a gang of narco-traffickers. Members of a powerful criminal cartel, together with police officers, kidnapped and tortured him over multiple days. M.R. tried to report the kidnapping, but the prosecutors refused to accept the complaint. Because he could not get protection and continued to be threatened, M.R. fled to the United States. On his way, he was kidnapped in Mexico by cartel members and held for four days. M.R. now faces imminent deportation to Ecuador despite his fear of persecution there.

Plaintiff B.H. is a woman from Peru who fled political persecution in that country. B.H. was targeted by members of a criminal organization with ties throughout Peru that targets people like B.H. who support a change in government. This group threatened her with death after she participated in political events on their territory. B.H. fled after the group of six men beat her repeatedly and threatened her at gunpoint, and she received no help from police. On the way

traveling through Mexico, she was robbed of her belongings. B.H. now faces imminent deportation to Peru despite her fears of persecution there.

Plaintiff L.A. fled his native Nicaragua after facing political persecution based on his opposition to the ruling party in that country. Because of his work, L.A. was targeted by supporters of the Sandinista government, including being threatened at gunpoint on multiple occasions. In 2022, L.A. and his sons fled for their lives, but met with repeated violence in Mexico, including assault, robbery, kidnapping, and other physical violence. L.A. currently faces removal to Mexico, where he faced significant violence already and where he fears further deportation to Nicaragua despite his fear of persecution there.

Plaintiff R.V. is a man from El Salvador who fled political persecution. He was beaten and threatened by police following his participation in a protest against the policies of the Salvadoran government. After R.V. and his wife fled, they faced a terrifying attempted kidnapping in Mexico. R.V. and his wife were separated from each other shortly after entering the United States to seek shelter. He now faces imminent deportation to El Salvador despite his fear of persecution there.

Plaintiff Y.F. fled her native El Salvador after repeated threats by a gang whose crime she had witnessed. The powerful local gang murdered a man right in front of Y.F.'s business, leading gang members to believe that she cooperated with the police in the murder investigation. As a result, she was threatened with death and nearly raped in public. Y.F. fled for safety, but was robbed multiple times on her way traveling through Mexico. She now faces imminent deportation to El Salvador despite her fear of persecution there.

Plaintiff M.S. is a Brazilian man who fled after receiving threats for his participation in a police investigation of a crime involving a powerful local gang. M.S. could not seek safety on his way to the border, particularly in Mexico, where he is easily identifiable as a migrant because he speaks Portuguese. M.S. faces imminent deportation to Brazil despite his fear of persecution there.

Given these dangers, Plaintiffs face further risk of harm if their identities were disclosed publicly. They fled their countries of origin because they were persecuted and/or feared persecution if they remained. As asylum seekers fleeing danger, they fall within a particularly vulnerable class of migrants for whom confidentiality about the nature and existence of their claims is particularly important, as their "identification [could] create[] a risk of retaliatory physical or mental harm." *Qualls*, 228 F.R.D. at 10-11 (internal quotation marks and citation omitted); *see also* U.N. High Comm'r for Refugees, *Advisory opinion on the rules of confidentiality regarding asylum information* ("UNHCR Advisory Opinion") (Mar. 31, 2005) at 2-3, http://www.refworld.org/docid/42b9190e4.html ("[P]rivacy and its confidentiality requirements are especially important for an asylum-seeker, whose claim inherently supposes a fear of persecution by the authorities of the country of origin and whose situation can be jeopardized if protection of information is not ensured."). Indeed, if Plaintiffs' persecutors learned of their asylum claims, this lawsuit, or the circumstances of Plaintiffs' immigration to the United States and current whereabouts, it could leave them in significant danger.

The federal immigration regulations reflect this concern for the sensitivity of asylum applications and the attendant need for confidentiality. Asylum regulations provide for the confidentiality of asylum applicants and credible fear interviewees, including the fact that an applicant has applied for asylum or received a credible fear interview. *See* 8 C.F.R. §§ 208.6, 1208.6. The Department of Homeland Security has acknowledged the importance of these regulations to the future safety of asylum applicants. *See Anim v. Mukasey*, 535 F.3d 243, 253 (4th Cir. 2008) ("As DHS recognizes, the confidentiality regulations are of utmost importance in protecting asylum applicants because the 'regulations safeguard information that, if disclosed publicly, could subject the claimant to retaliatory measures by government authorities or non-state actors in the event that the claimant is repatriated, or endanger the security of the claimant's family

members who may still be residing in the country of origin.'") (quoting U.S. Citizenship & Immig. Serv. Asylum Div., U.S. Dep't of Homeland Sec., *Fact Sheet: Fed. Regulations Protecting the Confidentiality of Asylum Applicants* (2005)). For the same reasons, when the Board of Immigration Appeals issues published asylum-related decisions, it routinely uses only the initials of the applicant. *See, e.g., Matter of M-H-Z-*, 26 I. & N. Dec. 757 (B.I.A. 2016).

In recognition of the powerful interest that asylum seekers possess in maintaining their confidentiality, numerous courts have allowed them to proceed with pseudonyms or initials. *See, e.g.*, *Nora v. Wolf*, No. 1:20-CV-00993, 2020 WL 12956896, at *2 (D.D.C. Apr. 16, 2020); *O.A. v. Trump*, No. 18-cv-2718, 2019 WL 3536334 (D.D.C. Aug. 2, 2019), ECF No. 3; *N.L.A. v. Holder*, 744 F.3d 425, 428 n.1 (7th Cir. 2014); *Doe v. Holder*, 736 F.3d 871, 872 n.1 (9th Cir. 2013); *Doe v. Holder*, 651 F.3d 824, 826 (8th Cir. 2011); *Al Otro Lado, Inc. v. Nielsen*, 2017 WL 6541446, at *8 (S.D. Cal. Dec. 20, 2017); *M.M.M. v. Sessions*, No. 18-1759-BAH (D.D.C. July 27, 2018), ECF No. 2; *M.G.U. v. DHS*, No. 18-cv-1458-BAH (D.D.C. June 21, 2018), *Ms. L. v. ICE*, No. 18-428 (S.D. Cal. Mar. 6, 2018), ECF No. 26.

### B. Defendants Are Government Officials Who Will Not Be Prejudiced, and The Public Interest Will Be Served.

Allowing Plaintiffs to proceed pseudonymously is especially appropriate where, as here, Defendants are government officials sued in their official capacity. *See, e.g.*, *Chao*, 587 F. Supp. 2d at 99 n.9 ("[W]hen a plaintiff challenges the government or government activity, courts are more like[ly] to permit plaintiffs to proceed under a pseudonym than if an individual has been accused publicly of wrongdoing." (citing *Yacovelli v. Moeser*, 2004 WL 1144183, at *8 (M.D.N.C. May 20, 2004))).

Moreover, Defendants will suffer no prejudice should Plaintiffs be allowed to proceed under pseudonym. Because Defendants will know Plaintiffs' true identities, allowing Plaintiffs to

proceed pseudonymously would pose no "risk of unfairness to the opposing party." *Chao*, 587 F. Supp. 2d at 99; *see also Al Otro Lado*, 2017 WL 6541446, at *6 (finding no prejudice to government defendants who "know the Individual Plaintiffs' names" and "have the information they need to defend against the claims"). Additionally, any public interest in disclosing Plaintiffs' identities is greatly outweighed by the significant risk of harm that such disclosure would pose to Plaintiffs. Finally, forcing Plaintiffs to publicly expose their identities, including to their persecutors, in order to pursue litigation "creates an unnecessary risk of chilling the willingness of asylum seekers from litigating important issues like the ones raised in this case." *Al Otro Lado*, 2017 WL 6541446, at *7. Thus, permitting Plaintiffs to use pseudonyms "will serve the public's interest in this lawsuit by enabling it to go forward." *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1073 (9th Cir. 2000).

## II. Pseudonymous Plaintiffs Should Be Permitted To File Their Declarations Under Seal in Support of This Motion

Courts in this District and the D.C. Circuit have recognized that the presumption in favor of public access to court filings "is not without its time-honored exceptions," including the need to protect the "privacy . . . of victims of crimes." *Hubbard*, 650 F.2d at 315 (citing *Nixon v. Warner Communications*, 435 U.S. 589, 598 (1978)); *see also Hamen v. Islamic Republic of Iran*, No. CV 16-1394, 2018 WL 3459914, at *2 (D.D.C. July 18, 2018) (granting leave for witness to testify under seal where witness alleged his safety would be put at risk if his testimony were made public, particularly since he had been detained one before). The D.C. Circuit has established a six-factor "*Hubbard* test" for assessing the need for privacy, requiring courts to weigh:

> (1) the need for public access to the documents at issue; (2) the extent of previous public access to the documents; (3) the fact that someone has objected to disclosure, and the identity of that person; (4) the strength of any property and privacy interests asserted; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced during the judicial proceedings.

*E.E.O.C. v. Nat'l Children's Ctr., Inc.*, 98 F.3d 1406, 1409 (D.C. Cir. 1996) (citing *Hubbard*, 620 F.2d at 317-22).

The relevant factors, like the related concerns governing the use of pseudonyms, weigh in favor of allowing Plaintiffs to file their declarations in support of this motion under seal. This Court has recognized that where the moving party's "safety will be at risk" if the public is provided unrestricted access to court filings, the fourth *Hubbard* factor "weighs strongly in favor of sealing." *Hamen*, 2018 WL 3459914, at *2. The high risk of physical harm or death faced by Plaintiffs—all of whom have been or imminently will be sent to places where they fear for their safety—demonstrates that their need for confidentiality outweighs the public's interest in knowing the details of their persecution. As asylum seekers, they are particularly vulnerable and confidentiality is particularly important—as the government has frequently recognized. *See supra* at Section I.

The second *Hubbard* factor, "the extent of previous public access" also weighs against disclosure because Plaintiffs have not previously filed federal court documents containing their names or other sensitive details that they wish to conceal from the public record. *See Hamen v. Islamic Republic of Iran*, No. CV 16-1394 (RDM), 2018 WL 3459914, at *2 (D.D.C. July 18, 2018). The third *Hubbard* factor, "the fact that someone has objected to disclosure, and the identity of that person," also weighs against disclosure as Plaintiffs hereby vigorously object to filing unsealed declarations due to their fear for their safety and the safety of their loved ones. *Id*. The sixth *Hubbard* factor, the "purpose of the information," also weighs against disclosure because personal details concerning Plaintiffs are not "relevant . . . to the central claims of the litigation." *Id*. at *3 (quoting *United States v. Harris*, 204 F. Supp. 3d 310, 17-18 (D.D.C. 2016).

The countervailing interests in complete disclosure are minimal or nonexistent. The public's interest, if any, in knowing Plaintiffs' identities and the sensitive details of their persecution is negligible. To be sure, the issues that Plaintiffs raise in this lawsuit are important

ones and may well be a matter of concern to the general public. Yet the public will be able to gain a comprehensive understanding of the basis of their claims for relief based on the complaint and other public filings in this case. Defendants will not face any prejudice if this Court provides leave for Plaintiffs to file their declarations in support of this motion under seal, as Defendants will have access to all of the information required to prepare their defense in this case.

**CONCLUSION**

For the foregoing reasons, Plaintiffs should be permitted to proceed in this suit under their proposed pseudonyms and to file their declarations in support of this motion under seal.

Dated: June 23, 2023

Respectfully submitted,

s/Keren Zwick .
Keren Zwick (D.D.C. Bar. No. IL0055)
Richard Caldarone (D.C. Bar No. 989575)*
Mary Georgevich*
National Immigrant Justice Center
224 S. Michigan Avenue, Suite 600
Chicago, IL 60604
(312) 660-1370
*kzwick@heartlandalliance.org*
*rcaldarone@heartlandalliance.org*
*mgeorgevich@heartlandalliance.org*

Melissa Crow (D.C. Bar. No. 453487)
Center for Gender & Refugee Studies
1121 14th Street, NW, Suite 200
Washington, D.C. 20005
(202) 355-4471
*crowmelissa@uchastings.edu*

Anne Dutton*
Center for Gender & Refugee Studies
200 McAllister Street
San Francisco, CA 94102
(415) 581-8825
*duttonanne@uchastings.edu*

Katrina Eiland*
Cody Wofsy (D.D.C. Bar No. CA00103)
My Khanh Ngo*
Morgan Russell*
American Civil Liberties Union Foundation
Immigrants' Rights Project
39 Drumm Street
San Francisco, CA 94111
T: (415) 343-0770
F: (415) 395-0950
*keiland@aclu.org*
*cwofsy@aclu.org*
*mngo@aclu.org*
*mrussell@aclu.org*

Judy Rabinovitz*
Omar C. Jadwat*
Lee Gelernt (D.D.C. Bar No. NY0408)
American Civil Liberties Union Foundation
Immigrants' Rights Project
125 Broad Street, 18th Floor
New York, NY 10004
T: (212) 549-2660
F: (212) 549-2654
*jrabinovitz@aclu.org*
*ojadwat@aclu.org*
*lgelernt@aclu.org*

*Attorneys for Plaintiffs*

Arthur B. Spitzer (D.C. Bar No. 235960)
Scott Michelman (D.C. Bar No. 1006945)
American Civil Liberties Union Foundation
of the District of Columbia
915 15th Street, NW, 2nd floor
Washington, D.C. 20005
(202) 457-0800
*aspitzer@acludc.org*
*smichelman@acludc.org*

**Certificate of pro bono representation forthcoming*

**CERTIFICATE OF SERVICE**

I hereby certify on June 23, 2023, I will cause a copy of this motion, supporting exhibits (under seal) and proposed order to be served on the following, together with the summons and complaint:

ALEJANDRO MAYORKAS
Secretary of the Department of Homeland Security
245 Murray Lane, SW
Washington, DC 20528;

U.S. DEPARTMENT OF HOMELAND SECURITY
245 Murray Lane, SW
Washington, DC 20528;

UR JADDOU
Director of U.S. Citizenship and Immigration Services
245 Murray Lane, SW
Washington, DC 20528;

U.S. CITIZENSHIP AND IMMIGRATION SERVICES
5900 Capital Gateway Drive
Camp Springs, MD 20746

TROY A. MILLER
Acting Commissioner of U.S. Customs and Border Protection
1300 Pennsylvania Ave, NW
Washington, DC 20229;

U.S. CUSTOMS AND BORDER PROTECTION
1300 Pennsylvania Ave, NW
Washington, DC 20229;

TAE D. JOHNSON
Acting Director of Immigration and Customs Enforcement
500 12th Street, SW
Washington, DC 20536;

U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT
500 12th Street, SW
Washington, DC 20536;

MERRICK GARLAND
Attorney General of the United States
950 Pennsylvania Avenue, NW
Washington, DC 20530;

U.S. DEPARTMENT OF JUSTICE
950 Pennsylvania Avenue, NW
Washington, DC 20530;

DAVID NEAL
Director of the Executive Office for Immigration Review
5107 Leesburg Pike
Falls Church, VA 22041;

EXECUTIVE OFFICE OF IMMIGRATION REVIEW,
5107 Leesburg Pike
Falls Church, VA 22041

s/Keren Zwick
Keren Zwick
National Immigrant Justice Center
224 S. Michigan Avenue, Suite 600
Chicago, Illinois 60604