# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

M.A., et al.,                    )

                             )

        *Plaintiffs*,        )   Case No. 1:23-cv-01843-TXC

                             )

        v.                  )

                             )

Alejandro Mayorkas, Secretary of the Department  )

of Homeland Security, in his official capacity, et  )

al.,                          )

                             )

        *Defendants*.      )

_____  )

## *AMICUS CURIAE* BRIEF OF FORMER IMMIGRATION JUDGES & FORMER MEMBERS OF THE BOARD OF IMMIGRATION APPEALS IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

John R. Jacob
D.C. Bar No. 444412
AKIN GUMP STRAUSS HAUER
  & FELD LLP
2001 K Street, N.W.
Washington, D.C. 20006
Tel: (202) 887-4000
Fax: (202) 887-4288
Email: jjacob@akingump.com


*Counsel to Amici Former Immigration Judges & Former Members of the Board of Immigration Appeals*

# TABLE OF CONTENTS

IDENTITY AND INTEREST OF AMICUS CURIAE ................................................................1

INTRODUCTION ...............................................................................................................1

ARGUMENT ......................................................................................................................4

      I.      The Rule Improperly Curtails Relief For Non-Mexicans Seeking To Escape
            Persecution And Torture And Undermines The Integrity Of The Expedited
            Removal Process. ...................................................................................... 4

      II.     The Rule Will Prolong And Complicate The Expedited Removal Process
            And Subsequent Proceedings And Result In No Or, At Best, Lesser
            Protections For *Bona Fide* Asylum Seekers. ........................................... 9

CONCLUSION ...............................................................................................................12

APPENDIX A ................................................................................................................... i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Grace v. Barr*,
   965 F.3d 883 (D.C. Cir. 2020) ................................................................................7

*INS v. Cardoza-Fonseca*,
   480 U.S. 421 (1987) .............................................................................................11

*Nat'l Wildlife Fed'n v. EPA*,
   286 F.3d 554 (D.C. Cir. 2002) ..............................................................................7

**Statutes**

8 U.S.C.
   § 1158 ..................................................................................................................5, 6
   § 1225 ..............................................................................................................*passim*
   § 1229 ......................................................................................................................4
   § 1362 ......................................................................................................................4

**Rules and Regulations**

8 C.F.R.
   § 208.30 .................................................................................................................6, 8
   § 208.33 .................................................................................................................2, 8
   § 1208.33 .....................................................................................................2, 7, 8, 10
   § 1240.3 ...................................................................................................................4

88 Fed. Reg. 31,314 (May 11, 2023) .................................................................*passim*

**Other Authorities**

142 Cong. Rec. 25,347 (1996) ............................................................................6, 7

Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment
   or Punishment, Dec. 10, 1984, 1465 U.N.T.S. 85 (entered into force June 26,
   1987) ........................................................................................................................3

H.R. Rep. No. 104-469 (1995) .............................................................................6, 7

Human Rights First, *Pretense of Protection: Biden Administration and Congress
   Should Avoid Exacerbating Expedited Removal Deficiencies* (Aug. 2022) ............................4

U.S. Citizenship and Immigration Services, *Questions & Answers: Credible Fear
   Screening* (Updated Sept. 12, 2023) ...............................................................4, 5, 6

## <u>IDENTITY AND INTEREST OF AMICUS CURIAE</u>[1]

*Amici curiae* are former immigration judges and former members of the Board of Immigration Appeals ("BIA" or the "Board"), listed in Appendix A, with substantial, combined years of service and intimate knowledge of the U.S. immigration system.  *Amici* seek to illuminate for this Court the role of the immigration courts in reviewing claims for asylum and other forms of human rights protection at the border, particularly with reference to how those claims are processed for noncitizens subject to expedited removal under 8 U.S.C. § 1225(b).  The Circumvention of Lawful Pathways Rule, 88 Fed. Reg. 31,314 (May 11, 2023) (hereinafter, the "Rule") challenged by Plaintiffs severely compromises these protections, which are required by U.S. and international law.

*Amici* filed comments to the Notice of Proposed Rulemaking prior to publication of the Rule at issue in the Complaint.[2]  *Amici* are invested in the issues presented by Plaintiffs because they have dedicated their careers to improving the fairness and efficiency of the U.S. immigration system, even after departing from the bench.  Given *amici*'s familiarity with the procedures and realities of the immigration adjudication system, *amici* respectfully submit that this Court should find the Rule as applied to expedited removal is unlawful.

## <u>INTRODUCTION</u>

As former immigration judges and former members of the Board of Immigration Appeals, *amici* have centuries of collective experience impartially administering justice in removal hearings and in conducting immigration court level review for individuals subject to expedited removal who have received negative credible fear findings.  Drawing on our expertise and experience, *amici* understand the impact of the regulations in question on due process and on

---

[1] No party's counsel authored this brief in whole or in part, and no person other than *amici* and their counsel contributed money that was intended to fund the preparation or submission of this brief.

[2] Members of this group also filed amicus briefs in *East Bay Sanctuary Covenant, et al. v. Biden*, Case No. 4:18-cv-06810-JST (N.D. Cal.), ECF No. 172, and Case. No. 23-16032 (9th Cir.), ECF No. 47.

access to humanitarian protections obligated under the Immigration & Nationality Act ("INA") and international law.

We thus submit this *amicus* brief to ask this Court to strike down the Rule, particularly as it applies to expedited removal. The Rule, which came into effect in the immediate aftermath of Title 42's sunset and that applies to non-Mexican asylum seekers at the U.S.-Mexico border, automatically forecloses a migrant's asylum claim unless the person (i) arrives at an official port of entry having secured an immigration appointment through a complex mobile phone application, (ii) receives advance permission to travel to the U.S., or (iii) comes to the U.S. after applying for and being denied asylum in a transit country. 8 C.F.R. § 208.33(a); *id*. § 1208.33(a). A migrant can overcome these barriers if she can either demonstrate "exceptionally compelling circumstances," including an "acute medical emergency," an "imminent and extreme threat to life or safety," or "a severe form of trafficking in persons," or show it "was not possible to access or use the DHS scheduling system due to language barrier, illiteracy, significant technical failure, or other ongoing and serious obstacle." *Id*. The latter of these exceptions, however, is available only to migrants who present at a port of entry without an appointment. *Id*.

Immigration judges serve an important role in the congressionally-mandated process for reviewing the claims of asylum seekers at or near the U.S.-Mexico border. This decades-old process, known as expedited removal, has its own flaws, but it provides a credible fear review system that includes important protections for those seeking asylum. Specifically, and as explained in more detail below, the expedited removal statute requires that asylum seekers, regardless of how they entered the United States, be interviewed by asylum officers to determine whether they have a "credible fear of persecution" and therefore can proceed to a full asylum hearing under Section 240 of the INA. 8 U.S.C. § 1225(b)(1)(B)(ii). Congress established a "low screening" standard for establishing credible fear of persecution to ensure that those in need of protection would not be removed before they could pursue their claims in full Section 240 proceedings, which provide more robust protections than the credible fear process. The statute further mandates that immigration judges provide *de novo* review of asylum officers' negative

credible fear determinations, and thus make the final decision about whether an asylum seeker at the U.S.-Mexico border has shown a credible fear of persecution and will have the opportunity to progress to a full asylum hearing.

The Rule unlawfully undermines this statutory scheme.  First, the Rule unlawfully jettisons the "low screening" standard Congress established in the INA for the credible fear process, replacing it with a so-called rebuttable presumption of ineligibility for asylum in which an asylum seeker is automatically presumed ineligible for asylum unless she can establish by a preponderance of the evidence that she qualifies for an exception to or can rebut the presumption.  Second, the Rule forces migrants who cannot overcome the presumption of ineligibility to establish, under a higher standard than currently required, that they are eligible to seek withholding of removal or protection under the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("CAT"), Dec. 10, 1984, 1465 U.N.T.S. 85 (entered into force June 26, 1987) in full Section 240 proceedings, which demand a higher standard of proof and ultimately far more limited relief than asylum.

Moreover, the government's lofty claim that the Rule will "help[] to ensure that the processing of migrants seeking protection in the United States is done in an effective, humane, and efficient manner[,]" 88 Fed. Reg. at 31,314, ignores the reality that the Rule will necessarily prolong and complicate asylum cases by turning what otherwise would have been solely asylum claims into a complicated analysis of the Rule and its exceptions, potentially also the merits of an asylum claim, and withholding and CAT claims.  And, most fundamentally, the Rule will undoubtedly result in the denial of asylum for many migrants who, absent the Rule, would be entitled to protection under the INA.  The Rule, as applied to the expedited removal process, should not stand.[3]

---

[3] Amici also believe the entire Rule should be vacated for the reasons set forth in their Amicus Briefs filed in *East Bay Sanctuary Covenant, et al. v. Biden*.  *See supra* n.2.

# ARGUMENT

## I.   The Rule Improperly Curtails Relief For Non-Mexicans Seeking To Escape Persecution And Torture And Undermines The Integrity Of The Expedited Removal Process.

The expedited removal process, severely flawed as it might be,[4] reflects Congress'
judgment on how to balance the nation's commitment to asylum with the desire to keep our
immigration system efficient and fair.  The expedited removal process provides a system for fair
evaluation of each asylum seeker's claim to protection, including the important backstop that
immigration judges serve as the final reviewers in the asylum credible fear process.  The Rule
eviscerates the expedited removal process and will result in the denial of protection to many
legitimate asylum seekers, who could otherwise find refuge in the system Congress created for
them.

The INA includes two types of proceedings to evaluate claims for asylum.  Full
adjudication of an asylum claim is conducted via removal proceedings under Section 240 of the
INA.  8 U.S.C. § 1229(a).  Section 240 proceedings, which are presided over by immigration
judges, provide due process for the asylum seeker, who has a full panoply of rights, including the
right to have a lawyer to present her claims.[5]  In 1996, Congress created an exception to Section
240 proceedings, allowing the Executive Branch (then via the Immigration & Naturalization
Service, now via the Department of Homeland Security ("DHS")) to use truncated proceedings
under Section 235 of the INA, commonly called expedited removal, for migrants who arrive at
the border or who recently entered the United States (virtually the same population targeted by
the Rule).[6]

---

[4] *See, e.g.,* Human Rights First, *Pretense of Protection: Biden Administration and Congress Should Avoid Exacerbating Expedited Removal Deficiencies* (Aug. 2022), https://humanrightsfirst.org/wp-content/uploads/2023/01/PretenseofProtection-21.pdf.

[5] 8 U.S.C. § 1362; 8 C.F.R. § 1240.3.

[6] U.S. Citizenship and Immigration Services, *Questions & Answers: Credible Fear Screening* (Updated Sept. 12, 2023) ("USCIS Credible Fear Screening Q&A"), https://www.uscis.gov/humanitarian/refugees-and-asylum/asylum/questions-and-answers-credible-fear-screening.

A.     <u>**The Expedited Removal Process Before The Rule**</u>

When DHS elects to proceed under Section 235, it may remove migrants who arrive at a U.S. port of entry "without further hearing or review" if those individuals are undocumented or use misrepresentation or fraud to attempt to enter the U.S.  However, Congress included important protections in the expedited removal process to ensure that *bona fide* asylum seekers are not removed without an opportunity to proceed through full Section 240 proceedings.  The protections of expedited removal, including interviews by asylum officers and *de novo* review by immigration judges, apply to a person requesting protection regardless of whether the migrant arrived in the U.S. at an official port or by other means.  8 U.S.C. §§ 1225, 1158(a)(1).

If the Executive Branch opts to apply expedited removal proceedings to an asylum seeker under Section 235, it is required to interview that person to determine whether she has a credible fear of persecution on the basis of race, religion, nationality, membership in a particular social group, or political opinion.[7]  INA § 235(b)(1); 8 U.S.C. §§ 1225(b), 1158(a).  If the migrant can show a credible fear of persecution, she may seek asylum in full Section 240 proceedings before an immigration judge with robust rights and appeal opportunities.  8 U.S.C. § 1225(b)(1)(B)(ii).  If, however, the migrant cannot show a credible fear of persecution, the review process may then also include claims for withholding of removal and protection under CAT.  However, both of these forms of relief require a higher standard of proof and ultimately provide lesser forms of protection for migrants than asylum.

Credible fear determinations involve a two-step administrative process, critical to vindicating the full force of the INA, in which immigration judges play a central role.  First, the migrant interviews with an asylum officer, who makes the initial credible fear determination.  If the asylum officer does not find that the asylum seeker credibly fears persecution, the asylum seeker can request that an immigration judge review the officer's decision.  Only when the migrant does not ask for an immigration judge to review their case, or when the immigration

---

[7] *See also* USCIS Credible Fear Screening Q&A.

judge agrees with the asylum officer that no credible fear exists, may Immigration and Customs Enforcement ("ICE") then remove the person from the United States.  However, if the asylum seeker asks for an immigration judge's review and the judge finds a credible fear, the individual may seek asylum in full Section 240 proceedings.  *See* USCIS Credible Fear Screening Q&A.

The INA defines "credible fear of persecution" to "mean[] that there is a significant possibility, taking into account the credibility of the statements made by the alien in support of [her] claim and such other facts as are known to the officer, that [she] could establish eligibility for asylum under [Section 1158]."  8 U.S.C. § 1225(b)(1)(B)(v).  Congress explained that the significant possibility standard was "intended to be a low screening standard for admission into the usual full asylum process[,]" 142 Cong. Rec. 25,347 (1996) (statement of Sen. Hatch), and made clear that under the expedited removal system, "*there should be no danger that an alien with a genuine asylum claim will be returned to persecution*."  H.R. Rep. No. 104-469, pt. 1, at 158 (1995) (emphasis added).  Consistent with this statutory mandate, prior to the Rule, to establish a credible fear of persecution, an asylum seeker was required to demonstrate to the asylum officer a "significant possibility" that, in Section 240 proceedings, she could convince an immigration judge that she has been persecuted, or has a well-founded fear of persecution "on account of race, religion, nationality, membership in a particular social group, or political opinion if returned" to her country of origin.  *See* USCIS Credible Fear Screening Q&A.[8] Through this statutory scheme, Congress allowed the Executive to screen out fraudulent asylum claims but instructed it to use a "low screening standard" for the credible fear determination process to ensure that *bona fide* asylum seekers would have the opportunity to fully present their claim for asylum with the assistance of counsel and other protections available in full Section 240 proceedings.

---

[8] The "significant possibility" standard was also applied to migrants' claims for withholding of removal and for deferral of removal in the expedited removal process prior to the Rule.  8 C.F.R. § 208.30(e)(2), (3).

B.     <u>The Expedited Removal Process Under The Rule</u>

The Rule imposes two new standards in the expedited removal context that violate the INA and run roughshod over clear Congressional intent.  First, the Rule improperly abandons the "significant possibility" screening standard that Congress mandated in the credible fear context to "ensur[e] that individuals with valid asylum claims are not returned to countries where they could face persecution."  8 U.S.C. §1225(b)(1)(B)(v); *Grace v. Barr*, 965 F.3d 883, 902 (D.C. Cir. 2020).  Instead of applying this "low screening" standard, the Rule requires both the asylum officer and the immigration judge to determine "whether the alien *is* covered by the presumption . . ., and if so, whether the alien *has* rebutted the presumption[,]" in credible fear proceedings. *Compare Grace*, 965 F.3d at 902 (citing 142 Cong. Rec. 25,347 (1996) (statement of Sen. Hatch); H.R. Rep. No. 104-469, pt. 1, at 158 (1995)), *with* 88 Fed. Reg. at 31,450 (8 C.F.R. § 208.33(b)(1)); *id.* at 31,451 (8 C.F.R. § 1208.33(b)(2)) (emphasis added).

Although the preamble to the Rule acknowledges that the significant possibility standard "is required by statute" and should be applied to assess the "presumption" in the credible fear context, the regulation itself does not require credible fear adjudicators to apply this standard. *Compare* 88 Fed. Reg. at 31,380, *with* 8 C.F.R. § 208.33(b)(1); *id.* § 1208.33(b)(2).  *Amici* in their collective experience have hundreds of years of applying the many regulations that govern immigration cases, but in our many years of service, we took our guidance from the regulatory text itself, not from explanatory content in the Federal Register.  It is both naïve and improper to expect that asylum officers and immigration judges will study and apply the guidance in the Rule's preamble over the plain text of the Rule.  *See Nat'l Wildlife Fed'n v. EPA*, 286 F.3d 554, 570 (D.C. Cir. 2002) ("[I]t is the language of the regulatory text, and not the preamble, that controls.").  By abandoning the significant possibility standard in this context, the Rule directly contradicts the statutory mandate that a migrant be taken out of the expedited removal system whenever there is a "significant possibility" that he or she could establish eligibility for asylum in full Section 240 removal proceedings.  8 U.S.C. § 1225(b)(1)(B)(v).  This change alone would

7

have devastating impacts for *bona fide* asylum seekers who cannot overcome the Rule's presumption of ineligibility.  For example, if the asylum officer and immigration judge determine that "the [asylum seeker] is covered by the presumption . . . and fails to rebut the presumption[,]" and find she has not established a "reasonable possibility" of persecution or torture to qualify for withholding of removal or deferral of removal under the CAT, then she will be removed without any opportunity to have her substantive asylum claim considered, regardless of its merit and without any opportunity to appeal.  *See* 88 Fed. Reg. at 31,450-51 (8 C.F.R. § 208.33(b)(1), (b)(2)(i), (iii)-(v); *id*. § 1208.33(b)(2)(ii), (iii); *id*. § 208.33(b)(2)(v)(C)).

The Rule also improperly heightens the standard applicable to claims for withholding of removal and deferral of removal under CAT in the expedited removal process, making it far less likely that a migrant can receive any protection in the United States.  Prior to the Rule, adjudicators in expedited removal proceedings would consider a migrant's claims for withholding of removal and for deferral of removal under CAT under the "significant possibility" standard that was also applied to the migrant's claim for asylum.  *See* 8 C.F.R. § 208.30(e)(2), (3).  Under the Rule, if the asylum officer and/or the immigration judge determines that an alien is covered by the presumption and that the presumption has not been rebutted, the adjudicator must then "determine whether the alien has established a *reasonable possibility* of persecution . . . or torture."  88 Fed. Reg. at 31,450-51 (8 C.F.R. § 208.33(b)(2)(i); *id*. at § 1208.33(b)(2)(ii)) (emphasis added).  By adopting what is admittedly a "higher standard" than the "significant possibility" standard, 88 Fed. Reg. at 31,336, the Rule will necessarily also reduce the likelihood that migrants will be fully considered for withholding of removal or deferral of removal under CAT.

Applying these heightened standards in the credible fear process will undoubtedly mean that the Rule's presumption of ineligibility for asylum effectively functions as a bar for most migrants at the U.S.-Mexico border.  Indeed, the record already reflects this reality.  *See* ECF No. 37-1 at ¶¶ 11, 12.  This is neither the process nor the result Congress envisioned in the INA. Congress gave the Executive Branch no authority to eliminate paths to relief and deny asylum to

8

those who seek it based on a legitimate threat of persecution or torture.  The Rule violates the INA and contravenes Congressional intent by imposing arbitrary requirements on broad categories of migrants that will in effect exclude them from relief, regardless of whether their claims are worthy of relief.

## II.   The Rule Will Prolong And Complicate The Expedited Removal Process And Subsequent Proceedings And Result In No Or, At Best, Lesser Protections For *Bona Fide* Asylum Seekers.

The Rule is based on an erroneous assumption that it will "help[] to ensure that the processing of migrants seeking protection in the United States is done in an effective, humane, and efficient manner."  88 Fed. Reg. at 31,314.  To the contrary, while the Rule is indeed brutally efficient in sweeping away the ability of *bona fide* refugees to seek asylum at the U.S.-Mexico border, it will not make proceedings more efficient.  Instead, the Rule will inevitably prolong and complicate immigration cases, and make it less likely that *bona fide* asylum seekers receive the robust protections to which they are entitled under the INA.

Prior to the Rule, an asylum seeker in expedited removal proceedings was subject to a credible fear interview with a low screening standard, and, if necessary, an appeal to an immigration judge.  If an asylum seeker proceeded through this process to a full Section 240 proceeding, she would generally present only the facts relating to her claim for asylum, even if she may qualify for withholding of removal and/or deferral of removal under CAT.  Accordingly, before the Rule, a merits hearing would ordinarily focus on the applicant's well-founded fear of persecution in his or her country of nationality.  The story of her transit to the United States would play little, if any, role in the trial.

Under the new Rule, the threshold question for an asylum seeker will not be the merits of her asylum claim, but rather whether she meets one of the Rule's exceptions (or in the Rule's parlance, can rebut its presumption).  For migrants subject to expedited removal proceedings, this

will start in the credible fear process.  Before an asylum officer may consider the merits of a

migrant's claim for asylum (if at all), the Rule demands that the officer first determine whether the

Rule's presumption of ineligibility applies, whether any exception to the presumption applies,

and/or whether the alien has demonstrated that exceptionally compelling circumstances exist to

excuse the presumption.  88 Fed. Reg. at 31,450-51.  These are heavily fact-dependent issues,

several of which would ordinarily require expert testimony to adequately assess, and which have

absolutely no bearing on whether the migrant is deserving of asylum.  In the likely circumstance

that a migrant cannot overcome the difficult task of proving "by a preponderance of the evidence"

that the presumption of ineligibility is rebutted or excused, again without the benefit of the

"significant possibility" standard, then she faces a second analysis under a "higher standard" to

determine whether she is eligible for withholding of removal or deferral of removal under CAT.

The migrant will also have the right to appeal the officer's decision to an immigration

judge.  Immigration judges are the last chance for an asylum seeker to have her claim considered

during this process if the asylum officer has not found a credible fear.  8 C.F.R. § 1208.33(b).

Prior to the Rule, this protection served as an important check on the initial determination

conducted by the asylum officer.[9]  While the Rule retains this procedural step in the process, it

also hamstrings immigration judges, by requiring that they too begin (and potentially end) the

asylum analysis with the presumption of ineligibility.  Given the obvious difficulties in proof at

this stage of the process, for most migrants an immigration officer's ability to pave a path to asylum

for them may be dramatically curtailed.

---

[9] As of February 2023, in just over 25% of cases that have reached immigration judges
since 1998, the immigration judge overturned the initial decision of the asylum officer who
found no credible fear, paving a potential path toward relief for asylum seekers.  Since 100,000
migrants have had a credible fear hearing before an immigration judge since 1998, these
reversals out of the expedited removal process have created the possibility of a potentially life-
saving outcome for more than 25,000 migrants.

If a migrant is lucky enough to pass through the expedited removal process into full Section 240 proceedings, the process is also more complicated.  First, the Rule's presumption and the applicability of its exceptions must be reassessed again.  The trial will thus start with an examination of the migrant's journey to the United States, whether she applied for protection in a transit country and received a final denial, the workings of the CBP One mobile app, and threats to her in Mexico at the time of entry.  These complicated sets of facts and circumstances may require not only substantial fact investigation and testimony, but also expert testimony.[10]  This is all before the applicant presents her claim for asylum.  In addition, under the Rule, every *bona fide* asylum seeker will now also necessarily become an applicant for withholding of removal and deferral of removal under CAT.

Of course, the litigation over whether the Rule applies will be substantial, since applicants have strong incentives to pursue asylum rather than withholding of removal or deferral of removal under CAT.  An applicant for asylum can show a well-founded fear of persecution even where there is a less than 50% chance of the persecution taking place.  *INS v. Cardoza-Fonseca*, 480 U.S. 421, 431, 440 (1987) (noting that even a less than 10% chance of persecution may satisfy the well-founded fear standard for asylum).  And a migrant who wins asylum is on her way to permanent residence and, eventually, citizenship.  But for a migrant to achieve withholding of removal or protection under CAT, she must show that it is "more likely than not"—a significantly higher standard than that required in the asylum context—that she will face persecution (or will face torture *and* that such torture would be committed by or at the acquiescence of the government,

---

[10] The Rule also leaves several of the relevant inquiries undefined, such as whether, for example, a noncitizen in fact faced an "imminent or extreme threat to life or safety" or was unable to schedule a CBP One appointment due to an "ongoing and serious obstacle."  88 Fed. Reg. at 31,450-51.  The lack of clarity in the regulations will most certainly lead to additional appeals as the adjudicators and courts sort through these new issues.

under CAT) if deported to her home country.  And even if successful in achieving withholding of removal or deferral of removal under CAT, she will not have any path to citizenship.  Instead, such migrants have no lawful immigration status in the United States; they merely avoid facing deportation to a nation likely to persecute or torture them.

Far from the tool of efficiency and humane treatment the government proclaims it to be, the Rule will massively overcomplicate the already overburdened immigration system and dramatically curtail the important protections Congress provided to migrants in the INA.  Not only does the Rule turn almost every asylum seeker at the U.S.-Mexico border into an applicant for withholding and CAT relief, complicating both expedited removal and 240 proceedings, it also imposes life-changing adverse consequences for migrants who are eligible for asylum under the INA but are barred from eligibility under the Rule.

## **CONCLUSION**

For the foregoing reasons, *amici* respectfully urge the Court to find that the Circumvention of Lawful Pathways Rule as applied to expedited removal is unlawful.

Dated:  October 6, 2023                            Respectfully submitted,

                                            */s/ John R. Jacob*
                                            John R. Jacob
                                            D.C. Bar No. 444412
                                            AKIN GUMP STRAUSS HAUER
                                               & FELD LLP
                                            2001 K Street, N.W.
                                            Washington, D.C. 20006
                                            Tel: (202) 887-4000
                                            Fax: (202) 887-4288
                                            Email: jjacob@akingump.com

                                            *Counsel to Amici Former Immigration*
                                            *Judges & Former Members of the Board*
                                            *of Immigration Appeals*

## CERTIFICATE OF SERVICE

I hereby certify that on October 6, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system that will send notification of such filing to all counsel of record via electronic mail.

*/s/ John R. Jacob*
John R. Jacob
D.C. Bar No. 444412
AKIN GUMP STRAUSS HAUER
  & FELD LLP
2001 K Street, N.W.
Washington, D.C. 20006
Tel: (202) 887-4000
Fax: (202) 887-4288
Email: jjacob@akingump.com

*Counsel to Amici Former Immigration Judges & Former Members of the Board of Immigration Appeals*

13

## APPENDIX A

### Former Immigration Judges and
### Members of the Board of Immigration Appeals

Hon. Steven Abrams, Immigration Judge, New York, Varick St., and Queens Wackenhut, 1997-2013

Hon. Terry A. Bain, Immigration Judge, New York, 1994-2019

Hon. Sarah M. Burr, Assistant Chief Immigration Judge and Immigration Judge, New York, 1994-2012

Hon. Esmerelda Cabrera, Immigration Judge, New York, Newark and Elizabeth, NJ, 1994-2005

Hon. Jeffrey S. Chase, Immigration Judge, New York, 1995-2007

Hon. George T. Chew, Immigration Judge, New York, 1995 - 2017

Hon. Joan V. Churchill, Immigration Judge, Washington, D.C. and Arlington, VA, 1980-2005

Hon. Matthew D'Angelo, Immigration Judge, Boston, 2003-2018

Hon. Bruce J. Einhorn, Immigration Judge, Los Angeles, 1990-2007

Hon. Cecelia M. Espenoza, Appellate Immigration Judge, Board of Immigration Appeals, 2000-2003

Hon. Noel A. Ferris, Immigration Judge, New York, 1994-2013

Hon. James R. Fujimoto, Immigration Judge, Chicago, 1990-2019

Hon. Gilbert Gembacz, Immigration Judge, Los Angeles, 1996-2008

Hon. Alberto E. Gonzalez, Immigration Judge, San Francisco, 1995 - 2005

Hon. John F. Gossart, Jr., Immigration Judge, Baltimore, 1982-2013

Hon. Paul Grussendorf, Immigration Judge, Philadelphia and San Francisco, 1997-2004

Hon. Miriam Hayward, Immigration Judge, San Francisco, 1997-2018

Hon. Charles M. Honeyman, Immigration Judge, New York and Philadelphia, 1995-2020

Hon. Rebecca Jamil, Immigration Judge, San Francisco, 2016-2018

Hon. William P. Joyce, Immigration Judge, Boston, 1996-2002

Hon. Carol King, Immigration Judge, San Francisco, 1995-2017

Hon. Eliza C. Klein, Immigration Judge, Miami, Boston, Chicago, 1994-2015; Senior Immigration Judge, Chicago, 2019-2023

Hon. Elizabeth A. Lamb, Immigration Judge, New York, 1995 - 2018

Hon. Dana Leigh Marks, Immigration Judge, San Francisco, 1987-2021

Hon. Margaret McManus, Immigration Judge, New York, 1991-2018

Hon. Steven Morley, Immigration Judge, Philadelphia, 2010-2022

Hon. Charles Pazar, Immigration Judge, Memphis, 1998-2017

Hon. Robin Paulino, Immigration Judge, San Francisco, 2016-2020

Hon. Laura L. Ramirez, Immigration Judge, San Francisco, 1997-2018

Hon. John W. Richardson, Immigration Judge, Phoenix, 1990-2018

Hon. Lory D. Rosenberg, Appellate Immigration Judge, Board of Immigration Appeals, 1995-2002

Hon. Susan G. Roy, Immigration Judge, Newark, 2008-2010

Hon. Paul W. Schmidt, Chairperson and Appellate Immigration Judge, Board of Immigration Appeals, 1995-2003; Immigration Judge, Arlington, VA, 2003-2016

Hon. Patricia M. B. Sheppard, Immigration Judge, Boston, 1993-2006

Hon. Ilyce S. Shugall, Immigration Judge, San Francisco, 2017-2019

Hon. Helen Sichel, Immigration Judge, New York, 1997-2020

Hon. Andrea Hawkins Sloan, Immigration Judge, Portland, 2010-2017

Hon. Gabriel C. Videla, Immigration Judge, New York and Miami, 1994-2022

Hon. Robert D. Vinikoor, Immigration Judge, Chicago, 1984-2017

Hon. Polly A. Webber, Immigration Judge, San Francisco, 1995-2016

Hon. Robert D. Weisel, Assistant Chief Immigration Judge, Immigration Judge, New York, 1989-2016