# Ex. C

(Declaration of Mallory Lynn)

BRIAN M. BOYNTON
*Principal Deputy Assistant Attorney General*
WILLIAM C. PEACHEY
*Director*
EREZ REUVENI
*Assistant Director*
Office of Immigration Litigation
U.S. Department of Justice, Civil Division
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Tel: (202) 307-4293
Email: Erez.R.Reuveni@usdoj.gov
PATRICK GLEN
CHRISTINA P. GREER
*Senior Litigation Counsel*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| M.A., *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Civil Action No. 1:23-cv-01843-TSC |
| | ) |
| Alejandro Mayorkas, *et al.*, | ) |
| | ) |
| Defendants. | ) |

DECLARATION OF MALLORY LYNN

1.     I am an Asylum Officer within the Operations Branch at Asylum Division Headquarters within U.S. Citizenship and Immigration Services (USCIS), U.S. Department of Homeland Security (DHS).  I have held this position since September 10, 2021.  In this capacity, my duties include oversight of credible fear operations at USCIS's Asylum Division and I have knowledge of credible fear processes, policies, and operations.  Prior to entering on duty, I worked in various capacities within the USCIS Asylum Division including work as a line-level asylum officer, supervisory asylum officer, acting supervisory chief of staff, and section chief at the Los Angeles Asylum Office.  I have also served as acting special assistant to the Asylum Chief.

2.     I make this declaration based on my personal knowledge and my review of official documents, electronic information systems, and records maintained by USCIS.

3.     Over the past few months, DHS and USCIS have implemented new guidance and additional procedures in expedited removal proceedings to manage the significant increase in noncitizens seeking to enter the United States at the southwest border following the expiration of the Title 42 public health Order.

4.     On June 26, 2023, USCIS issued updated training guidance to asylum officers and asylum staff outlining the provisions of the *Circumvention of Lawful Pathways*, 88 Fed. Reg. 31,314 (May 16, 2023) ("the Rule") and instructing officers on the screening processes for noncitizens referred for credible fear screening under the Rule. A true and accurate copy of the training is attached as Exhibit 1.

5.     On June 11, 2023, USCIS issued updated guidance on the Rule and  processes for noncitizens who are nationals of Cuba, Haiti, Nicaragua, and Venezuela in U.S. Customs and Border Protection (CBP) custody who are subject to expedited removal and receiving a credible fear interview. A true and accurate copy of the guidance is attached as Exhibit 2.

6.     On June 11, 2023, USCIS also issued an updated advisal for USCIS asylum officers to provide to noncitizens in U.S. Customs and Border Protection (CBP) custody who are nationals of Cuba, Haiti, Nicaragua, and Venezuela. A true and accurate copy of the advisal is attached as Exhibit 3.

7.     The expedited removal statute notes that a noncitizen in the credible fear process "may consult

with a person or persons of the alien's choosing prior to the interview or any review thereof, according to regulations prescribed by the Attorney General." 8 U.S.C. § 1225(b)(1)(B)(iv). Regulations further require that noncitizens be provided a Form M-444, Information About Credible Fear Interview, that explains the credible fear interview process, and "be given time to contact and consult with any person or persons of the [noncitizen's] choosing" after being referred to USCIS for a credible fear interview. 8 C.F.R. § 235.3(b)(4)(i)-(ii).

8.  Under the current guidance, credible fear interviews take place at least 24 hours after the time of the noncitizen's acknowledgement and signature of the Form M-444, unless the noncitizen specifically requests to be interviewed more quickly.

9.  USCIS electronic information systems and records reflect that the individual plaintiffs in this case acknowledged receipt of the Form-M-444, Information About Credible Fear Interview, and received a credible fear interview on the dates set forth below:

   (a)  Plaintiff M.A. was provided a Form M-444 on May 19, 2023 and acknowledged receipt by refusing to sign. M.A.'s credible fear interview was completed on May 24, 2023.

   (b)  Plaintiff R.S. was provided a Form M-444 on May 21, 2023 and acknowledged receipt by refusing to sign. R.S.'s credible fear interview was completed on May 30, 2023.

   (c)  Plaintiff M.P. signed and acknowledged receipt of Form M-444 on June 6, 2023. M.P.'s credible fear interview was completed on June 7, 2023.

   (d)  Plaintiff J.P. was provided a Form M-444 on May 19, 2023 and acknowledged receipt by refusing to sign. J.P.'s credible fear interview was scheduled on May 21, 2023, but J.P. elected to voluntarily withdraw their application for admission.

   (e)  Plaintiff E.B. was provided a Form M-444 on May 24, 2023 and acknowledged receipt by refusing to sign. E.B.'s credible fear interview was scheduled on May 25, 2023, but E.B. elected to voluntarily withdraw their application for admission.

   (f)  Plaintiff M.N. was provided a Form M-444 on May 19, 2023 and acknowledged receipt by refusing to sign. M.N.'s credible fear interview was completed on June 3, 2023.

   (g)  Plaintiff K.R. was provided a Form M-444 on May 21, 2023 and acknowledged receipt by

3

refusing to sign. K.R.'s credible fear interview was completed on May 30, 2023.

(h)     Plaintiff M.R. was provided a Form M-444 on May 28, 2023 and acknowledged receipt by refusing to sign. M.R.'s credible fear interview was completed on June 1, 2023.

(i)     Plaintiff B.H. was provided a Form M-444 on May 26, 2023 and acknowledged receipt by refusing to sign. B.H's credible fear interview was completed on May 27, 2023.

(j)     Plaintiff L.A. was provided a Form M-444 on June 14, 2023 and acknowledged receipt by refusing to sign. L.A.'s credible fear interview was completed on June 16, 2023. A follow-up interview was conducted and completed on June 18, 2023.

(k)     Plaintiff R.V. was provided a Form M-444 on May 27, 2023 and acknowledged receipt by refusing to sign. R.V.'s credible fear interview was completed on June 3, 2023.

(l)     Plaintiff Y.F. was provided a Form M-444 on May 27, 2023 and acknowledged receipt by refusing to sign. Y.F.'s credible fear interview was completed on May 29, 2023.

(m)    Plaintiff M.S. was provided a Form M-444 on May 17, 2023 and acknowledged receipt by refusing to sign. M.S.'s credible fear interview was completed on May 23, 2023.

(n)     Plaintiff F.C. was provided a Form M-444 on June 4, 2023 and acknowledged receipt by refusing to sign. F.C.'s credible fear interview was completed on June 11, 2023.

(o)     Plaintiff R.E. signed and acknowledged receipt of Form M-444 on June 12, 2023. R.E.'s credible fear interview was completed on June 14, 2023.

(p)     Plaintiff S.U. signed and acknowledged receipt of Form M-444 on June 13, 2023. S.U.'s credible fear interview was completed on June 15, 2023. A follow-up interview was conducted and completed on June 22, 2023. S.U. was removed after an immigration judge affirmed the negative credible fear determination. S.U. subsequently re-entered the U.S. and was referred again to USCIS for a credible fear interview, which was completed on October 13, 2023. S.U. was served a positive credible fear determination on October 17, 2023.

(q)     Plaintiff D.M. was provided a Form M-444 on May 29, 2023 and acknowledged receipt by refusing to sign. D.M.'s credible fear interview was completed on June 4, 2023.  A

1    follow-up interview was conducted and completed on June 6, 2023. D.M was removed

2    after an immigration judge affirmed the negative credible fear determination. D.M.

3    subsequently re-entered the U.S. and was referred again to USCIS for a credible fear

4    interview, which was completed on August 5, 2023. D.M. was served a positive credible

5    fear determination on August 9, 2023.

6    (r)    Plaintiff J.S. signed and acknowledged receipt of Form M-444 on May 17, 2023. J.S.'s

7    credible fear interview was completed on May 25, 2023.

8

9    Pursuant to 28 U.S.C. § 1746, I declare, under penalty of perjury that the foregoing is true and correct.

10                           MALLORY L        Digitally signed by MALLORY
                                              L LYNN
11   Executed on:  10/26/2023    LYNN         Date: 2023.10.26 15:02:19
                                              -07'00'
                                        Mallory Lynn
12                                      Asylum Officer, Operations Branch
13                                      Asylum Division, USCIS
                                        U.S. Department of Homeland Security

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

5

# Ex. 1

(Circumvention of Lawful Pathways (CLP) Rule, Guidance for Asylum Officers and Asylum Office Staff)



# Circumvention of Lawful Pathways (CLP) Rule

 **Guidance for Asylum Officers and Asylum Office Staff**

05/09/2023 (Last revised 6/26/2023)

# Roadmap



- ■ Background/Legal Framework

- ■ Overview of Presumption

- ■ Exceptions to Presumption

- ■ Rebutting the Presumption

- ■ CLP Screening Process for Noncitizen Referred for Credible Fear

- ■ Case Processing after CLP Screening Determination

2

# Background/Legal Framework



**8 CFR § 208.33(a)(1)** – "A rebuttable presumption of ineligibility for asylum applies to an alien who enters the United States from Mexico at the southwest land border or adjacent coastal borders without documents sufficient for lawful admission as described in section 212(a)(7) of the Act and whose entry was:

(i)   between May 11, 2023 and May 11, 2025,

(ii)   subsequent to the end of implementation of the Title 42 public health Order issued on August 2, 2021 (86 FR 42828), and related prior orders issued pursuant to the authorities in sections 362 and 365 of the Public Health Service Act (42 U.S.C. 265, 268) and the implementing regulation at 42 CFR 71.40, **and**

3.   after the alien traveled through a country other than the alien's country of citizenship, nationality, or, if stateless, last habitual residence, that is a party to the 1951 United Nations Convention relating to the Status of Refugees or the 1967 Protocol relating to the Status of Refugees."

# Overview of Rebuttable Presumption of Ineligibility for Asylum Under CLP



Noncitizens who enter the United States from Mexico at the southwest land border or adjacent coastal borders on or after the effective date of the rule and end of the implementation of Title 42 public health order are presumed ineligible for asylum if they traveled through a country that is a signatory to the 1951 Convention Relating to the Status of Refugees <u>or</u> the 1967 Protocol Relating to the Status of Refugees

- ❑ Applies to credible fear determinations and asylum applications (affirmative, defensive, and AMI)

- ❑ Does not modify withholding of removal-only proceedings before EOIR

- ❑ Applies only prospectively to noncitizens who enter the United States **on or after May 12, 2023 at 12:00 AM ET** until May 11, 2025**.**

- ❑ Exceptions are available

- ❑ Presumption of ineligibility for asylum can be rebutted

# CLP - Who Is Subject to the Rule



Applies to noncitizens who enter the United States from Mexico across the southwest land border or adjacent coastal borders:

- ❑ **Southwest Land Border**: the entirety of the U.S. land border with Mexico

- ❑ **Adjacent Coastal Borders**: any coastal border at or near the U.S.-Mexico border, reached by an individual who traveled from Mexico and circumvented the land border

If they traveled through a country that is a signatory to the 1951 Convention Relating to the Status of Refugees or the 1967 Protocol Relating to the Status of Refugees

- ❑ The definitive list of signatories to the 1951 Convention on the Status of Refugees can be found here, while the list of signatories to the 1967 Protocol can be found here.

- ❑ Mexico is a signatory to both the 1951 Convention and 1967 Protocol.

# CLP - Who Is Not Subject to the Rule



The noncitizen is not subject to the CLP rule if the noncitizen:

❑ Entered the United States on or before May 11, 2023 11:59 PM ET.

❑ Did not enter the United States from Mexico across the southwest land border or an adjacent coastal border

❑ Is a Mexican citizen, national or stateless individual who last habitually resided in Mexico, as they will not have traveled through any country other than Mexico to enter the United States

# Burden of Proof



Noncitizens have the burden of proof to establish that:

- ❑ They are not subject to the CLP rule,

- ❑ That an exception applies, or

- ❑ That the presumption has been rebutted.

This requires specific and persuasive evidence

- ❑ The exceptions and ways to rebut the presumption are intended to be a fact based inquiry and narrow in scope.

# Standard of Proof



The standard of proof for determining if the noncitizen is subject to the CLP or if the noncitizen has established an exception or rebutted the presumption depends upon the type of adjudication:

❑ **Credible Fear:** Significant possibility that the noncitizen could establish that they are not subject to the CLP or that they could establish an exception or rebut the presumption in a full hearing

❑ **Affirmative and Asylum Merits Interviews:** Preponderance of the Evidence

**It's important to remember:**

❖ The burden of proof is always on the noncitizen regardless of the type of adjudication

❖ The testimony required to meet the burden of proof is similar under both standards of proof





# Exceptions to the Presumption of Ineligibility for Asylum

# Exceptions to the Presumption



The presumption of ineligibility for asylum does not apply where the noncitizen, or a family member traveling with the noncitizen as described at 8 CFR 208.30(c), establishes one of the following exceptions:

A.   They received appropriate authorization to travel to be paroled into the United States;

B.   They presented at a port of entry (POE), pursuant to a pre-scheduled time and place, or presented at a port of entry, without a pre-scheduled time and place, if the noncitizen demonstrates that it was not possible to access or use the DHS scheduling system due to language barrier, significant technical failure, illiteracy, or ongoing and serious obstacle to access;

C.   They sought asylum or other protection in at least one country en route to the United States and received final judgment denying protection in such country (not including abandonment of the application); **OR**

D.   They met the definition of an "unaccompanied alien child" (UAC) in 6 U.S.C. § 279(g)(2) at time of entry.

# Family Member



**A family member traveling with the noncitizen as described at 8 CFR 208.30(c)**

- Per regulation a spouse or child (unmarried and under the age of 21) shall be included in a noncitizens positive CF determination if they arrived concurrently, unless the PA or the spouse or child declines such inclusion.

- USCIS may also, in its discretion, include other accompanying family members. USCIS policy is to, absent circumstances indicating otherwise, exercise its discretion to include the following:

  o If PA is unmarried and under 21, the PA's parents and unmarried siblings who are under 21 and arrived concurrently with the PA.

# Exception A: Parole



The noncitizen must demonstrate that they, or a family member traveling with them (as described at 8 CFR 208.30(c)), had DHS authorization to travel for parole into the U.S.

❑ Parole processes are currently in place for certain eligible nationals of the following populations:

- Cubans
- Haitians
- Venezuelans
- Nicaraguans
- Ukrainians

❖ Note that this is not an exhaustive list of all nationalities that may have permission to travel to the U.S. to seek parole

# Exception B: DHS Scheduling System



The presumption does not apply where the noncitizen, or a family member traveling with them (as described at 208.30(c)) scheduled an appointment to present at a POE using a DHS scheduling system <u>or</u> was unable to do so as outlined below:

❑ Presented at a POE, pursuant to a pre-scheduled time and place

- ▪ Currently, noncitizens and their family members may use the CBP One app to register in advance and secure a time and date to present at a POE for processing

- ▪ The CBP One app is currently available in English, Spanish, and Haitian Creole

<strong><u>OR</u></strong>

❑ Presented at a POE without a pre-scheduled time and place, if the noncitizen demonstrates that it was not possible to access or use the DHS scheduling system due to language barrier, significant technical failure, illiteracy, or other ongoing and serious obstacle to access

# Exception C: Sought Protection



The noncitizen demonstrates that they or a family member traveling with them (as described at 208.30(c)) sought asylum or other protection as outlined below:

- ❑ They applied for asylum or other protection

- ❑ In at least one country outside of the noncitizen's country of nationality or last habitual residence

- ❑ Through which the noncitizen traveled en route to the U.S.

   **<u>AND</u>**

- ❑ Received a final judgment denying protection in such country





# Rebutting the Presumption of Ineligibility



U.S. Citizenship and Immigration Services

When the presumption of ineligibility for asylum applies, because no exception applies, the noncitizen may rebut the presumption by demonstrating that one of the following exceptionally compelling circumstances exist:

1) At the time of entry, the noncitizen or an accompanying family member faced an **acute medical emergency**;

2) At the time of entry, the noncitizen or an accompanying family member **faced an imminent and extreme threat to life or safety (in Mexico)**;

3) At the time of entry, the noncitizen or an accompanying family member was a **victim of a severe form of trafficking**; OR

4) **Other exceptionally compelling circumstances** were present.

# Rebutting the Presumption of Ineligibility: 1. Medical Emergency



The noncitizen demonstrates that, at the time of entry to the U.S., they or an accompanying family member they are traveling with **faced an acute medical emergency**, as outlined below:

- ❑ Acute medical emergencies include situations in which someone faces a life-threatening medical emergency or faces acute and grave medical needs that could not be adequately addressed outside of the United States

- ❑ Credible testimony alone may be sufficient

# Rebutting the Presumption of Ineligibility: 2. Threat to Life or Safety



The noncitizen demonstrates that, at the time of entry to the U.S., they or an accompanying family member they are traveling with **faced an imminent and extreme threat to their life or safety**, as outlined below:

❑ Must show that the noncitizen or their family member's life or safety was in imminent danger *at the time they crossed the border* from Mexico to the United States

❑ No nexus or state action requirement

❑ Does not include generalized threats of violence

❑ Country conditions are not relevant to making this determination as this is a fact specific inquiry for the particular case

# Rebutting the Presumption of Ineligibility: 2. Threat to Life or Safety (cont.)



**Faced an imminent and extreme threat to their life or safety:**

❑ **Imminent:** There must be a threat to life or safety in the very near term

❑ **Extreme:** The threat must exceed the ordinary or expected threat to life or safety

❑ **Examples of "imminent and extreme threat to life or safety"** include an imminent threat of rape, kidnapping, torture, or murder in Mexico such that they cannot wait for an opportunity to present at a POE without putting their life or well-being at extreme risk

# Rebutting the Presumption of Ineligibility: 3. Trafficking Victims



The noncitizen demonstrates that, at the time of entry to the U.S., they or an accompanying family member they are traveling with was a **victim of a "severe form of trafficking in persons"**, as defined at 8 CFR 214.11:

❑ A severe form of trafficking in persons is defined as either:

   a) Sex trafficking: the recruitment, harboring, transportation, provision, obtaining, patronizing, or soliciting of a person for the purpose of inducing a commercial sex act through the use of force, fraud, or coercion. Inducing an individual under 18 years of age to perform a commercial sex act is considered sex trafficking, regardless of the use of force, fraud, or coercion.

   OR

   b) Labor trafficking: the recruitment, harboring, transportation, provision, or obtaining of a person for labor or services through the use of fraud, force, or coercion for the purpose of subjection to involuntary servitude, peonage, debt bondage, or slavery.

# Rebutting the Presumption:
# 4. Other Exceptionally Compelling Circumstances



The noncitizen demonstrates that **other exceptionally compelling circumstances exist**, as outlined below:

❑ Assess on a <u>case-by-case basis</u>

❑ Does not necessarily need to occur at the time of entry

❑ Applies to the noncitizen and accompanying family members they are travelling with

❑ As a reminder, the other three grounds to rebut the presumption would exist in rare circumstances and this ground should be applied similarly

# Rebutting the Presumption:
## 4. Examples -  Exceptionally Compelling Circumstances



**Examples of "other exceptionally compelling circumstances" could include:**

- The noncitizen has a family member who is not a part of their CF determination but the noncitizen is their caretaker and the family member is experiencing an acute medical emergency at the time of entry.

- The noncitizen has an adult special needs child with them.

❖ **Note that having a meritorious asylum claim is not itself an exceptionally compelling circumstance.**

# CLP Screening Summary


U.S. Citizenship and Immigration Services

**Step 1:** Elicit testimony to determine if the noncitizen is subject to the CLP

(If CLP applies, move on to step 2. If CLP does not apply, CLP screening complete.)

- Entered the U.S. at the southwest land border or adjacent costal borders on or after May 12, 2023 at 12:00 AM ET, AND
- Traveled through any country apart from their country of nationality (or last habitual residence) en route to the United States; AND
- At least one of the countries through which the noncitizen **traveled** en route to the United States are signatories to the Refugee Convention or Protocol (e.g., Mexico).

**Step 2:** Elicit for exceptions to the presumption of asylum ineligibility

(If no exceptions, move on to step 3. If an exception is established, CLP screening complete.)

- Exception A: Parole
- Exception B: DHS Scheduling System
- Exception C: Sought Protection
- Exception D: Unaccompanied Child (UC) [not ER/CF]

**Step 3:** Elicit for whether the presumption of ineligibility is rebutted

(If not rebutted, the presumption applies. If rebutted, the presumption does not apply. Proceed with your interview accordingly).

- Acute medical emergency at time of entry
- Imminent and extreme threat to life or safety in Mexico at time of entry
- Victim of a severe form of human trafficking at time of entry
- Exceptionally compelling circumstances at or after time of entry





# CLP Screening Process for Noncitizens Referred to USCIS for Credible Fear Interview/Determination

FOUO

# Credible Fear Process
# Application of Presumption of Ineligibility



❑ Conduct CLP screening interview to determine if the noncitizen is subject to the rule and whether the noncitizen can demonstrate an exception or rebut the presumption of ineligibility for asylum.

❑ Complete CLP Presumption Worksheet

▪ The CLP Presumption Worksheet does not need to be completed if the noncitizen is **not** subject to the CLP. This includes:
  ▪ Mexican citizens, nationals, and stateless individuals that last habitually resided in Mexico
  ▪ Noncitizens who entered on or before May 11, 2023 at 11:59 PM ET.
  ▪ Noncitizens who did not enter via the southwest land border or adjacent coastal border

▪ If the noncitizen's testimony is found not credible relating to an exception or the rebuttal of the CLP, address in the CLP Presumption Worksheet explanation field.

# CF Process - CLP Presumption Worksheet
# Is the noncitizen subject to the CLP?



- ☐ **Arrival Date/Location:** Did the noncitizen enter the United States at the southwest land border or adjacent coastal borders on or after May 12 at 12:00 AM ET?

- ☐ **Traveled:** Did the individual travel through any country apart from their country of nationality (or last habitual residence) en route to the United States?

- ☐ **Treaty Obligations:** If answer about travel is yes, are any of the countries signatories to the Refugee Convention or Protocol?

- ☐ **When is the CLP Presumption Worksheet Not Required:** If the noncitizen is not subject to the presumption,  you do not need to complete the CLP presumption worksheet. Continue with a standard credible fear interview.

# CF Process - Completing the Worksheet (GINA)
# Is the noncitizen subject to the CLP?







# CF Process - CLP Presumption Worksheet
# Does an Exception to the Presumption Apply?



Has the noncitizen made a sufficient showing that they, or a family member traveling with them as described in 8 CFR 208.30(c), could establish that:

A.   The noncitizen or family member received appropriate authorization to travel to the United States to seek parole, pursuant to a DHS-approved parole process"?

   ✓   *If yes → Exception A found*

B.   The noncitizen or family member presented at a port of entry, pursuant to a pre-scheduled time and place, or presented at a port of entry, without a pre-scheduled time and place, but has demonstrated that it was not possible to access or use the DHS scheduling system due to language barrier, illiteracy, significant technical failure, or ongoing and serious obstacle to access?

   ✓   *If yes → Exception B found*

C.   The noncitizen or family member sought asylum or other protection in a country through which the noncitizen traveled, and received a final decision denying that application?

   ✓   *If yes → Exception C found*

# CF Process – Completing the Worksheet (GINA)
# Does an Exception to the Presumption Apply?







# CF Process - CLP Presumption Worksheet
# Is the Presumption Rebutted?



U.S. Citizenship and Immigration Services

Has the noncitizen made a sufficient showing that they, or a family member traveling with them as described in 8 CFR 208.30(c), could establish that at the time of entry:

1. The noncitizen or family member faced an acute medical emergency?

   ✓   *If yes* → *Presumption Rebutted Under #1*

2. The noncitizen or family member faced an imminent and extreme threat to life or safety?

   ✓   *If yes* → *Presumption Rebutted Under #2*

3. The noncitizen or family member was a victim of a severe form of trafficking in persons?

   ✓   *If yes* → *Presumption Rebutted Under #3*

# CF Process - CLP Presumption Worksheet Is the Presumption Rebutted (cont.)?



Has the noncitizen made a sufficient showing that they, or a family member traveling with them as described in 8 CFR 208.30(c), could establish that at time of entry to the United States, or after the time of entry (in the United States), that:

4.  Other exceptionally compelling circumstances were present?

   ✓   *If yes → Presumption Rebutted Under #4*

# CF Process - Completing the Worksheet (GINA) Is the Presumption Rebutted?



U.S. Citizenship and Immigration Services









**Processing the CF Case After CLP Determination is Made**

# CF Process – Next Steps After CLP Determination



❑ **Processing Scenario 1 – If the noncitizen is not subject to the CLP:**
  ▪ Conduct standard credible fear interview at significant possibility standard
  ▪ Use standard Credible Fear Checklist

❑ **Processing Scenario 2 – If the noncitizen is subject to the CLP but establishes an exception or rebuts the presumption of asylum ineligibility:**
  ▪ Issue discretionary NTA or conduct a standard credible fear interview at the significant possibility standard (additional guidance forthcoming)
  ▪ Use standard Credible Fear Checklist if conducting credible fear interview
  ▪ Administratively close the case in Global if issuing a discretionary NTA

❑ **Processing Scenario 3 – If the presumption of ineligibility for asylum is applied because no exception is established and the presumption is not rebutted:**
  ▪ Complete CLP RP Interview Orientation Notification
  ▪ Conduct interview for persecution and torture at the reasonable possibility standard
  ▪ Use CLP Reasonable Possibility Determination Checklist

# CF Process – Presumption Applies
# CLP RP Interview Orientation Notification



❑ When the AO determines that the presumption applies, the officer must:

    ✓ Explain to the noncitizen that they will be screened according to the reasonable possibility standard; and

    ✓ Complete the CLP RP Interview Orientation Notification.

❑ CLP RP Interview Orientation Notification is **not** required if the presumption is not being applied because the noncitizen:

    ✓ Is <u>no</u>t subject to the CLP;

    ✓ Established an exception to the presumption of ineligibility; <u>or</u>

    ✓ Rebutted the presumption of ineligibility

# Credible Fear vs Reasonable Possibility CLP Interview Comparison Chart



U.S. Citizenship and Immigration Services

| Standard Credible Fear Interview | CLP Reasonable Possibility Interview |
|---|---|
| Nexus standard is at least "a reason" | Nexus standard is at least "a reason" |
| <u>Significant possibility</u> the noncitizen can establish eligibility for asylum, withholding of removal, or CAT protection in a full hearing or AMI proceedings | <u>Reasonable possibility</u> of persecution or torture |
| Past persecution alone results in positive determination | Past persecution alone <u>cannot</u> result in positive determination, (must also establish presumption of persecution has not been rebutted) |
| Internal relocation is <u>not</u> considered | Internal relocation <u>is</u> considered |
| Additional nexus questions for other protected grounds not required for positive determinations | Additional nexus questions for other protected grounds not required for positive determinations |
| If positive determination, elicit for the one claim/decision type that is the basis for positive determination. Not required to fully elicit for all claims or decision types (<u>i.e., past persecution, future persecution or torture</u>). | If positive determination, elicit for the one claim/decision type that is basis for positive determination. Not required to fully elicit for all claims or decision types (<u>i.e., persecution or torture</u>). |
| If positive determination for PA, may include spouse or children (unmarried, under 21) in claim as dependents, who entered concurrently and are in ER/CF proceedings. | If positive determination for PA, may include spouse or children (unmarried, under 21) in claim as dependents, who entered concurrently and are in ER/CF proceedings. |

# CF Process – Forms



❑ **Form I-870:** Use the Form I-870 (dated 05.12.23) for **all** cases where the noncitizen was placed in expedited removal on or after June 1st, 2022.

- On page 5 of the I-870, keep the paragraph under "additional information / continuation" only when the individual is subject to the CLP and has not established an exception or rebutted the presumption.

- Delete the paragraph under "additional information / continuation" where the noncitizen is not subject to the CLP, an exception was established or the presumption was rebutted.

❑ **CLP RP Interview Orientation Notification:** Use only where the presumption of ineligibility for asylum under the CLP applies.

❑ **Form I-869B:** For negative determinations, when the presumption applies, use the Form I-869B instead of the Form I-869.

❑ **Form I-862:** NTA all positive determinations.

# CF Process – Global



Enter decision card in Global. In the field labeled **"Circumvention of Lawful Pathways"** select:

- **"Not applicable" –** if the noncitizen was interviewed under the significant possibility standard because the noncitizen is not subject to the CLP

- **"Established  exception" -**  if the noncitizen was interviewed under the significant possibility standard because the noncitizen established an exception to the presumption

- **"Rebutted Presumption" -** if the noncitizen was interviewed under the significant possibility standard because the noncitizen rebutted the presumption

- **"Presumption of Ineligibility Applies" –** if the noncitizen was interviewed under the reasonable possibility  standard because they did not demonstrate that they could establish an exception to or rebut the presumption of ineligibility for asylum

# CF Process – Post-Interview and Service



❏ Additional forms required for the service packet for CLP cases include:

- CLP Presumption Worksheet: if the noncitizen is subject to the CLP, including if an exception is established or the presumption is rebutted.

- CLP RP Interview Orientation Notification: Only if the presumption applies because an exception is <u>not</u> established or is <u>not</u> rebutted so the reasonable possibility interview is required.

❏ For Negative Services:

- Form I-869B: For negative determinations, when the presumption applies, use Form I-869B instead of the Form I-869.

- Form I-863: Use when the noncitizen request IJ review of a negative determination (or USCIS makes the election on behalf of the noncitizen)
  - Check box 1 for all cases

# CLP Family Processing



❑ **Step 1: Complete CLP Screening for PA**

    ❑ If established an exception/rebuts presumption: apply to entire family and proceed to interview at the significant possibility standard

    ❑ If does not establish an exception/rebut the presumption, move to Step 2

❑ **Step 2: Complete CLP Screening for Spouse** (if no spouse, skip to step 3)

    ❑ If established an exception/rebuts presumption: family will be interviewed at significant possibility standard

    ❑ If does not establish an exception/rebut the presumption, move to Step 2

❑ **Step 3: Complete CLP Screening for Children** (if

    ❑ If established an exception/rebuts presumption: family will be interviewed at significant possibility standard

    ❑ If does not establish an exception/rebut the presumption, family will need to be interviewed at the reasonable possibility standard

# CLP Family Processing - Documents



❑ **CLP Presumption Worksheet**

    ❑ For positives – Only required for PA

    ❑ For negatives – Required for each family member

❑ **CLP RP Interview Orientation Notification (if applicable)**

    ❑ For positives – Only required for PA

    ❑ For negatives – Required for each family member

# **Additional Resources**



❑ [Asylum Knowledge Center](#) (AKC)

❑ [Trafficking Lesson Plan](#)

❑ RAIO Research Unit [Country Pages](#)

❑ Other Asylum and RAIO [Lesson Plans](#)

# About this presentation



- **Author(s):** USCIS Asylum Division Headquarters

- **Date of last revision:** June 26, 2023

- This presentation is current only as of the date of the last revision.

- This presentation contains no sensitive Personally Identifiable Information (PII).

- Any references in documents or text, with the exception of case law, relate to fictitious individuals.

# Dissemination



This presentation may not be reproduced or further disseminated without the express written consent of the USCIS Asylum Division.

Please contact Asylum Division Headquarters Operation Branch for additional information.

# Disclaimer



This training module is intended solely for informational purposes. It is not intended to, does not, and may not be relied upon to create or confer any right(s) or benefit(s), substantive or procedural, enforceable at law by any individual or other party in benefit applications before USCIS, in removal proceedings, in litigation with the United States, or in any other form or manner. This training module does not have the force of law, or of a DHS directive.

# Ex. 2

(Circumvention of Lawful Pathways (CLP) & Voluntary Withdrawal of Admission Step-by-Step Guide)

FOUO

**Circumvention of Lawful Pathways (CLP) & Voluntary Withdrawal of Admission Step-by-Step Guide**

| *Step 1: Introduction* |
| --- |

- Place interpreter under oath
- Confirm identity of the noncitizen (A-number, name, DOB)
- Confirm that noncitizen and interpreter understand each other
- Confirm language noncitizen wishes to proceed in
- Introduce yourself and complete introductory explanation
- Ask consultant/legal representative questions
- Place the noncitizen under oath
- Remind noncitizen of Form M-444 receipt date and provide Form M-444 summary, if needed

| *Step 2:  Voluntary Withdrawal of Admission* |
| --- |

Nationals of Cuba, Haiti, Nicaragua, and Venezuela (CHNV) in Border Patrol (BP) custody who entered on or after May 12, 2023 at 12:00 AM ET will be afforded the opportunity to voluntarily withdraw their application for admission. The voluntary withdrawal advisal applies to CHNV nationals regardless of the designated country of removal.

Note that noncitizens may have a designated country of removal listed on a continuation page to the I-213 as "designated likely country of removal." For nationals of Cuba, Nicaragua and Venezuela (not Haitians), the designated country of removal should be Mexico (regardless of whether the noncitizen has status in Mexico), the country of nationality, a country in which the noncitizen has legal status or another country where there are case specific reasons for removal to that country.

Noncitizens other than Cubans, Nicaraguans or Venezuelans should not have a "designated likely country of removal" of Mexico unless they have legal status in Mexico or there is a case specific reason for the designation. This includes Haitians, who may be able to return to Mexico if they withdraw their request for admission but who will typically not be ordered removed to Mexico.

If there is no country of removal designation specified on the I-213, the designated country of removal is the noncitizen's country of nationality.

**If the noncitizen is not a CHNV national in BP custody, skip to Step 3.**

If the noncitizen is a CHNV national in BP custody, provide the following voluntary withdrawal advisal at the beginning of the interview:

> Before we begin your interview today, I want to let you know about some different options that are currently available to Cubans, Haitians, Nicaraguans, and Venezuelans to travel to the United States.

> After I explain these options, you will have an opportunity to decide whether you want to withdraw your application for admission to the United States and return to Mexico.  Upon your return to Mexico, you may be able to pursue one of those options.

> Here is a summary of the options:

Rev. 6.11.2023

FOUO

There are currently parole processes in place that provide a safe and orderly way for certain Cubans, Haitians, Nicaraguans, and Venezuelans to be considered, on a case-by-case basis, to come to the United States to live and be eligible to work for up to 2 years.  To be eligible for one of these parole processes, you must, among other factors, have a financial supporter in the United States, pass background checks, and have a passport that would allow you to board a plane to fly to a city in the United States.  There are also certain factors that may make you ineligible for these parole processes.  Among other factors, you are not eligible for these processes if you have been ordered removed from the United States within the prior five years or are subject to a bar to admission to the United States based on a prior removal order. You are not eligible for these parole processes if you crossed the Mexican or Panamanian border without authorization after October 19, 2022, if you are Venezuelan, or after January 9, 2023, if you are Cuban, Haitian, or Nicaraguan. You are not eligible for these parole processes if you are a Cuban or Haitian who was interdicted at sea after April 27, 2023.

To access these parole processes, you must be outside of the United States. You may choose to voluntarily withdraw your application for admission and return to Mexico one time and still be eligible for these parole processes. You are being given an opportunity now to withdraw your application for admission to the United States and voluntarily return to Mexico so that you remain eligible to access these parole processes.

Separate from those parole processes, if you voluntarily return to Mexico, you may also choose to use the CBP One mobile app to schedule an appointment to present at a U.S. port of entry. If you use CBP One to present at a port of entry, you may be issued a Notice to Appear for removal proceedings before an immigration judge, and if paroled to attend your removal proceedings, you may be eligible to work during your period of parole.

If you decide to withdraw your application for admission and voluntarily return to Mexico, we will not continue with your interview today. Instead, we will administratively close your case so you can voluntarily return to Mexico and you may remain eligible to access these processes.

If you decide not to withdraw your application for admission, we will continue with your credible fear interview today.  After the interview, if you have established fear of persecution or torture under the U.S. legal standards, you will be placed in removal proceedings before an immigration judge, where you can file an application for asylum or seek protection from removal. If you do not establish fear, you will receive a negative determination from the asylum officer and you may request to have that negative determination reviewed by an immigration judge.  If the immigration judge agrees with the negative determination or if you do not ask for immigration judge review, you will be ordered removed from the United States. Once you are removed, you will be barred from admission to United States for at least 5 years.

Now that I have explained this to you, would you like to voluntarily withdraw your application for admission so that you can return to Mexico?

**An Asylum Officer (AO) cannot answer any questions on the parole process, provide legal advice of any sort, or predict what will happen to the noncitizen if they decide to withdraw. Please do not attempt to answer any questions or tell the noncitizen what might happen to them in the future. Please stick to the exact language of the above script.**

- **If asked any questions on the above explanation, please answer:** I cannot answer any additional questions about these options or predict what will happen to you. All I can do right now is provide you this explanation and ask if you would like to voluntarily withdraw your application for admission so that you can return to Mexico. Is that something you would like to do?
- **If asked for time to speak with a consultant:** Consult with a supervisor regarding the request to reschedule.

**Voluntary Withdrawal Requested:** If the noncitizen voluntarily withdraws their application for admission, conclude the interview, upload your interview notes and then administratively close the CF case in Global as "CHNV Voluntary Withdrawal."

**Voluntary Withdrawal <u>Not</u> Requested:** If noncitizen does not voluntarily withdraw their application for admission or lacks the capacity to do so, continue to Step 3.

---

### Step 3: Determine Interview Type

**Standard CF Interview:** Complete a standard CF interview under the significant possibility standard for establishing eligibility for asylum, withholding of removal under INA § 241(b)(3), or protection under the Convention Against Torture (CAT), if the noncitizen is not subject to the Circumvention of Lawful Pathways (CLP) rule. This applies to:

- Noncitizens of any nationality who entered on or before 05/11/23 at 11:59 PM ET
- Mexican nationals
- Noncitizens that did not enter from Mexico at the southwest land border or adjacent coastal borders on or after 5/12/23 at 12:00 AM ET

When entering decisions in Global for cases in which the noncitizen is not subject to the CLP, select "Not Applicable" in the field labeled "Circumvention of Lawful Pathways."

**CLP Screening Process:** Continue to Step 4 if:

- The noncitizen is Cuban, Haitian, Nicaraguan or Venezuelan and did not voluntarily withdraw their application for admission when provided with the first voluntary withdrawal advisal in Step 2; or
- The noncitizen is of any other nationality (non-CHNV) who entered the United States across the southwest land border or adjacent coastal borders on or after 5/12/23 at 12:00 AM ET

---

### Step 4: I-870 Biographical Information Review

Complete the following steps of the interview:

- Have interpreter read section 1.16 of Form I-870
- Review medical issues
- Complete biographical information section of Form I-870

**If at any point during the interview the noncitizen states they wish to dissolve their fear claim, please proceed with the dissolution according to established procedures. If the noncitizen is a CHNV national**

FOUO

**in BP custody, please remind them that they may withdraw their application for admission (see Step 2) and proceed accordingly.**

### Step 5: AOL & ABC Questions

Complete AOL questions and ABC class member questions (if applicable) in accordance with established guidance. If the noncitizen appears to be an AOL or ABC class member, inform your supervisor.

### Step 6: CLP Rule

If the noncitizen entered the U.S. from Mexico at the southwest land border or adjacent coastal borders without documents sufficient for lawful admission on or after 05/12/23 at 12:00 AM ET after traveling through at least one country that is a signatory to the 1951 Refugee Convention or 1967 Protocol, they are presumed ineligible for asylum unless they can demonstrate an exception or can rebut the presumption. To confirm that the noncitizen is subject to the CLP presumption:

- If not already clear from the testimony, verify that the noncitizen entered the U.S. on or after 05/12/23 at 12:00 AM ET.
- If not already clear from the testimony, verify the countries through which the noncitizen traveled after leaving their home country and before entering the U.S.

**If the noncitizen entered the U.S. on or after 5/12/23 at 12:00 AM ET via the southwest land border or adjacent coastal border without documents sufficient for lawful admission, is not a citizen of Mexico, and traveled through Mexico, then they are subject to the presumption of asylum ineligibility since Mexico is a signatory to both the 1951 Refugee Convention and 1967 Protocol.  Please read the paragraph below and then continue to step 7:**

> It appears that you are subject to the lawful pathways condition on asylum eligibility because you entered the U.S. on or after 05/12/23 at 12:00 AM ET without documents sufficient for lawful admission, and traveled through at least one country, namely Mexico, that is a signatory to the Refugee Convention.  In order to assess whether the condition should apply to you, I will ask you some questions to determine if you qualify for an exception or if you can rebut the presumption that you are ineligible for asylum.

**If the noncitizen is not subject to the CLP, continue with a standard CF interview using the significant possibility standard. Do not complete a CLP Presumption Worksheet. Select "Not Applicable" in the field labeled "Circumvention of Lawful Pathways" in Global.**

Note that noncitizens interviewed under the significant possibility standard should be screened for all countries of nationality **and** all designated (and alternate) countries of removal and prior to issuing a negative determination. However, if a positive determination is established as to one country, you do not need to continue to interview for the remaining countries.

### Step 7: CLP Exceptions

If the noncitizen is subject to the CLP, they can overcome the presumption of ineligibility if they demonstrate a significant possibility that they could establish one of the following exceptions:

**A. Did the noncitizen, or a family member traveling with the noncitizen as described in 8 CFR 208.30(c), have DHS authorization to travel for parole into the United States? If yes, an exception applies – see end of Step 7 for additional instructions; if no, continue to Step 7, part B.**

To determine if the exception applies, ask the noncitizen:

- Did you or any of the family members you traveled with have authorization to travel to the U.S. to seek parole?

Noncitizens in ER/CF will likely not be authorized for parole into the United States. If the noncitizen answers yes, there should be records available to verify the authorization.

**B. Did the noncitizen, or a family member traveling with the noncitizen as described in 8 CFR 208.30(c), enter at a POE and either use CBP One or enter at a POE and show it was not possible for them to use CBP One for a qualifying reason? If yes, an exception applies – see end of Step 7 for additional instructions; if no, continue to Step 7, part C.**

If the noncitizen and their family members did not enter at a POE, there is no need to ask the following questions. Only ask the following questions if records show the noncitizen or a family member traveling with them entered at a POE:

- When you entered at [insert name of POE], did you use the CBP One App to enter?
- Did you ever attempt to use the CBP One App?
  - [If yes] What happened when you attempted to use the CBP One App?
  - [If no] Did anything prevent you from using the CBP One App?
    - Note that currently, the CBP One App is only available in English, Spanish, and Haitian Creole, so if the noncitizen does not speak English, Spanish, or Haitian Creole ask the following question:
      - Did you ever request the assistance (or translation services) of someone who speaks English, Spanish, or Haitian Creole? If no, why not?

**C. Did the noncitizen, or a family member traveling with the noncitizen as described in 8 CFR 208.30(c), apply for asylum or any other form of protection in a country through which they transited and receive a final denial on the case? If yes, an exception applies  – see end of Step 7 for additional instructions; if no, continue to Step 8.**

To determine if the exception applies, ask the noncitizen:

- Did you or a family member traveling with you apply for asylum or any other protection in any of the countries through which you traveled on your way from your home country to the U.S.?
  - If no, skip the rest of the questions in this section and continue to Step 8.
  - If yes, continue with the questions below.
    - In which country?
    - What type of protection did you apply for?
    - What was the result of your application?

FOUO

- ▪ Is the result final?
- ▪ Did you receive any documents or paperwork relating to your application?
  - • If yes, can you explain the documents that you received?
  - • Do you have copies of the documents you want to provide? [Note there is no requirement to provide such documentation.]

**Exception Applies:** If one of the exceptions above apply, there is no need to ask any additional questions.  Either proceed with a standard CF interview or issue a discretionary NTA, in accordance with guidance.

- • If proceeding with a CF interview, when completing the decision card in Global, select "Established Exception" in the field labeled "Circumvention of Lawful Pathways."

- • If issuing a discretionary NTA, no summary of testimony is required. You may end the interview with the following explanation:

> It appears that there is a significant possibility that in a full hearing you could establish an exception to the lawful pathways condition on asylum eligibility.  I am not going to ask you any additional questions about your fear claim today because you appear to have shown that the condition does not apply to you, and you should be able to continue with your application for asylum in the United States.  You will not receive your decision documents right now because I have to process them and my supervisor has to review them but once they are ready, you will receive them, and they will explain the next steps in your case.

Complete and upload the CLP Presumption Worksheet and NTA (following local procedures) along with your notes to Global, and then administratively close the CF case in Global as "Discretionary NTA – CLP Exception."

**Exception Does <u>Not</u> Apply**: If an exception does not apply, go to Step 8.

### Step 8: Rebuttal of the Presumption of Asylum Ineligibility

If the noncitizen has not established an exception, they may still demonstrate that there is a significant possibility that they could rebut the presumption of asylum ineligibility.

**A. At the time of entry, did the noncitizen or a family member traveling with the noncitizen, as described in 8 CFR 208.30(C), have an acute medical emergency? If yes, the presumption has been rebutted – see end of Step 8 for additional instructions; if no, continue to Step 8, Part B.**

To determine if the rebuttal applies, ask the noncitizen:

- • Did you or a family member traveling with you have any medical issues at the time you crossed from Mexico to the US? If no, continue to B; if yes, continue with questions below.
  - ○ Who had the medical issue?

FOUO

- o What was the medical issue?
- o When did the medical issue occur?
- o How long did the medical issue last?
- o Did you consider this medical issue to be an emergency? If yes, please explain why you considered this issue to be an emergency.
- o Did this medical issue prevent you from waiting in Mexico to enter the US through a lawful pathway? If yes, please explain.
- o Did you (or the family member) go to the doctor or get any other medical attention?
- o Did you (or the family member) receive any medication or any medical treatment?
- o Would you like to provide any documents relating this medical issue?  [Note there is no requirement to provide such documentation]

**B.   At the time of entry, did the noncitizen or a family member traveling with the noncitizen, as described in 8 CFR 208.30, face an imminent and extreme threat to life or safety, such as an imminent threat of rape, kidnapping, torture, or murder? If yes, the presumption has been rebutted – see end of Step 8 for additional instructions; if no, continue to Part 8 Step C.**

To determine if the rebuttal applies, ask the noncitizen:

- When you were in Mexico, were you or a family member you were traveling with threatened or harmed by anyone? If no, continue to C; if yes, continue with questions below.
  - o Who was threatened or harmed?
  - o What was the threat or harm you (or your family member) experienced?
  - o Who threatened or harmed you (or the family member)?
  - o What did the (person or group who threatened you) threaten to do to you?
  - o Did you think this (person or group) was going to carry out the threat?
  - o What made you think the (person or group) would carry out the threat?
  - o Had this (person or group) harmed you in any way previously? If yes, how did this (person or group) harm you?
  - o Did the harm or the threat(s) impact your decision to leave Mexico and enter the United States? If yes, please explain.
  - o What made you leave Mexico at that specific time? Could you have waited?
  - o Were you at the risk of harm while crossing the border?
  - o What did you fear would happen in Mexico while you were attempting to enter the United States?
  - o Would the risk of harm/danger still exist if you attempted entry at another location in Mexico?

**C.   Is the noncitizen or a family member traveling with the noncitizen, as described in 8 CFR 208.30(c), a victim of a severe form of human trafficking? If yes, the presumption has been rebutted – see end of Step 8 for additional instructions; if no, continue to Step 9 if noncitizen is a CHNV national in BP custody with Mexico as the designated country of removal case or Step 10 if the noncitizen is not a CHNV national in BP custody.**

A severe form of trafficking is defined as either:

a) Sex trafficking: the recruitment, harboring, transportation, provision, obtaining, patronizing, or soliciting of a person for the purpose of inducing a commercial sex act through the use of force, fraud, or coercion. Inducing an individual under 18 years of age to perform a commercial sex act is considered sex trafficking, regardless of the use of force, fraud, or coercion.

<u>OR</u>

a) Labor trafficking: the recruitment, harboring, transportation, provision, or obtaining of a person for labor or services through the use of fraud, force, or coercion for the purpose of subjection to involuntary servitude, peonage, debt bondage, or slavery.

To determine if the noncitizen or an accompanying family member is a victim of a severe form of trafficking, ask the noncitizen:

- Now I am going to ask you a few questions to see if you have ever been a victim of human trafficking – please know that I am only asking you these questions to determine if you meet this definition, not for any other reason.  Have you or anyone on your case ever engaged in any commercial sex act through force, fraud, or coercion, or at a time when you were under the age of 18?
- Have you or anyone on your case ever at any time in your life been forced to do labor, engage in a commercial sex act, or made to do work that you did not do willingly?

If no to both questions above, continue to Step 9 if noncitizen is a CHNV national in BP custody (or Step 10 if not); if yes to either, continue with questions below:

- How old were you (or the family member) when this happened?
- Who forced you to do this?
- How did they force you?
- What did they make you do?
- How many times were you (or the family member) forced to do something like this?

**D. Were there other exceptionally compelling circumstances present (not necessarily at the time of entry)?  If yes, the presumption has been rebutted – see end of Step 8 for additional instructions; if no, skip to D.**

To determine if the presumption can be rebutted, ask the noncitizen:

- When you were in Mexico and about to cross into the US, why didn't you try to seek out a lawful pathway to enter the US, such as parole?
- Is there something that prevented you from seeking out a lawful pathway?
- Did you or anyone you were taking care of have any major issues that impacted your ability to seek out a lawful pathway?
  - What were the issues?

- o How did this issue impact you?
- o How did this issue prevent you from waiting in Mexico for a way to enter the U.S through a lawful pathway?

**Presumption of Ineligibility for Asylum Rebutted:** If the noncitizen has shown a significant possibility that they could rebut the presumption, there is no need to ask any additional questions. Either proceed with a standard CF interview or issue a discretionary NTA, in accordance with guidance.

- If proceeding with a CF interview, when completing the decision card in Global, select "Rebutted Presumption" in the field labeled "Circumvention of Lawful Pathways."

- If issuing a discretionary NTA, no summary of testimony is required. You may end the interview with the following explanation:

> It appears that there is a significant possibility you could rebut the presumption that you are ineligible for asylum under the lawful pathways condition on asylum eligibility in a full hearing.  I am not going to ask you any additional questions about your claim today because you should be able to continue with your application for asylum in the United States.  You will not receive your decision documents right now because I have to process them and my supervisor has to review them but once they are ready, you will receive them, and they will explain the next steps in your case.

> Complete and upload the CLP Presumption Worksheet and NTA (following local procedures) along with your interview notes to Global, and then administratively close the CF case in Global as "Discretionary NTA – CLP Rebutted."

**Presumption <u>Not</u> Rebutted:** If the noncitizen did not demonstrate a significant possibility that they can rebut the presumption, proceed to Step 9 if the noncitizen is a CHNV national in BP custody or Step 10 if the noncitizen is not a CHNV national in BP custody.

---

*Step 9:  Voluntary Withdrawal of Admission*

---

**If the noncitizen is not a CHNV national in BP custody, skip to Step 10.**

For noncitizens who are CHNV nationals in BP custody, provide a second voluntary withdrawal advisal**:**

> Thank you for answering my questions. Based on your testimony so far, you may be ineligible for asylum. I am now going to ask you questions about your fear of returning to [designated country of removal OR country of nationality/citizenship if no designated country of removal.] If you fail to establish a fear, you will be removed from the United States, ineligible for the parole processes I described at the beginning of our interview, and you will be barred from admission to United States for at least 5 years upon removal.

> Before I continue, I would like to offer you another chance to withdraw your application for admission like I offered you at the beginning of the interview.

> Do you want me to repeat the explanation of that offer?

FOUO

**[Only if noncitizen requests repetition of the explanation**]: There are currently parole processes in place that provide a safe and orderly way for certain Cubans, Haitians, Nicaraguans, and Venezuelans to be considered, on a case-by-case basis, to come to the United States to live and be eligible to work for up to 2 years.  To be eligible for one of these parole processes, you must, among other factors, have a financial supporter in the United States, pass background checks, and have a passport that would allow you to board a plane to fly to a city in the United States.  There are also certain factors that may make you ineligible for these parole processes.  Among other factors, you are <u>not</u> eligible for these processes if you have been ordered removed from the United States within the prior five years or are subject to a bar to admission to the United States based on a prior removal order. You are <u>not</u> eligible for these parole processes if you crossed the Mexican or Panamanian border without authorization after October 19, 2022, if you are Venezuelan, or after January 9, 2023, if you are Cuban, Haitian, or Nicaraguan. You are not eligible for these parole processes if you are a Cuban or Haitian who was interdicted at sea after April 27, 2023.

To access these parole processes, you must be outside of the United States. You may choose to voluntarily return to Mexico one time and still be eligible for these parole processes. You are being given an opportunity now to withdraw your application for admission to the United States and voluntarily return to Mexico so that you remain eligible to access these parole processes.

Separate from those parole processes, if you voluntarily return to Mexico, you may also choose to use the CBP One mobile app to schedule an appointment to present at a U.S. port of entry. If you use CBP One to present at a port of entry, you may be issued a Notice to Appear for removal proceedings before an immigration judge, and if paroled to attend your removal proceedings, you may be eligible to work during your period of parole.

If you decide to withdraw your application for admission, we will not continue with your interview today. Instead, we will administratively close your case so you can voluntarily return to Mexico and you may remain eligible for these processes.

If you decide <u>not</u> to withdraw your application for admission, we will continue with your credible fear interview today. As I mentioned before, after the interview, if you establish fear of persecution or torture, you will be placed in removal proceedings before an immigration judge. If you do not establish fear, you will be ordered removed from the United States. Once you are removed, you will be barred from admission to United States for at least 5 years.

Would you like to voluntarily withdraw your application for admission so that you can return to Mexico?

**Voluntary Withdrawal Requested:** If the noncitizen volunteers to withdraw their application for admission, complete and upload the CLP Presumption Worksheet along with the interview notes, and then administratively close the CF case in Global as "CHNV Voluntary Withdrawal."

**Voluntary Withdrawal <u>Not</u> Requested:** If noncitizen does not volunteer to withdraw, continue to Step 10.

---

***Step 10: CLP RP Interview Orientation Notification and Screening Interview***

---

When the presumption of ineligibility for asylum applies and the noncitizen has not established an exception, rebutted the presumption, or requested voluntary withdrawal (for CHNV nationals in BP custody), follow the below steps:

Continue to the instructions for CLP RP Interview Orientation Notification and read the noncitizen the paragraph in the memo included below:

> The purpose of the remainder of the interview is to determine if you can establish a reasonable possibility of persecution on account of a protected ground or torture in the country to which you will be ordered removed. If it is determined that you have established a reasonable possibility of being persecuted on account of a protected ground or tortured in that country, you will receive a Notice to Appear for a hearing in immigration court for further consideration of your protection claims. If it is determined that you have not established a reasonable possibility of being persecuted on account of a protected ground or tortured, you may ask to have an immigration judge review that decision.  During that immigration judge review, you may also request review of the determination that you do not have a credible fear of persecution because you are subject to the condition on asylum eligibility under 8 CFR § 208.33(a).

Proceed with the screening at the **reasonable possibility standard**. Remember, for reasonable possibility interviews you are only screening for return to the designated country of removal (or if an alternate country of removal is also listed, screening for all designated countries of removal). If a removal country has not been designated, screen for the country of nationality (or countries of nationality in the case of dual nationals). Note that the noncitizen should not be screened for the country of nationality unless there is no designated country of removal.

Once interview is complete, move to Step 11.

---

***Step 11: Screening Determination***

---

Complete the following forms and upload into Global along with the interview notes (in accordance with local procedures):

- Form I-870 (dated 5.12.23)
- CLP RP Interview Orientation Notification
- CLP Presumption Worksheet
- CLP Reasonable Possibility Determination Checklist
- Form I-862 (NTA), if positive
- Forms I-869B and I-863, if negative
- Any other documents as required by local office policy.

Complete the decision card in Global. In the field labeled "Circumvention of Lawful Pathways," select "Presumption of Ineligibility Applies."

# Ex. 3

(Voluntary Withdrawal of Admission Script)

Voluntary Withdrawal of Admission Script (Rev. 6.11.2023)

**Script for Voluntary Withdrawal of Application for Admission Advisal #1**

There are currently parole processes in place that provide a safe and orderly way for certain Cubans, Haitians, Nicaraguans, and Venezuelans to be considered, on a case-by-case basis, to come to the United States to live and be eligible to work for up to 2 years. To be eligible for one of these parole processes, you must, among other factors, have a financial supporter in the United States, pass background checks, and have a passport that would allow you to board a plane to fly to a city in the United States. There are also certain factors that may make you ineligible for these parole processes. Among other factors, you are <u>not</u> eligible for these processes if you have been ordered removed from the United States within the prior five years or are subject to a bar to admission to the United States based on a prior removal order. You are <u>not</u> eligible for these parole processes if you crossed the Mexican or Panamanian border without authorization after October 19, 2022, if you are Venezuelan, or after January 9, 2023, if you are Cuban, Haitian, or Nicaraguan. You are not eligible for these parole processes if you are a Cuban or Haitian who was interdicted at sea after April 27, 2023.

To access these parole processes, you must be outside of the United States. You may choose to voluntarily withdraw your application for admission and return to Mexico one time and still be eligible for these parole processes. You are being given an opportunity now to withdraw your application for admission to the United States and voluntarily return to Mexico so that you remain eligible to access these parole processes.

Separate from those parole processes, if you voluntarily return to Mexico, you may also choose to use the CBP One mobile app to schedule an appointment to present at a U.S. port of entry. If you use CBP One to present at a port of entry, you may be issued a Notice to Appear for removal proceedings before an immigration judge, and if paroled to attend your removal proceedings, you may be eligible to work during your period of parole.

If you decide to withdraw your application for admission and voluntarily return to Mexico, we will not continue with your interview today. Instead, we will administratively close your case so you can voluntarily return to Mexico and you may remain eligible to access these processes.

If you decide <u>not</u> to withdraw your application for admission, we will continue with your credible fear interview today. After the interview, if you have established fear of persecution or torture under the U.S. legal standards, you will be placed in removal proceedings before an immigration judge, where you can file an application for asylum or seek protection from removal. If you do not establish fear, you will receive a negative determination from the asylum officer and you may request to have that negative determination reviewed by an immigration judge. If the immigration judge agrees with the negative determination or if you do not ask for immigration judge review, you will be ordered removed from the United States. Once you are removed, you will be barred from admission to United States for at least 5 years.

Now that I have explained this to you, would you like to voluntarily withdraw your application for admission so that you can return to Mexico?

Voluntary Withdrawal of Admission Script (Rev. 6.11.2023)

**Script for Voluntary Withdrawal of Application for Admission Advisal #2**

Thank you for answering my questions. Based on your testimony so far, you may be ineligible for asylum. I am now going to ask you questions about your fear of returning to [designated country of removal OR country of nationality/citizenship if no designated country of removal.] If you fail to establish a fear, you will be removed from the United States, ineligible for the parole processes I described at the beginning of our interview, and you will be barred from admission to United States for at least 5 years upon removal.

Before I continue, I would like to offer you another chance to withdraw your application for admission like I offered you at the beginning of the interview.

Do you want me to repeat the explanation of that offer?

**[Only if noncitizen requests repetition of the explanation**]: There are currently parole processes in place that provide a safe and orderly way for certain Cubans, Haitians, Nicaraguans, and Venezuelans to be considered, on a case-by-case basis, to come to the United States to live and be eligible to work for up to 2 years.  To be eligible for one of these parole processes, you must, among other factors, have a financial supporter in the United States, pass background checks, and have a passport that would allow you to board a plane to fly to a city in the United States.  There are also certain factors that may make you ineligible for these parole processes. Among other factors, you are <u>not</u> eligible for these processes if you have been ordered removed from the United States within the prior five years or are subject to a bar to admission to the United States based on a prior removal order. You are <u>not</u> eligible for these parole processes if you crossed the Mexican or Panamanian border without authorization after October 19, 2022, if you are Venezuelan, or after January 9, 2023, if you are Cuban, Haitian, or Nicaraguan. You are not eligible for these parole processes if you are a Cuban or Haitian who was interdicted at sea after April 27, 2023.

To access these parole processes, you must be outside of the United States. You may choose to voluntarily return to Mexico one time and still be eligible for these parole processes. You are being given an opportunity now to withdraw your application for admission to the United States and voluntarily return to Mexico so that you remain eligible to access these parole processes.

Separate from those parole processes, if you voluntarily return to Mexico, you may also choose to use the CBP One mobile app to schedule an appointment to present at a U.S. port of entry. If you use CBP One to present at a port of entry, you may be issued a Notice to Appear for removal proceedings before an immigration judge, and if paroled to attend your removal proceedings, you may be eligible to work during your period of parole.

If you decide to withdraw your application for admission, we will not continue with your interview today. Instead, we will administratively close your case so you can voluntarily return to Mexico and you may remain eligible for these processes.

If you decide <u>not</u> to withdraw your application for admission, we will continue with your credible fear interview today. As I mentioned before, after the interview, if you establish fear of persecution or torture, you will be placed in removal proceedings before an immigration judge.

Voluntary Withdrawal of Admission Script (Rev. 6.11.2023)

If you do not establish fear, you will be ordered removed from the United States. Once you are removed, you will be barred from admission to United States for at least 5 years.

Would you like to voluntarily withdraw your application for admission so that you can return to Mexico?