BRIAN M. BOYNTON
*Principal Deputy Assistant Attorney General*
WILLIAM C. PEACHEY
*Director*
EREZ REUVENI
*Counsel*
CHRISTINA P. GREER
*Senior Litigation Counsel*
Office of Immigration Litigation
U.S. Department of Justice, Civil Division
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Tel: (202) 598-8770
Email: Christina.P.Greer@usdoj.gov
PATRICK GLEN
KATHERINE J. SHINNERS
*Senior Litigation Counsel*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| M.A., *et al.*, | ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | Civil Action No. 1:23-cv-01843-TSC |
| Alejandro Mayorkas, *et al.*, | ) ) ) | |
| Defendants. | ) ) | |

## DEFENDANTS' REPLY IN SUPPORT OF THEIR CROSS MOTION FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS

INTRODUCTION........................................................................................................... 1

ARGUMENT ................................................................................................................. 1

I.    Plaintiffs' Claims Are Foreclosed on Multiple Threshold Grounds. .................................. 1

    A.    The Organizational Plaintiffs Lack a Cognizable Injury-in-Fact Traceable to the Challenged Procedures....................................................................................... 1

    B.    Section 1252(e)(3) Does Not Permit Suit to Remedy an Organization's Injury............................................................................................................................ 4

    C.    The Organizational Plaintiffs Are Not Within the Zone of Interests and Their Claims are Precluded by the INA. ........................................................................... 4

    D.    The Withdrawal and Third-Country Removal Claims Are Not Justiciable............ 5

        1.    The withdrawal and third-country removal claims are not redressable...... 5

        2.    The withdrawal procedure is not reviewable. ............................................. 6

        3.    The third-country removal claims are not reviewable. ............................... 7

    E.    All Individual Plaintiffs Lacking Injury Must Be Dismissed. ............................... 8

    F.    The Procedures Do Not Satisfy the "Final Agency Action" Requirement............ 8

        1.    Final agency action is required. ................................................................. 8

        2.    The Procedures are not "final agency action."........................................... 9

II.    The Rule is Consistent with the INA and Is Not Arbitrary and Capricious. .................... 10

    A.    The Rule Applies the "Significant Possibility" Standard and So Is Consistent with the INA's Credible Fear Provisions............................................................. 11

    B.    The Rule Is Not Arbitrary and Capricious and Is Reasonably Explained. ........... 12

        1.    The Rule applies the statutory "significant possibility" standard............. 12

        2.    The Departments reasonably explained their decision to apply the Rule during credible fear screenings........................................................ 13

        3.    The Rule reasonably applies the "reasonable possibility" standard where noncitizens do not establish significant possibility of asylum eligibility. .................................................................................................. 15

4.      The Rule did not fail to consider other policies, such as the Procedures, that have a bearing on the credible fear process. .................. 16

5.      The Departments did not rely on impermissible factors. .......................... 16

III.    The Procedures Are Lawful. ..................................................................................... 17

A.      The Third-Country Removal Guidance Is Consistent with the Statute and Not Arbitrary and Capricious ........................................................................... 17

B.      The Withdrawal Guidance Is Lawful, and Plaintiffs Have Failed to Establish Any Withdrawal Was "Involuntary." ................................................. 19

C.      The 24-Hour Consultation Guidance Is Consistent with the Statute and Regulations, Is Not Arbitrary and Capricious, and Is Sufficiently Explained...... 20

IV.     The Relief Plaintiffs Seek Is Improper and Must be Limited. ........................................ 21

A.      Universal Vacatur is Unavailable and Inappropriate. ........................................ 21

B.      The INA Bars the Individual Relief of Vacatur of Credible Fear Determinations and Parole. ....................................................................... 25

**CONCLUSION** ............................................................................................. **25**

# TABLE OF AUTHORITIES

## Cases

*Abuzeid v. Mayorkas*,
  62 F.4th 578 (D.C. Cir. 2023)......................................................................... 22

*Agility Pub. Warehousing Co. K.S.C.P. v. U.S. Dep't of Def.*,
  246 F. Supp. 3d 34 (D.D.C. 2017) ................................................................. 14

*\*AILA v. Reno*,
  199 F.3d 1352 (D.C. Cir. 2000) ....................................................................... 4

*\*Allied-Signal, Inc. v. U.S. Nuclear Regul. Comm'n*,
  988 F.2d 146 (D.C. Cir. 1993) ....................................................................... 23

*\*Am. Tort Reform Ass'n v. OSHA*,
  738 F.3d 387 (D.C. Cir. 2013) ......................................................................... 9

*Bennett v. Spear*,
  520 U.S. 154 (1997)........................................................................................ 10

*California v. Texas*,
  141 S. Ct. 2104 (2021)..................................................................................... 2

*Ctr. for Responsible Science v. Gottlieb*,
  346 F. Supp. 3d 29 (D.D.C. 2018) ................................................................... 3

*DRG Funding Corp. v. HUD*,
  76 F.3d 1212 (D.C. Cir. 1996) ....................................................................... 10

*\*FCC v. Fox Television Stations, Inc.*,
  556 U.S. 502 (2009)........................................................................................ 13

*Fontem US, LLC v. FDA*,
  82 F.4th 1207 (D.C. Cir. 2023) ....................................................................... 9

*\*Garland v. Aleman Gonzalez*,
  596 U.S. 543 (2022)................................................................................. 22, 23

*Grace v. Barr*,
  965 F.3d 883 (D.C. Cir. 2020) ............................................................. 6, 23, 25

*INS v. Legalization Assistance Project of L.A. Cty. Fed'n of Labor*,
  510 U.S. 1301 (1993)........................................................................................ 4

*Int'l Acad. of Oral Med. & Toxicology v. FDA*,
  195 F. Supp. 3d 243 (D.D.C. 2016) ................................................................. 3

*Kennecott Utah Copper Corp. v. U.S. Dep't of Interior*,
    88 F.3d 1191 (D.C. Cir. 1996) ................................................................. 12

*Kiakombua v. Wolf*,
    498 F. Supp. 3d 1 (D.D.C. 2020) ................................................. 11, 12, 17

*Kowalski v. Tesmer*,
    543 U.S. 125 (2004) .................................................................................. 4

*Kucana v. Holder*,
    558 U.S. 233 (2010) .................................................................................. 7

*Landon v. Plasencia*,
    459 U.S. 21 (1982) .................................................................................. 25

*Make the Road N.Y. v. Wolf*,
    962 F.3d 612 (D.C. Cir. 2020) ........................................................ 4, 6, 7

*Nat'l Min. Ass'n v. McCarthy*,
    758 F.3d 243 (D.C. Cir. 2014) ........................................................... 9, 10

*Nat'l Parks Conservation Ass'n v. Semonite*,
    925 F.3d 500 (D.C. Cir. 2019) ............................................................... 23

*Nat'l Taxpayers Union, Inc. v. United States*,
    68 F.3d 1428 (D.C. Cir. 1995) ................................................................. 3

*Nat'l Treas. Emps. Union v. United States*,
    101 F.3d 1423 (D.C. Cir. 1996) ............................................................... 3

*Patel v. Garland*,
    142 S. Ct. 1614 (2022) .............................................................................. 7

*Physicians for Soc. Resp. v. Wheeler*,
    956 F.3d 634 (D.C. Cir. 2020) ............................................................... 15

*Rochester Tel. Corp. v. United States*,
    307 U.S. 125 (1939) ................................................................................ 10

*Sure-Tan, Inc. v. NLRB*,
    467 U.S. 883 (1984) .................................................................................. 2

*Sw. Airlines Co. v. FERC*,
    926 F.3d 851 (D.C. Cir. 2019) ............................................................... 15

*Texas v. United States*,
    515 F. Supp. 3d 627 (S.D. Tex. 2021) ..................................................... 8

*United States v. Texas*,
   599 U.S. 670 (2023) ................................................................................. 1, 2, 5, 23

*WA All. of Tech. Workers v. DHS*,
   50 F.4th 164 (D.C. Cir. 2022), *cert. denied* No. 22-1071, 2023 WL 6377843 (U.S.
   Oct. 2, 2023) ................................................................................................. 11

*Zadvydas v. Davis*,
   533 U.S. 678 (2001) ......................................................................................... 8

## Federal Statutes

28 U.S.C. § 2241 ................................................................................................ 8

5 U.S.C. § 701(a)(1) ......................................................................................... 10

5 U.S.C. § 702(1) ............................................................................................. 24

5 U.S.C. § 704 ........................................................................................... 8, 9, 10

8 U.S.C. § 1158(a)(2)(A) ................................................................................... 19

8 U.S.C. § 1225(b) ............................................................................................. 4

8 U.S.C. § 1225(b)(1) ..................................................................................... 9, 10

8 U.S.C. § 1225(b)(1)(B) ................................................................................... 10

8 U.S.C. § 1225(b)(1)(B)(v) ............................................................................... 10

8 U.S.C. § 1231 ................................................................................................ 8

8 U.S.C. § 1231(b) ............................................................................................. 7

8 U.S.C. § 1231(b)(2) ....................................................................................... 17

8 U.S.C. § 1231(b)(2)(E) ................................................................................... 17

8 U.S.C. § 1231(b)(3)(A) ................................................................................... 19

8 U.S.C. § 1231(h) .......................................................................................... 7, 8

8 U.S.C. § 1252 ................................................................................................ 8

8 U.S.C. § 1252(a)(2)(A) ................................................................................. 5, 9

8 U.S.C. § 1252(a)(2)(A)(iii) .......................................................................... 10, 25

8 U.S.C. § 1252(a)(2)(B) ..................................................................................... 7

8 U.S.C. § 1252(a)(2)(B)(i) ................................................................................. 7

8 U.S.C. § 1252(a)(2)(B)(ii) ............................................................................ 6, 7

8 U.S.C. § 1252(a)(5) ........................................................................................ 5

8 U.S.C. § 1252(b)(9) ........................................................................................ 5

8 U.S.C. § 1252(e) .......................................................................................... 10

8 U.S.C. § 1252(e)(1) ...................................................................................... 23

8 U.S.C. § 1252(e)(1)(B) ................................................................................. 23

8 U.S.C. § 1252(e)(3) ................................................... 4, 5, 6, 7, 8, 9, 22, 23, 25

8 U.S.C. § 1252(e)(3)(A)(ii) ............................................................................ 23

8 U.S.C. § 1252(e)(3)(C) ................................................................................. 23

8 U.S.C. § 1252(f) ........................................................................................... 22

8 U.S.C. § 1252(f)(1) ........................................................................... 21, 22, 23

8 U.S.C. § 1255a ............................................................................................... 4

## Federal Regulations

*Aliens Subject to a Bar on Entry Under Certain Presidential Proclamations; Procedures for Protection Claims,*
   83 Fed. Reg. 55,934 (Nov. 9, 2018) ............................................................ 12, 13

*Asylum Eligibility and Procedural Modifications,*
   84 Fed. Reg. 33,829 (July 16, 2019) ........................................................... 12, 13

*Circumvention of Lawful Pathways,*
   88 Fed. Reg. 11,704 (Feb. 23, 2023) ....................................................... 13, 14, 15

*Circumvention of Lawful Pathways,*
   88 Fed. Reg. 31,314 (May 16, 2023) ............................. 1, 11, 12, 14, 15, 16, 17, 25

*Procedures for Credible Fear Screening and Consideration of Asylum, Withholding of Removal, and CAT Protection Claims by Asylum Officers,*
   87 Fed. Reg. 18,078 (Mar. 29, 2022) ................................................................ 14

## Miscellaneous

Antonin Scalia & Bryan A. Garner,
   Reading Law: The Interpretation of Legal Texts (2012) ...................................... 11

**INTRODUCTION**

The joint Department of Homeland Security (DHS) and Department of Justice (DOJ) rule *Circumvention of Lawful Pathways*, 88 Fed. Reg. 31,314 (May 16, 2023) (Rule), and guidance implementing certain procedures applicable in expedited removal proceedings (Procedures) have for the past seven months helped to ensure the continued functioning of the U.S. immigration and asylum systems during unprecedented irregular migration throughout the Western Hemisphere. Plaintiffs do not dispute that without these policies and procedures the urgent enforcement situation at the southwest border would threaten to overwhelm the immigration system. They nevertheless urge that the Rule's application in expedited removal and the Procedures be invalidated under the Administrative Procedure Act (APA) and the Immigration and Nationality Act (INA). As explained, Plaintiffs' claims fail on multiple threshold grounds, Gov't Mot., Dkt. 53, 13–28; the Rule and Procedures are consistent with statutory authority, reasonable, and reasonably explained, *id.* at 28–57; and the relief Plaintiffs seek is barred by the INA and unjustified by the equitable principles governing APA remedies, *id.* at 57–65. Should the Court find any relief warranted, the Court should remand to the agencies without vacatur, *id.* at 63–65, or at a minimum stay any order for fourteen days to allow the government to seek emergency relief in the court of appeals, if warranted, *id.* at 65.

**ARGUMENT**

I.    **Plaintiffs' Claims Are Foreclosed on Multiple Threshold Grounds.**

A.    **The Organizational Plaintiffs Lack a Cognizable Injury-in-Fact Traceable to the Challenged Procedures.**

The Organizational Plaintiffs lack a cognizable injury for the same reasons as the plaintiff States in *United States v. Texas*, 599 U.S. 670 (2023). Gov't Mot. 13–15. Contrary to Plaintiffs' arguments, that decision is not only about whether a third party may sue to compel arrest or

prosecutions. *See* Opp., Dkt. 57, 11. It recognizes the broader principle that third parties—whether individuals or organizations—lack a "judicially cognizable interest" in whether or how the Executive exercises its immigration enforcement discretion against someone else. *Sure-Tan, Inc. v. NLRB*, 467 U.S. 883, 897 (1984), *cited in Texas*, 599 U.S. at 677. Plaintiffs do not dispute that each of the reasons articulated in *Texas* to support its conclusion that the States lacked standing— including that discretionary immigration enforcement decisions relating to third parties involve no exercise of coercive power over the plaintiff; that those decisions implicate Article II and foreign-policy concerns; and that courts lack "meaningful standards" to assess such decisions, *see id.* at 678–81—apply with equal force here. *See* Gov't Mot. 14. Adhering to *Texas*'s principles does not undermine "vast swaths" of case law regarding organizational standing, Opp. 11, but instead respects the notion that litigants have no cognizable injuries stemming from how the Executive exercises its discretion concerning immigration enforcement.

Moreover, Organizational Plaintiffs' claimed injuries relating to contacting clients in Customs and Border Protection (CBP) custody[1] are not traceable to the Rule or Procedures challenged on summary judgment, including U.S. Citizenship and Immigration Services' (USCIS) "24-Hour Consultation Procedure." *See* Dkt. 30 at ¶ 2 (agreeing to hold such claims in abeyance). Plaintiffs' alleged injuries thus cannot supply standing to challenge other independent practices. *See California v. Texas*, 141 S. Ct. 2104, 2120 (2021) (plaintiff states' alleged costs arising from independent provisions of the Affordable Care Act could not support their claim that the Act's unenforceable individual mandate provision was unconstitutional).

Leaving aside the claimed injuries not traceable to challenged agency action, Plaintiffs'

---

[1] *See* Opp. 10 (asserting RAICES has made "changes to reach individuals in CBP custody" and that Las Americas has "reworked its representation model" to provide more consultations in Mexico because it cannot reach people in CBP custody), 12 (asserting that "RAICES has diverted staff time away from representing people detained by ICE to those detained by CBP").

arguments still fail because the challenged actions do not directly interfere with the Organizational Plaintiffs' ability to provide legal representation to credible fear interviewees. *See Nat'l Treas. Emps. Union v. United States*, 101 F.3d 1423, 1430 (D.C. Cir. 1996) (the "action challenged" must be "at loggerheads with the stated mission of the plaintiff" (internal quotation omitted)); *see also* Gov't Mot. 15–17. The Organizational Plaintiffs claim their representation is more time intensive because they must advise clients about the Rule and potential alternatives to expedited removal, such as withdrawal or voluntary return. Opp. 10. But their voluntary reallocation of resources does not establish the requisite injury. *See Ctr. for Responsible Science v. Gottlieb*, 346 F. Supp. 3d 29, 41 (D.D.C. 2018) ("[S]omething about the challenged action itself—rather than the organization's response to it—[must] make[] the organization's task more difficult.").

Plaintiffs also fail to point to a true diversion of resources to counteract any claimed injury. *See Int'l Acad. of Oral Med. & Toxicology v. FDA*, 195 F. Supp. 3d 243, 256 (D.D.C. 2016). It is not enough that organizations have allegedly shifted resources to prepare clients in Mexico, changed some aspects of their client preparation process, or updated their educational materials. Opp. 11. None of this represents "operational costs beyond those normally expended." *Int'l Acad.*, 195 F. Supp. 3d at 256 (quoting *Nat'l Taxpayers Union, Inc. v. United States*, 68 F.3d 1428, 1434 (D.C. Cir. 1995)). Instead, these actions represent a "continuation" of the organizations' "core set of activities" (credible fear preparation). *See id.* at 258. The Organizational Plaintiffs cite no facts alleging they expended *additional* resources to counteract any difficulty in preparing clients for interviews that would otherwise have been devoted to tasks of a different character, that shifting resources to Mexico has increased their costs, or that any updates to their materials were done to "counteract" their claimed injury of more time-intensive credible fear consultations.[2]

---

[2] Although some courts in this district have recognized somewhat similar injuries asserted by legal

**B.      Section 1252(e)(3) Does Not Permit Suit to Remedy an Organization's Injury.**

Circuit precedent clearly holds that suit under 8 U.S.C. § 1252(e)(3), the provision the Organizational Plaintiffs rely on for jurisdiction, *see* Compl. ¶ 17, must be brought to vindicate the interests of *individuals* subject to expedited removal. "Congress must have contemplated that lawsuits challenging [§ 1225(b) and implementing regulations and policies] would be brought, if at all, by individual aliens who—during the sixty-day period—were aggrieved by the statute's implementation." *AILA v. Reno*, 199 F.3d 1352, 1359 (D.C. Cir. 2000); *see* Gov't Mot. 17–19. As explained, Gov't Mot. 17–18, and contrary to Plaintiffs' arguments, Opp. 13–14, the D.C. Circuit recently reaffirmed this view in *Make the Road*. The court focused on the challenge at issue—an associational organization of individual noncitizens directly regulated by an expedited removal regulation. *Make the Road N.Y. v. Wolf*, 962 F.3d 612, 626–27 (D.C. Cir. 2020). But it adhered to *AILA*'s holding that § 1252(e)(3) contemplates only suits on behalf of individuals—individually, or through an organization *made up of individual members* directly covered by the regulation at issue bringing a "derivative" claim "on behalf of their individual members." *Id.* at 627–28.

**C.      The Organizational Plaintiffs Are Not Within the Zone of Interests and Their Claims are Precluded by the INA.**

The Organizational Plaintiffs' interests in providing legal services to those in the credible fear process are also not within the zone of interests protected by INA. Gov't Mot. 19–20.[3]

---

services organizations as sufficient to establish standing, *see* Opp. 12 (citing cases), under the specific facts asserted, the Organizational Plaintiffs have not shown a true diversion of resources connected to the claimed injury arising from the Rule and Procedures. And Plaintiffs have no substantive response to the principle that lawyers have no independent litigable interest in the legal rules applicable to their clients. *See* Gov't Mot. 17 (citing *Kowalski v. Tesmer*, 543 U.S. 125, 130– 34 (2004); *see also* Opp. 12 n.7 (only contending that *Kowalski* did not involve an Article III organizational standing inquiry). Allowing a legal services organization's claims to go forward in this context allows lawyers to bring suit in contravention of *Kowalski*.

[3] Contrary to Plaintiffs' assertion, Opp. 16, Justice O'Connor's decision in *INS v. Legalization Assistance Project of L.A. Cty. Fed'n of Labor*, 510 U.S. 1301 (1993), involved provisions of the INA. *See id.* at 1302 (discussing INA amendments at 8 U.S.C. § 1255a).

Although the INA provides that *noncitizens* subject to removal be permitted consultation and given information about pro bono legal services providers, *see* Opp. 13, the INA does not evince any concern with the interests of the legal services organizations themselves. And the Supreme Court recently reinforced that non-regulated parties have no general cognizable interest in how the INA is enforced against others. *Texas*, 599 U.S. at 677.

The INA's statutory review scheme also forecloses review of the Organizational Plaintiffs' claims, by strictly limiting administrative and judicial review to review at the behest of individual noncitizens. Gov't Mot. 20–21 (citing 8 U.S.C. § 1252(a)(2)(A), (a)(5), (b)(9), (e)(3)). Plaintiffs' response that § 1252(e)(3) permits other judicial review, Opp. 16, is contrary to Circuit precedent, as discussed above, *see supra* p. 4. Further, that provision's narrow exceptions to the statute's overall limitations on judicial review are hardly the "broad grant of jurisdiction" that Plaintiffs claim, *see* Opp. 16, and do not overcome Congress's intent to preclude the organizations' claims.

### D.    The Withdrawal and Third-Country Removal Claims Are Not Justiciable.

   1.    The withdrawal and third-country removal claims are not redressable.

Plaintiffs fail to explain how their alleged injuries may be redressed by an order of this Court vacating the withdrawal or third-country removal procedures, and they misunderstand the Departments' argument. *See* Opp. 2–3. As the Departments explained, even if the Court were to vacate the procedures, the statute would continue to read as it does, and DHS would retain the discretion to take the same actions. Gov't Mot. 21–22; *see infra* pp. 17–18. As Justice Gorsuch recently explained in a concurrence on behalf of three justices in *Texas*, redressability is lacking where vacatur "does nothing to change the fact that federal officials possess the same underlying ... discretion," or "require federal officials to change how they exercise" their statutory authority. 143 S. Ct. at 1978–79 (Gorsuch, J., concurring). That is precisely the situation here, as an order vacating these two procedures would do nothing to prevent DHS officials from using their

withdrawal and third-country removal authorities as they see fit in individual cases generally or with any Individual Plaintiff in any future processing.

2.     The withdrawal procedure is not reviewable.

Contrary to Plaintiffs' assertions, Opp. 4–6, there are two different withdrawal procedures—for CBP and for USCIS. And because no Individual Plaintiff voluntarily withdrew their application for admission under the CBP procedure, no Individual Plaintiff has standing to challenge the CBP procedure. *See* Opp. 5 n.4 (accepting the premise that J.P. and E.B. withdrew their applications before USCIS). Plaintiffs' claim that the two procedures are part of a greater whole and so cannot be viewed separately, *id.*, conflicts with their concession that USCIS (but not CBP) has changed its procedure, *id.* at 5. And because USCIS has updated its advisals, Plaintiffs' challenge to the prior procedure is moot. Gov't Mot. 23.[4]

Even if CBP's and USCIS's withdrawal procedures are otherwise justiciable, review is barred by 8 U.S.C. § 1252(a)(2)(B)(ii) ("no court shall have jurisdiction to review ... any other decision or action of ... the Secretary ... the authority for which is specified under this subchapter to be in the discretion of ... the Secretary"). Gov't Mot. 23–24. Although the D.C. Circuit previously held that § 1252(a)(2)(B)(ii) does not bar jurisdiction over policies implementing the expedited removal system that § 1252(e)(3) explicitly provides jurisdiction to review, *see Grace v. Barr*, 965 F.3d 883, 894 (D.C. Cir. 2020); *Make the Road*, 962 F.3d at 631, that conclusion

---

[4] Plaintiffs' application of the "voluntary cessation" exception to mootness, Opp. 4, is misplaced. That doctrine aims to preventing defendants "from manipulating the judicial process," *Alaska v. USDA*, 17 F.4th 1224, 1227 (D.C. Cir. 2021) (quoting *Clarke v. United States*, 915 F.2d 699, 705 (D.C. Cir. 1990) (en banc)), but USCIS updated its procedure almost two weeks before suit was filed. *Compare* Dkt. 53-3 at 54 (showing revision date of June 11, 2023), *with* Dkt. 1 (filed June 23, 2023). And Plaintiffs' claims as to the possibility of recurrence, Opp. 4, are speculative. Similarly, as to their claims that the withdrawal form requires disclaiming fear in one's home country, Opp. 3, the English-language form was updated to change "my country" to "Mexico" before litigation began, AR (CBP Withdrawals) 333–34. The Spanish-language form has since been updated in the same manner. *See* Ex. A, De Freitas Decl. ¶ 5 & Ex. 2.

assumed that § 1252(a)(2)(B) regards only challenges to individual determinations. *Id.* at 630. The Supreme Court has since rejected that premise, explaining that § 1252(a)(2)(B)(i) (the neighboring provision of § 1252(a)(2)(B)(ii) at issue here), which strips courts of jurisdiction to review "any judgment regarding the granting of relief" under certain INA provisions, bars review of "judgments of whatever kind" covered by the statute, "not just discretionary judgments or the last-in-time judgment." *Patel v. Garland*, 142 S. Ct. 1614, 1622 (2022). This bar to review thus "encompasses not just the granting of relief but also any judgment relating to the granting of relief," such as the procedures for implementing discretionary decisions. *Id.*

It does not matter that § 1252(a)(2)(B)(i) uses the term "judgment" while § 1252(a)(2)(B)(ii) uses the phrase "decision or action." Opp. 7. Plaintiffs do not explain why the procedures at issue would not constitute an "action" or meaningfully address the Supreme Court's observation in *Kucana v. Holder*, 558 U.S. 233, 247 (2010), that "[o]ther decisions specified by statute 'to be in the discretion of the [Secretary],' and therefore shielded from court oversight by § 1252(a)(2)(B)(ii), are of a like kind" to those covered by § 1252(a)(2)(B)(i). Plaintiffs also argue that they do not challenge any decisions made discretionary by statute because they challenge whether the procedures follow the statute and regulations. Opp. 6–7. But again, under *Patel*, it is not just the ultimate discretionary determination or "last-in-time" decision or action that is precluded from judicial review under § 1252(a)(2)(B)(ii). 142 S. Ct. at 1622.

   3.   The third-country removal claims are not reviewable.

For the same reasons, § 1252(a)(2)(B)(ii) bars review of the third-country removal guidance to the extent it involves removals to countries other than those designated by a noncitizen. *See* Gov't Mot. 24–25. And contrary to Plaintiffs' arguments, Opp. 7–8, § 1231(h) also bars this aspect of their suit. In arguing that § 1252(e)(3) and the APA render § 1231(b) judicially enforceable notwithstanding § 1231(h), Opp. 8, Plaintiffs primarily rely on *Zadvydas v. Davis*, 533

U.S. 678, 687–88 (2001). But that case is inapposite. The noncitizens in *Zadvydas* filed habeas corpus petitions, contending that the government lacked authority to detain them under any provision of law, including § 1231. *See* 533 U.S. at 689. Here, by contrast, because Plaintiffs rely on § 1231 to assert additional "substantive or procedural right[s]" that do not implicate 28 U.S.C. § 2241 or the Suspension Clause's protections against unlawful detention, § 1231 bars their suit. And their claim that § 1252(e)(3) provides authority is incorrect. Section 1252(e)(3) merely restores narrow jurisdiction over policies and procedures implementing expedited removal that would otherwise be barred by § 1252, but does not independently provide a cause of action or render reviewable that which is not independently reviewable, or expand APA jurisdiction to cover agency actions that are not otherwise reviewable under the APA.[5]

### E.      All Individual Plaintiffs Lacking Injury Must Be Dismissed.

Plaintiffs do not dispute that not all Individual Plaintiffs were injured by each Procedure. Opp. 4 n.3. Although they are correct that at this time at least one Individual Plaintiff claims injury from each Procedure, *id.*, the Departments maintain that those who do not establish injury as to a given Procedure should have their individual claim dismissed as to that Procedure, Gov't Mot. 26.

### F.      The Procedures Do Not Satisfy the "Final Agency Action" Requirement.

#### 1.      Final agency action is required.

Plaintiffs incorrectly assert that final agency action is not required. Opp. 8–9. Plaintiffs' cause of action arises under the APA, not § 1252(e)(3). *See generally* Compl. Claims for Relief. The APA authorizes review of "[a]gency action made reviewable by statute and final agency action." 5 U.S.C. § 704. The INA does not make the Procedures reviewable, and, thus, "final

---

[5] Plaintiffs also cite a decision by an out-of-circuit district court allowing for an APA challenge despite § 1231(h), Opp. 8 (citing *Texas v. United States*, 515 F. Supp. 3d 627, 634 (S.D. Tex. 2021)), but notably that case did not involve the special expedited-removal review scheme.

agency action" is required. Specifically, § 1252(a)(2)(A) prohibits jurisdiction over any "cause or claim arising from or relating to the implementation or operation of an order of removal" under the expedited removal statute at § 1225(b)(1), and § 1252(e)(3) restores review over the implementation of the expedited removal statute, but only as to "whether such a regulation, or a written policy directive, written policy guideline, or written procedure ... is not consistent with applicable provisions of this subchapter or is otherwise in violation of law." Contrary to Plaintiffs' argument, this statement does not make all "written procedure[s]" reviewable but rather says that any such reviewable written documents may only be reviewed to determine their consistency with the INA and whether they are in violation of law. This does not displace the APA's "final agency action" requirement, and Plaintiffs' reliance on *Fontem US, LLC v. FDA*, 82 F.4th 1207, 1214 (D.C. Cir. 2023), Opp. 8–9, which construes a different statutory scheme employing different language, is thus unavailing.

       2.      The Procedures are not "final agency action."

      Contrary to Plaintiffs' claims, Opp. 9, the Procedures are not reviewable final agency action under 5 U.S.C. § 704, Gov't Mot. 26–28. First, the withdrawal and third-country removal guidance do not bind DHS employees to any particular action with respect to any individual or class of noncitizens,[6] and so are not "final agency action" under the APA. *Am. Tort Reform Ass'n v. OSHA*, 738 F.3d 387, 395 (D.C. Cir. 2013); *Nat'l Min. Ass'n v. McCarthy*, 758 F.3d 243, 253 (D.C. Cir. 2014) ("statement of policy" not "final agency action" unless and until it is applied to a regulated entity). Second, by merely restating the agency's undisputed statutory authority, the withdrawal

---

[6] *See, e.g.*, AR (CBP Withdrawals) 3 ("Effective May 12, 2023, ... individuals from *Cuba, Haiti, Nicaragua, and Venezuela* (CHNV) may be considered, in the exercise of discretion, amenable for voluntary withdrawal of their application for admission ... In the exercise of discretion of the agent and based on the facts and circumstances known to the agent, such individuals may be offered the opportunity to voluntarily withdraw (VD) their application for admission ....").

and third-country removal guidance do not create any rights or obligations or produce legal consequences on their own, and so do not constitute final agency action. *See id.* at 253. Third, the consultation guidance sets out how USCIS will implement its consultation authority but does not itself affect any Plaintiffs—it does so only contingent on "future administrative action." *DRG Funding Corp. v. HUD*, 76 F.3d 1212, 1214 (D.C. Cir. 1996) (quoting *Rochester Tel. Corp. v. United States*, 307 U.S. 125, 130 (1939)). As to all three Procedures, only Plaintiffs who have removal orders may bring suit, and they may challenge only their removal order—the relevant final agency action. *See id.* And any such challenge is strictly limited: Section 1252(a)(2)(A)(iii) unambiguously precludes judicial review concerning "the application of [§ 1225(b)(1)] to individual aliens, including the determination made under section 1225(b)(1)(B)" concerning credible fear, and nothing in § 1252(e) restores jurisdiction over such individual claims. *See* 5 U.S.C. §§ 701(a)(1), 704 (precluding review of final agency action if statute bars judicial review). Plaintiffs' claim that the Procedures are "final agency action" because they "alter the legal regime," *see* Opp. 9 (quoting *Bennett v. Spear*, 520 U.S. 154, 177 (1997)), is unavailing because, as discussed, Gov't Mot. 21–22, the Procedures do not alter the legal regime.

## II.     The Rule is Consistent with the INA and Is Not Arbitrary and Capricious.

The Rule's approach is entirely consistent with the INA's definition of "credible fear of persecution." 8 U.S.C. § 1225(b)(1)(B)(v) (defining "credible fear of persecution" as "a significant possibility ... that the alien could establish eligibility for asylum"). The Rule applies its condition on asylum eligibility during credible fear screenings and applies the "significant possibility" standard to the consideration of the presumption. Gov't Mot. 10–11, 28–45. And where the presumption applies and the noncitizen is not exempt or able to rebut it, the Rule reasonably applies the "reasonable possibility" standard to screen for withholding and CAT. These choices are consistent with the INA, reasonable, and reasonably explained.

A.      **The Rule Applies the "Significant Possibility" Standard and So Is Consistent with the INA's Credible Fear Provisions.**

Plaintiffs incorrectly assert that because the adopted regulatory text does not explicitly set forth the "significant possibility" standard, the Rule does not require adjudicators to apply that statutory standard.[7] Compl. ¶ 141; Pls.' Mot., Dkt. 37, 10–15; Opp. 16–21; Gov't Mot. 28–31. But as the Departments explained, the text merely provides the order of operations and must be read in context—that is, considering the statutory "significant possibility" standard, the Departments' previous use of the same language to require the application of that standard,[8] and the contemporaneous explanation in the preamble regarding how the "significant possibility" standard applies.[9] Gov't Mot. 28–31. This explanation is not, as Plaintiffs assert, Opp. 16–21, post hoc.

Moreover, the Rule does not attempt to define or add any gloss to the "significant possibility" standard and does not raise the problems discussed in *Kiakombua v. Wolf*, 498 F. Supp. 3d 1, 41 (D.D.C. 2020). In *Kiakombua*, the court concluded that USCIS guidance defining the "significant possibility" standard as requiring "the applicant to identify more than significant evidence that the applicant is a refugee" violated the INA's definition of "credible fear of persecution," which uses the phrase "could establish" eligibility rather than "*is* a refugee."

---

[7] In count one of their Complaint, Plaintiffs assert that the Rule is contrary to the INA because it "improperly requires asylum officers to apply factors not relevant to whether a person has a 'credible fear of persecution.'" Dkt. 19 ¶ 141. The Departments moved for summary judgment on this claim, Gov't Mot. 28–29, but Plaintiffs have waived it by not responding, *see generally* Opp.
[8] *See* 88 Fed. Reg. at 31,380 n.195 (noting where rules that used "is" in the same way as this Rule were contemporaneously interpreted to maintain and apply the "significant possibility" standard); *cf. WA All. of Tech. Workers v. DHS*, 50 F.4th 164, 180–81 (D.C. Cir. 2022), *cert. denied* No. 22-1071, 2023 WL 6377843 (U.S. Oct. 2, 2023) ("If a statute uses words or phrases that have already received authoritative construction by ... a responsible administrative agency, they are to be understood according to that construction." (quoting Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 322 (2012)).
[9] *See* 88 Fed. Reg. at 31,380 ("When it comes to the rebuttable presumption, the AO will determine whether there is a significant possibility that the noncitizen would be able to show at a full hearing by a preponderance of the evidence that the presumption does not apply or that they meet an exception to or can rebut the presumption.").

*Kiakombua*, *id.* at 41. As explained in the Rule, 88 Fed. Reg. at 31,380 n. 195, and unlike in *Kiakombua*, the Departments have historically used the challenged language to employ the "significant possibility" standard and contemporaneously explained as much, *see id.* at 31,380.

Finally, the Departments provide the training materials to rebut Plaintiffs' and Amici's claims that the "significant possibility" standard is not being applied, *see* Pls.' SUF ¶ 186; Dkt. 37-4 ¶ 30; Amicus Br. 11. Plaintiffs' dissatisfaction with the language used in other portions of the training materials, Opp. 19 & n.11, does not change that the training materials explicitly instruct officers to apply the "significant possibility" standard, *see* Dkt. 53-3 at 15.

**B.      The Rule Is Not Arbitrary and Capricious and Is Reasonably Explained.**

1.      The Rule applies the statutory "significant possibility" standard.

Plaintiffs again repackage their statutory argument, asserting the Rule is arbitrary and capricious because the Departments either departed from the statutory "significant possibility" standard or failed to adequately explain how the regulatory text ensures that it will be applied. Pls.' Mot. 16–17. As discussed above, *supra* pp. 11–12, it is clear from the text and context of the Rule that the "significant possibility" standard applies.

Plaintiffs' reliance on *Kennecott Utah Copper Corp. v. U.S. Dep't of Interior*, 88 F.3d 1191, 1220 (D.C. Cir. 1996), is misplaced. Unlike the rule at issue there, the Departments have consistently used the present tense "is" in connection with regulatory conditions on asylum eligibility at the credible fear stage and contemporaneously explained that the "significant possibility" standard applied when using such language. In both *Asylum Eligibility and Procedural Modifications*, 84 Fed. Reg. 33,829 (July 16, 2019), and *Aliens Subject to a Bar on Entry Under Certain Presidential Proclamations; Procedures for Protection Claims*, 83 Fed. Reg. 55,934 (Nov. 9, 2018), the Departments amended the DHS credible fear regulations to instruct asylum officers to "enter a negative credible fear determination with respect to the alien's intention to apply for

asylum" if "the alien *is found* to be" subject to the relevant bar. 84 Fed. Reg. at 33,843 (emphasis added); 83 Fed. Reg. at 55,952 (same). Those rules also amended the EOIR regulations using the phrase "is determined." 84 Fed. Reg. at 33,844; 83 Fed. Reg. at 55,952. The preambles of both rules confirmed that the "significant possibility" standard applied by stating that under each rule "[i]f there is a significant possibility that the alien is not subject to the eligibility bar (and the alien otherwise demonstrates that there is a significant possibility that he or she can establish eligibility for asylum), then the alien will have established a credible fear." 84 Fed. Reg. at 33,837; 83 Fed. Reg. at 55,943. Plaintiffs are thus wrong that "those rules employed *different* language and regulatory changes (which the agency ignored)." Opp. 22.

Plaintiffs' continued reliance on language in the preamble of the notice of proposed rulemaking, *Circumvention of Lawful Pathways*, 88 Fed. Reg. 11,704 (Feb. 23, 2023) (NPRM), to suggest that the Departments changed their interpretation of the regulatory text is misplaced, as is their claim that Defendants do not "dispute that the NPRM proposed the Rule with the understanding that 'adjudicators would not apply the significant-possibility standard to the ban.'" Opp. 21–22 (quoting Pls.' Mot. 17); Gov't Mot. 34 ("Plaintiffs' belief that this language shows the Departments understood the 'significant possibility' standard would not be applied is wrong."). As the Departments explained, in response to comments the final rule properly clarified what was an unclear explanation in the NPRM. Gov't Mot. 34–35.

> 2. The Departments reasonably explained their decision to apply the Rule during credible fear screenings.

Plaintiffs' disagreement with the Departments' explanation for changing policies (Opp. 22–24) does not render the change arbitrary and capricious. An agency is not required to justify a change in policy by reasons more substantial than those required to adopt the policy in the first instance. *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 514–15 (2009). The Departments

explained at length the reasons for changing policy in both the NPRM and the final Rule, and in doing so addressed each issue Plaintiffs raise. 88 Fed. Reg. at 11,742, 11,744–45; 88 Fed. Reg. at 31,336, 31,381; Gov't Mot. 35–40. To the extent Plaintiffs disagree about the complexity of the Rule compared to the statutory bars, not only is it logical that applying one condition in a subset of cases where it appears to be applicable would be simpler than mandating application of six or more bars in every case, 88 Fed. Reg. at 11,744, but it is the Departments—not Plaintiffs—who are best placed to understand what will be simpler for their adjudicators,[10] *cf. Agility Pub. Warehousing Co. K.S.C.P. v. U.S. Dep't of Def.*, 246 F. Supp. 3d 34, 49 (D.D.C. 2017) ("The Court may not substitute its judgment for that of the agency about the agency's use of its own resources[.]"). The Departments also addressed the concerns underlying their prior conclusion that considerations of "procedural fairness" counseled against "broad-based application of mandatory bars at the credible fear stage," *Procedures for Credible Fear Screening and Consideration of Asylum, Withholding of Removal, and CAT Protection Claims by Asylum Officers*, 87 Fed. Reg. 18,078, 18,094 (Mar. 29, 2022) (Asylum Processing IFR), which were that noncitizens should have a "reasonable and fair opportunity" to contest application of the bars, "particularly in cases with complicated facts," and that mandatory consideration of every bar at the credible fear stage would not "preserve the efficiencies Congress intended in making credible fear screening as part of the expedited removal process," *id.* Specifically, the Departments evaluated at length whether consideration of *this* condition on eligibility during credible fear screenings would raise due process concerns, 88 Fed. Reg. at 31,380, 31,353–63, and determined that under the circumstances, considering the presumption during credible fear was warranted.

Importantly, Plaintiffs do not dispute (or even mention) the most important justification for

---

[10] The fact that the Rule has allowed for significantly more credible fear interviews vindicates the Departments' claims on this front. Dkt. 53-1 ¶¶ 6–8.

the policy change: Between the Asylum Processing IFR in March 2022 and the Rule in May 2023, circumstances changed such that the "current and impending situation on the ground along the SWB warrant[ed] departing in some respects from the approach generally applied in credible fear screenings," 88 Fed. Reg. at 31,336; *see also* 88 Fed. Reg. at 11,742 ("to respond to the current and impending exigent circumstances, the interests balance differently and warrant a different approach from the one generally applied in credible fear screenings"). Such reweighing of the interests at stake is well within the Departments' authority and satisfies the requirements for reasoned decisionmaking. *Physicians for Soc. Resp. v. Wheeler*, 956 F.3d 634, 644 (D.C. Cir. 2020) ("Reasoned decision-making requires that when departing from precedents or practices, an agency must 'offer a reason to distinguish them or explain its apparent rejection of their approach.'" (quoting *Sw. Airlines Co. v. FERC*, 926 F.3d 851, 856 (D.C. Cir. 2019)).

      3.     The Rule reasonably applies the "reasonable possibility" standard where noncitizens do not establish significant possibility of asylum eligibility.

Plaintiffs continue to assert that in adopting the "reasonable possibility" standard for statutory withholding and CAT for those who are subject to the presumption and cannot meet an exception or rebut it, the Departments relied on a flawed analogy to reasonable fear screenings. Opp. 24–25. But the analogy is sound. It is logical to screen applications with a higher burden of proof ("more likely than not" for withholding and CAT as opposed to "well-founded fear" for asylum) using a higher standard ("reasonable possibility" for withholding and CAT as opposed to "significant possibility" for asylum). 88 Fed. Reg. at 11,746–47. Plaintiffs ignore this rationale, which is the thrust of the Department's reasoning, and Plaintiffs' premises remain faulty for the reasons the Departments identified. *See* Gov't Mot. 40–42. Finally, the comment Plaintiffs identify to support their claim that this issue was raised by commenters, Opp. 25 (citing CLP_PC_032948), does not do so. At most the comment notes that such determinations are reviewable; it does not

claim that the availability of judicial review makes reasonable fear an improper analogy.

        4.      The Rule did not fail to consider other policies, such as the Procedures, that have a bearing on the credible fear process.

As explained, Gov't Mot. 42–43, Plaintiffs err in asserting that the Departments failed to consider what Plaintiffs refer to as interrelated policies—specifically, the procedures allowing for non-Mexicans to be removed to Mexico, withdrawal of applications for admission, and conducting credible fear interviews in CBP custody. Opp. 25–26. At their core, Plaintiffs' arguments reveal that they seek to substitute their own judgment for that of the Departments. As to the third-country removal procedure, they assert that the Departments should have considered that the policy would "depress credible fear passage rates," Opp. 26, but their argument gets things backwards. The third-country removal procedure would not have the impact it does without the Rule. That is because it is only where the Rule's presumption applies that noncitizens are then screened for a "reasonable possibility" of persecution or torture in the designated country of removal. It is similarly unclear what Plaintiffs believe the Departments should have considered regarding their unsupported assertion that the withdrawal procedure depresses credible fear passage rates. *See id.* And finally, as to their claim that the Departments failed to properly consider comments regarding the practice of conducting credible fear interviews while noncitizens are in CBP custody, *id.*, the Departments properly determined them to be outside the scope of the rulemaking, *see* 88 Fed. Reg. at 31,363, and Plaintiffs are not challenging that decision here, *see supra* p. 2.

        5.      The Departments did not rely on impermissible factors.

Finally, Plaintiffs continue to incorrectly assert that the Rule is arbitrary and capricious because it relies on disagreement with Congress's choice to adopt a "low" screening standard. Opp. 26–27. Plaintiffs do not respond to the Departments' point that Congress could have allowed the Executive to create only conditions on discretion, which could not be applied during credible

fear, but instead explicitly allowed for conditions on eligibility, which can. Gov't Mot. 44 (citing *Kiakombua*, 498 F. Supp. 3d at 42). It is entirely consistent with the statute, Congress's intent, and the legislative history for the Departments to exercise their authority to create a condition on asylum eligibility and to apply it during credible fear screenings. *See* Gov't Mot. 44–45.

## III.     The Procedures Are Lawful.

Plaintiffs' arguments regarding the Procedures in their opposition rest on the same misunderstandings as their original motion. *See* Opp. 27–33.

### A.     The Third-Country Removal Guidance Is Consistent with the Statute and Not Arbitrary and Capricious.

Because of limitations on the ability to remove nationals of Cuba, Haiti, Nicaragua, and Venezuela (CHNV), DHS implemented guidance to effectuate removal, in appropriate cases, to a third country, *i.e.*, Mexico. *See* 88 Fed. Reg. at 31,444 (noting limitations on removal); *see also* AR (CBP Removals) 321–25 (memorandum); *id.* at 22–24 (CBP designation worksheet). As documented in the Departments' motion, both the memorandum and worksheet track exactly the statutory framework for designating a country of removal. *See* Gov't Mot. 45–47. These documents, like the statute, give priority to the country designated by the noncitizen, followed by the country of nationality or citizenship, as well as any other possible alternative country to which the noncitizen has a qualifying connection. *Compare* AR (CBP Removals) 22–23, 322 (setting forth this hierarchy of consideration), *with* 8 U.S.C. § 1231(b)(2) (mandating this order of consideration and providing relevant exceptions at each step). Only if it is "impracticable, inadvisable, or impossible" to remove the noncitizen to any of the countries identified in the statute may CBP proceed to designating a third country that will accept the noncitizen, *see* AR (CBP Removals) 23, as permitted by the statute, *see* 8 U.S.C. § 1231(b)(2)(E).

Plaintiffs concede that the memorandum and worksheet are a faithful statement of the

statutory process for designating a country of removal. *See* Opp. 29. They nonetheless repeat their erroneous argument that CBP is in fact applying the "impracticable, inadvisable, or impossible" standard of the final step at the threshold to trump the designation determinations that would otherwise be relevant at the first three steps. *See id.* at 27–29. As with their initial motion, however, Plaintiffs cite nothing in either the memorandum or worksheet to establish that the guidance permits designation of a third country *except* in the circumstances contemplated by the statute. Consideration of flight capacity and other concerns come into play only once other statutory countries have been considered and rejected under the governing framework, and at that point, as Plaintiffs appear to concede, it is appropriate to consider those issues in designating a third country for removal. *See id.* at 29 ("The *practical* limitations the memorandum outlines could at least arguably satisfy" the "impracticable, inadvisable, or impossible" standard) (emphasis in original).

Plaintiffs' arbitrary-and-capricious arguments fare no better. They again contend that noncitizens for whom Mexico is the country of designation will have insufficient notice to raise a fear of persecution or torture during their credible fear interview. *See* Opp. 29–30. Yet noncitizens are informed of the country of designation during their processing with CBP and are questioned regarding their fear of harm in the designated country. *See* AR (CBP Removals) 4; *see also id.* at 23–24 (officers "ask whether the individual has a fear of return to the *country of designation*") (emphasis added). Noncitizens thus are made aware that they will be removed to a third country. Having been questioned specifically about their fear of harm in the third country, noncitizens are on notice that the credible fear interview, following as it does a referral based on any professed fear of harm in the third country, may similarly focus on harm in that third country. Plaintiffs do not meaningfully argue that this is insufficient notice, only that they would prefer more explicit notice. Opp. 30. Their preference for a different formulation does not alter the fact that the existing procedures and advisals are sufficient to place noncitizens on notice of their removal to a third

country and that any fear screening may relate to harm in that third country.

Finally, Plaintiffs contend that the government gave insufficient consideration to the problem of chain refoulement in permitting removal to Mexico. Opp. 30–31. As the Departments noted, however, nothing in the statute *requires* that they consider the subsequent removal of a noncitizen to a third country following removal from the United States. Gov't Mot. 49–50. The government's statutory obligations are fulfilled by determining whether the noncitizen could be harmed in the country of removal, *see* 8 U.S.C. § 1231(b)(3)(A), and nothing in the statute requires a further inquiry into whether the noncitizen may be removed from *that* country to a third country where they may face different risks, *see id.*; *cf. id.* § 1158(a)(2)(A) (requiring, prior to entry into a safe-third-country agreement, an assessment of whether the third country allows access to full and fair procedures for asylum and protection). Plaintiffs attempt to sidestep the issue by arguing that the statute requires more, *see* Opp. 30 n.18, but they fail to quote the entirety of the withholding provision. The provision requires not only a showing of harm in "a country" to which the noncitizen would be removed, but a showing of harm "in that country" based on a protected ground. 8 U.S.C. § 1231(b)(3)(A). The possibility of removal of a CHNV national from Mexico does not qualify under the statute. *Cf.* Opp. 30 n.18 (arguing that this risk is alone sufficient to trigger withholding protection). DHS is in full compliance with its non-refoulement obligations, and further consideration of the issue Plaintiffs identify is not required by the statute.

**B.    The Withdrawal Guidance Is Lawful, and Plaintiffs Have Failed to Establish Any Withdrawal Was "Involuntary."**

Plaintiffs' challenge to USCIS's advisals is moot, *see supra* p. 6; the guidance has been superseded, and Plaintiffs concede that they do not challenge the new guidance, *see* Opp. 33. Nevertheless, the prior advisals were *not* misleading. The advisals did not purport to be exhaustive in addressing the eligibility criteria for the CHNV parole processes, and simply asserted that

leaving the United States was necessary for the noncitizen to retain eligibility to pursue parole. *See* AR (CBP Withdrawals) 6 (showing current CBP advisal). Moreover, the Notice of Rights and Advisals flagged the benefits that could be foregone by accepting voluntary withdrawal. *Id.* at 334. Although those benefits were focused on relief available to noncitizens within the United States, *see id.*, notifying the noncitizen that there may be risks associated with accepting voluntary withdrawal provided notice of further potential eligibility issues associated with parole or other benefits.

### C.   The 24-Hour Consultation Guidance Is Consistent with the Statute and Regulations, Is Not Arbitrary and Capricious, and Is Sufficiently Explained.

DHS issued guidance establishing a 24-hour minimum wait period between the noncitizen's acknowledgement of receipt of the Form M-444, Information about Credible Fear Interview, and the credible fear interview itself. *See* AR (Waiting Period) 1–3. This guidance was premised on the statutory and regulatory framework governing the credible fear process, which does not set any minimum period of time between apprehension and the credible fear interview, *see id.* at 1–2, and the change was fully explained as a matter of policy, balancing the government's interest in expeditious processing of noncitizens at the border with the noncitizens' expectation of a full and fair adjudication of any credible fear, *see id.* at 2–3.

Plaintiffs do not seriously dispute that the 24-hour minimum wait period is a permissible implementation of the statute, which itself sets no floor on the time between the start of DHS custody and the credible fear interview. *See* Opp. 31–32. Instead, they contend that deference is not warranted because this interpretation is "*unexplained.*" *Id.* at 31. Yet the interpretation is fully explained. As a statutory and regulatory matter, DHS noted that the statute does not provide any set period before the credible fear interview, and that the only guideline is that any period should not "unreasonably delay" the credible fear process. AR (Waiting Period) 1–2. As a practical matter,

20

DHS observed that setting 24 hours as the minimum wait time would, given the steps DHS would need to take prior to the credible fear interview, provide sufficient time for the noncitizen to consult with an individual of their choosing. *Id.* at 2. Finally, as a policy matter, DHS explained that the change better balanced the need for expeditious processing of noncitizens and the prompt denial of non-meritorious claims with the need for a full and fair credible fear process. *Id.* at 3.

Plaintiffs' arbitrary-and-capricious arguments fail for similar reasons. The record evinces DHS's judgment that, while it is undertaking all the steps necessary to hold the credible fear interview, the noncitizen will have enough time to consult with an individual of their choosing. AR (Waiting Period) 2. Furthermore, although the 24-hour period is the floor, most noncitizens will have more time to consult a representative prior to the credible fear interview. *Id.* at 2–3. Importantly, the functional process contemplated by the new guidance is exactly the same as what prevailed previously; the noncitizen will have exactly the same opportunity to present their claim of fear to DHS consistent with the statute and regulations. The process may begin slightly earlier, but given DHS's conclusion that noncitizens will have sufficient time to consult prior to their interview, that earlier start will not clearly affect the accuracy of the credible fear determination.

## IV.     The Relief Plaintiffs Seek Is Improper and Must be Limited.

### A.     Universal Vacatur is Unavailable and Inappropriate.

Universal vacatur of the Rule as applied in expedited removal and of the Procedures is the equivalent of class-wide injunctive relief and is not permissible under the INA or warranted in this case.[11] *First*, Plaintiffs cannot obtain universal relief because 8 U.S.C. § 1252(f)(1) precludes district courts from issuing orders that "enjoin or restrain the operation of" the covered provisions

---

[11] In the Complaint, Plaintiffs ask the Court for "[d]eclaratory, injunctive, and vacatur relief" as to the Rule and Procedures, Compl., Prayer for Relief, but on summary judgment ask only for "vacatur," Opp. 43. They have thus waived their requests for declaratory and injunctive relief.

except as to individual noncitizens. Gov't Mot. 59–60. Plaintiffs do not dispute that the Rule and Procedures fall within the covered provisions, nor do they dispute that § 1252(f)(1) precludes the Court from enjoining application of the Rule or Procedures on a class-wide basis—instead, they argue the relief they seek is different because they seek *vacatur*. Opp. 36–38.

Yet an order vacating the Rule or Procedures as to all noncitizens would function to "enjoin or restrain" the implementation of the covered provisions underlying the Rule or Procedure, and thus would impermissibly "interfere with the Government's efforts to operate" those provisions. *See Garland v. Aleman Gonzalez*, 596 U.S. 543, 551 (2022); Gov't Mot. 59–60. Plaintiffs' proposed reading of "enjoin or restrain" as referring only to orders labeled as "injunctions" and restraining orders (Opp. 37) runs contrary to—or is at least in significant tension with—the Supreme Court's broader interpretation of these terms as encompassing orders (like vacatur) that have coercive effect. Gov't Mot. 59. The heading of § 1252(f) "cannot be used to limit the plain meaning of the text." *Abuzeid v. Mayorkas*, 62 F.4th 578, 584 (D.C. Cir. 2023).

Plaintiffs do not explain how universal vacatur meaningfully differs from an injunction. Nor do they explain why Congress would have distinguished among forms of relief that have exactly the same practical effect: prohibiting agency officials from applying a rule or procedure. It does not matter that Plaintiffs disagree with the government's interpretation of the underlying statutes, Opp. 3; § 1252(f)(1) precludes orders that seek to conform the government's conduct to the court's or plaintiff's interpretation of the statute. *Aleman Gonzalez*, 596 U.S. at 552–53.

Plaintiffs' assertion that § 1252(f)(1) does not apply to challenges brought under § 1252(e)(3), Opp. 37–38, is also incorrect. The INA contains no such carve-out, and § 1252(f)(1) limits the available relief in *all* cases, "*regardless of the nature of the action or claim*." 8 U.S.C.

§ 1252(f)(1) (emphasis added).[12] Under § 1252(f)(1) Plaintiffs may seek only non-coercive relief, such as declaratory relief, which is consistent with the language of § 1252(e)(3) allowing for a "determination[]" whether any new written policy "is not consistent with applicable provisions of this subchapter or is otherwise in violation of law," *id.* § 1252(e)(3)(A)(ii), and an "order" to that effect, *id.* § 1252(e)(3)(C).[13] Further, § 1252(e)(1)(B)'s prohibition on class certification as to *any* challenges to expedited removal, including those brought under § 1252(e)(3), reinforces that Congress did not intend to allow for universal relief, like the vacatur Plaintiffs seek, as such relief would apply to an entire class of noncitizens subject to expedited removal. *See id.* § 1252(e)(3). *Contra Grace*, 965 F.3d at 907 (disagreeing with the government's position that § 1252(e)(1) is applicable in suits challenging policies and procedures as opposed to individual removal orders).

*Second*, Plaintiffs wrongly assume that universal vacatur is the *default* remedy in actions under the APA. Opp. 35; Gov't Mot. 61. *But see Texas*, 143 S. Ct. at 1980–85 (Gorsuch, J., concurring in the judgment); *Nat'l Parks Conservation Ass'n v. Semonite*, 925 F.3d 500, 501 (D.C. Cir. 2019) (per curiam) (characterizing *Allied-Signal, Inc. v. U.S. Nuclear Regul. Comm'n*, 988 F.2d 146 (D.C. Cir. 1993), as identifying vacatur as the default remedy to correct agency action). Such a categorical assertion is divorced from the specific harms and equities in a particular case and is inconsistent with Article III and traditional equitable principles. Opp. 34–38; Gov't Mot. 60–61. Plaintiffs argue that it is Defendants who must demonstrate that universal vacatur is *not* appropriate. Opp. 38. Yet this runs contrary to general principles underlying the grants of equitable relief. *See* Gov't Mot. 61, 63–65. And the D.C. Circuit has treated universal vacatur of agency action as a discretionary equitable remedy—not a remedy that is automatic or compelled. *See*

---

[12] *Grace*, cited by Plaintiffs (Opp. 38), does not control as it was based on a restrictive interpretation of § 1252(f)(1) that was rejected in *Aleman Gonzalez. Grace*, 965 F.3d at 907.

[13] In a pre-*Aleman Gonzalez* decision, the D.C. Circuit rejected the government's argument that § 1252(e)(3) limited the court to only declaratory relief. 965 F.3d at 908–09.

Gov't Mot. 60–62; *see also* 5 U.S.C. § 702(1).

 *Third*, even if vacatur were an available remedy and even if Plaintiffs could demonstrate standing and succeed on the merits, the circumstances of this case would warrant remand without vacatur. Gov't Mot. 63–65. As shown, the claimed deficiencies in the challenged practices can be remedied by additional explanation. Gov't Mot. 27–57.

 And Plaintiffs' argument that vacating the Rule and Procedures would not have disruptive consequences fails in light of the undisputed record before the Court. The Rule and Procedures incentivize use of orderly pathways over irregular entry and help ensure the consequences for failure to use those pathways remain available. And the Departments reasonably concluded, based on the rulemaking record, that further increases in the number of migrants seeking to irregularly enter the United States at its southern border would threaten to overwhelm immigration enforcement. *See* Gov't Mot. 63–65. They argue that the Rule has no impact on decisions as to how to enter, relying only on speculation and cherry-picked data about prior, markedly different rules and noncitizens not subject to the Rule. Opp. 41. It defies common sense to claim that the Rule's consequences have no meaningful effect on noncitizens' decisions regarding entry, particularly considering the overall reduction in irregular entries since the Rule's inception and the success of similar approaches. *See* Gov't Mot. 64 (citing Dkt. 53-1 ¶¶ 6–7, 30); 88 Fed. Reg. at 31,316. Contrary to Plaintiffs' assertion (Opp. 41), the pronounced increase in encounters leading up to the end of the Title 42 Order—which, if it had continued, would have "severely stressed" DHS's ability to enforce and administer immigration law, Dkt. 53-1 ¶ 8—cannot be explained away as "unique to Title 42," which had been in effect for over three years. Equally unpersuasive is Plaintiffs' conjecture that the government's foreign policy strategy and objectives would remain unaffected by vacatur of the Rule or Procedures. *See* Opp. 42. And Plaintiffs have no response to the fact that the Rule and Procedures have increased efficiency in expedited removal and thus

helped reduce the strain on immigration enforcement and ensure that the consequences for failure to use orderly pathways for entry remain effective.

On the other side of the balance, the Organizational Plaintiffs identify no comparable harms from the Rule and Procedures, claiming only that they may have had to divert resources and that they may not be able to serve as many clients. These alleged harms do not allow Plaintiffs to challenge the Rule and Procedures in the first place, *see supra* pp. 1–3, let alone compel their vacatur. And the Rule expressly takes account of Plaintiffs' concerns about migrants being exposed to dangerous conditions in Mexico. *See* Gov't Mot. 49. Nor can Plaintiffs justify vacatur on the ground that some noncitizens may be removed. Opp. 42, 43. In pursuit of the government's interest "in efficient administration of the immigration laws," *Landon v. Plasencia*, 459 U.S. 21, 34 (1982), the Rule and Procedures seek to ensure the "overall functioning of the system." 88 Fed. Reg. at 31,332; *see also* Dkt. 53-1 ¶¶ 24–25. As the Rule and Procedures still allow noncitizens to seek asylum and protection in expedited removal, the public interest would be ill-served by a vacatur that would impede the orderly administration of immigration laws at the border.

**B.     The INA Bars the Individual Relief of Vacatur of Credible Fear Determinations and Parole.**

As to the relief sought by the Individual Plaintiffs, the Court has no authority to vacate negative credible fear determinations because of 8 U.S.C. § 1252(a)(2)(A)(iii), which contains no exception to its jurisdiction-stripping provision, nor may it compel the government to issue a discretionary grant of parole. Gov't Mot. 60. And the D.C. Circuit decisions Plaintiffs cite do not address whether vacatur of the determinations or compelling a grant of parole was proper *relief* for the plaintiffs in those § 1252(e)(3) case. *See* Opp. 44–45 (citing *Grace*, 965 F.3d at 892–94).

**CONCLUSION**

For these reasons, the Court should grant the government summary judgment.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

WILLIAM C. PEACHEY
Director

EREZ R. REUVENI
Counsel

By: /s/ *Christina P. Greer*
    CHRISTINA P. GREER
    Senior Litigation Counsel
    Office of Immigration Litigation
    U.S. Department of Justice, Civil Division
    P.O. Box 868, Ben Franklin Station
    Washington, DC 20044
    Tel: (202) 598-8770
    Email: Christina.P.Greer@usdoj.gov

    PATRICK GLEN
    KATHERINE J. SHINNERS
    Senior Litigation Counsel

Dated: December 20, 2023               *Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 20, 2023, I electronically filed the foregoing document with the Clerk of the Court for the United States Court District Court for the District of Columbia by using the CM/ECF system. Counsel in the case are registered CM/ECF users and service will be accomplished by the CM/ECF system.

By: <u>/s/ Christina P. Greer</u>
CHRISTINA P. GREER
Senior Litigation Counsel
United States Department of Justice
Civil Division