BRIAN M. BOYNTON
*Principal Deputy Assistant Attorney General*
WILLIAM C. PEACHEY
*Director*
EREZ R. REUVENI
*Counsel*
CHRISTINA P. GREER
*Senior Litigation Counsel*
Office of Immigration Litigation
U.S. Department of Justice, Civil Division
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Tel: (202) 598-8770
Email: Christina.P.Greer@usdoj.gov
PATRICK GLEN
KATHERINE J. SHINNERS
*Senior Litigation Counsel*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| M.A., *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:23-cv-01843-TSC |
| | ) | |
| Alejandro Mayorkas, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' OPPOSITION TO MOTION TO INTERVENE

## TABLE OF CONTENTS

INTRODUCTION..................................................................................................... 1

BACKGROUND ..................................................................................................... 2

ARGUMENT ........................................................................................................... 5

I.      Intervention as of Right Should Be Denied. ................................................. 6

      A.      The States Lack a Concrete Interest in This Suit................................... 6

            1.      The States cannot establish standing........................................ 6

            2.      The States have not identified a significantly protectable interest ........... 10

      B.      The States' Asserted Interest in the Rule's Enforcement Is Adequately Represented by the Federal Government. ............................................. 12

II.     Permissive Intervention Should Be Denied. ................................................ 15

CONCLUSION ..................................................................................................... 18

# TABLE OF AUTHORITIES

**Cases:**                                                                                                      **Page(s)**

*Am. Immigr. Laws. Ass'n v. Reno,*
   199 F.3d 1352 (D.C. Cir. 2000) ............................................................................ 11, 17

*Arizona v. City & Cnty. of San Francisco,*
   596 U.S. 763 (2022) ................................................................................................... 10

*Arpaio v. Obama,*
   27 F. Supp. 3d 185 (D.D.C. 2014) ............................................................................... 7

*Arpaio v. Obama,*
   797 F.3d 11 (D.C. Cir. 2015) ....................................................................................... 7

*City of Cleveland, Ohio v. Nuclear Regul. Comm'n,*
   17 F.3d 1515 (D.C. Cir. 1994) ................................................................................... 11

*Clapper v. Amnesty Int'l USA,*
   568 U.S. 398 (2013) ................................................................................................... 10

*Defs. of Wildlife v. Perciasepe,*
   714 F.3d 1317 (D.C. Cir. 2013) ................................................................................... 5

*Deutsche Bank Nat. Tr. Co. v. FDIC,*
   717 F.3d 189 (D.C. Cir. 2013) ................................................................................... 15

*Diamond v. Charles,*
   476 U.S. 54 (1986) ............................................................................................... 10, 15

*Donaldson v. United States,*
   400 U.S. 517 (1971) ............................................................................................. 10, 11

*E.E.O.C. v. Nat'l Child.'s Ctr., Inc.,*
   146 F.3d 1042 (D.C. Cir. 1998) ................................................................................... 5

*East Bay Sanctuary Covenant v. Biden,*
   93 F.4th 1130 (9th Cir. 2024) ...................................................................................... 4

*East Bay Sanctuary Covenant v. Biden,*
   No. 18-CV-06810-JST, 2023 WL 4729278 (N.D. Cal. July 25, 2023) ................... 3, 13

*East Bay Sanctuary Covenant v. Biden,*
   No. 23-16032 (9th Cir. Aug. 3, 2023) .................................................................... 4, 13

*FEC v. NRA Political Victory Fund,*
   513 U.S. 88 (1994) ..................................................................................................... 17

*Florida v. Mellon*,
   273 U.S. 12 (1927) ........................................................................................ 7

*Grace v. Barr*,
   965 F.3d 883 (D.C. Cir. 2020) ................................................................... 12

*Jones v. Prince George's Cnty.*,
   348 F.3d 1014 (D.C. Cir. 2003) ............................................................ 5, 14

*Linda R.S. v. Richard D.*,
   410 U.S. 614 (1973) ...................................................................................... 8

*M.M.V. v. Garland*,
   1 F.4th 1100 (D.C. Cir. 2021) .................................................................. 17

*Make The Rd. New York v. Wolf*,
   962 F.3d 612 (D.C. Cir. 2020) ................................................................... 12

*Old Dominion Elec. Coop. v. FERC*,
   892 F.3d 1223 (D.C. Cir. 2018) ................................................................. 16

*Printz v. United States*,
   521 U.S. 898 (1997) ...................................................................................... 7

*Raines v. Byrd*,
   521 U.S. 811 (1997) ................................................................................... 6, 7

*Sure-Tan, Inc. v. NLRB*,
   467 U.S. 883 (1984) ...................................................................................... 8

*Tiffany Fine Arts, Inc. v. United States*,
   469 U.S. 310 (1985) .................................................................................... 10

*Town of Chester, N.Y. v. Laroe Ests., Inc.*,
   581 U.S. 433 (2017) .................................................................................... 15

*United States v. Texas*,
   599 U.S. 670 (2023) ........................................................................ 6, 7, 8, 9

**Federal Statutes:**

28 U.S.C. § 517 ............................................................................................ 16

8 U.S.C. § 1252(a)(2)(A) ......................................................................... 11, 17

8 U.S.C. § 1252(e) ........................................................................................ 12

8 U.S.C. § 1252(e)(3) ........................................................................... 11, 12, 17

**Other Authorities:**

*Circumvention of Lawful Pathways*,
   88 Fed. Reg. 31,314 (May 16, 2023) ........................................................................... 2

Fed. R. Civ. P. 24(a) ................................................................................................. 5

Fed. R. Civ. P. 24(a)(2) ............................................................................... 5, 10, 11, 12

Fed. R. Civ. P. 24(b) ................................................................................................ 5

## INTRODUCTION

Five States seek to intervene in this suit challenging a Rule promulgated by the Department of Homeland Security (DHS) and the Department of Justice (DOJ) (collectively, "the Departments") in May 2023, and DHS-issued guidance implementing certain procedures applicable in expedited removal proceedings ("Procedures"). The Rule imposes a condition on the discretionary grant of asylum that the Departments considered necessary to address a looming urgent situation at the southwest border. The Procedures concern other aspects of the expedited removal process, such as timelines for consultation and the provision of advisals relating to the possibility of withdrawing one's application for admission and voluntarily returning to Mexico.

Since the promulgation of the Rule and the Procedures, the federal government has vigorously defended them, including through seeking emergency relief in the Ninth Circuit to ensure the ability to continue applying the Rule despite an order vacating it. As a result, the Rule and Procedures have been in effect every day since their promulgation ten months ago, notwithstanding a number of pending legal challenges as to the Rule. Although the federal government has staunchly defended the Rule and Procedures for the last ten months—and although the States profess an interest in the maintenance of the Rule and Procedures—the States now seek to intervene, primarily because they do not believe the case should settle and want to seek discovery from Plaintiffs.

That motion should be denied. The States have not established any legally cognizable interest in the continued implementation of the Rule or the Procedures challenged in this suit sufficient to give them Article III standing to intervene, much less the significant protectable interest required to support intervention as of right. The States have not demonstrated that the federal government inadequately represents their asserted interest in maintaining the Rule or Procedures; indeed, to the contrary, the States acknowledge that the federal government has

successfully and vigorously defended the Rule for the last ten months, including seeking and obtaining a stay pending appeal to keep the Rule in place in light of the critical role the Rule continues to play. And the States' proposed intervention is precluded by numerous equitable and practical concerns, including that their intervention would undermine Congress' policy choice to give authority over the federal government's litigation to the Attorney General and Solicitor General.

## BACKGROUND

In May 2023, the Departments promulgated a Rule that conditions eligibility for a discretionary grant of asylum on migrants' using certain orderly migration pathways, absent exceptionally compelling circumstances. *See Circumvention of Lawful Pathways*, 88 Fed. Reg. 31,314 (May 16, 2023) (Rule). The Departments concluded that imposing such a condition was necessary in light of the then-imminent end of the Title 42 public health order, under which migrants without proper travel documents often were not processed into the United States but instead expelled. The Departments anticipated that the end of the public health order would occasion a significant increase in the number of migrants seeking to enter the United States at the southwest border and concluded that the Rule was necessary to encourage the use of lawful, safe, and orderly migration pathways and discourage irregular migration, which leads to the presence in the United States of many noncitizens who entered unlawfully and will be found ineligible for asylum, diverts the government's limited resources, and threatens to overwhelm the immigration system. Along with the Rule, DHS issued guidance implementing Procedures applicable in expedited removal proceedings, six of which Plaintiffs challenged. Specifically, at issue here, DHS and its subcomponents adopted Procedures: (1) allowing no fewer than 24 hours before a credible fear interview for consultation with a person of the noncitizen's choosing, *see* First Am. Compl. ¶ 109; (2) conducting credible fear interviews while noncitizens are in the custody of U.S. Customs

and Border Protection rather than Immigration and Customs Enforcement, *see id.*; (3) removing non-Mexican nationals to Mexico, *see id.* ¶ 114; (4) advising noncitizens of their ability to withdraw their application for admission and voluntarily return to Mexico, *see id.* ¶119; and (5) allegedly assigning non-asylum officer employees of U.S. Citizenship and Immigration Services to conduct credible fear interviews, *see id.* ¶ 127.[1]

Following the promulgation of the Rule and Procedures, Plaintiffs—individual noncitizens who claimed to have been subject to the Rule or Procedures and two organizations that provide legal services to noncitizens seeking asylum, First Am. Compl. ¶¶ 19–39—challenged the Rule and Procedures under the Administrative Procedure Act. In addition, the Rule was challenged in three other district court suits. In two of those suits, State plaintiffs have generally argued that the Rule's exceptions to the presumption of asylum ineligibility are impermissibly lenient. *See Indiana v. Mayorkas*, No. 1:23-cv-106 (D.N.D.); *Texas v. Mayorkas*, No. 2:23-cv-24 (W.D. Tex.).

In the third, eight other immigration advocacy organizations challenged the Rule as contrary to the statute and impermissibly harsh. *See East Bay Sanctuary Covenant v. Biden*, No. 4:18-cv-06810 (N.D. Cal.). The district court in *East Bay* granted summary judgment in plaintiffs' favor and vacated the Rule in its entirety. *East Bay Sanctuary Covenant v. Biden*, No. 18-CV-06810-JST, 2023 WL 4729278, *19 (N.D. Cal. July 25, 2023). At the government's request, however, the district court granted a 14-day administrative stay of its judgment. *Id.* The United States immediately appealed and sought a stay pending appeal in light of the tremendous disruption vacatur of the Rule would cause. Before the expiration of the administrative stay, the Ninth Circuit

---

[1] Plaintiffs' challenges to the second and fifth of these alleged procedures were held in abeyance while the rest of the case (including challenges to the other Procedures) proceeded to summary judgment briefing but preserving the Departments' right to "move to dismiss those claims." Order dated Aug. 25, 2023, ECF 30, at 1–2.

granted a stay pending appeal. *East Bay Sanctuary Covenant v. Biden*, No. 23-16032 (9th Cir. Aug. 3, 2023).

This case was filed on June 23, 2023, and the parties quickly completed summary judgment briefing: Plaintiffs' motion was filed on September 28, Defendants' opposition and cross-motion was filed on October 27, Plaintiffs' reply and opposition was filed on November 17, and Defendants' reply was filed on December 20. In addition to challenging the standing of the Individual Plaintiffs to the extent they asserted claims against Procedures that were not applied to them, the Departments challenged all Organizational Plaintiffs' assertions of standing. *See* Defs.' Cross-Mot. for Summary Judgment, ECF 53, at 13–21, 26; Defs.' Reply in Support of Cross-Mot., ECF 61, at 1–5, 8. In February 2024, the parties jointly moved for the Court to hold this case in abeyance (and concurrently filed a similar motion in *East Bay*). The parties explained that counsel "were engaged in discussions regarding implementation of the challenged Rule and related policies and whether a settlement could eliminate the need for further litigation." Stipulation dated Feb. 5, 2024, ECF 66. This Court stayed the case until further order of the Court. *See* Minute Order dated Feb. 6, 2024. The Ninth Circuit granted a similar request in *East Bay*. *East Bay Sanctuary Covenant v. Biden*, 93 F.4th 1130, 1131 (9th Cir. 2024). Because the Ninth Circuit's stay pending appeal continues while that case is in abeyance, the Rule has remained in effect since that time—as it has continuously since it first took effect in May 2023.

After this Court stayed proceedings, five States moved to intervene. At a high level, the States profess an interest in the Rule's continued implementation. The States generally speculate that the parties' requests for abeyances suggested that the federal government "cannot and will not adequately represent the Intervenor States' interests in either the litigation or the settlement negotiations." Mot. 1. Thus, the States seek leave to intervene. *See id.*

## ARGUMENT

This Court should deny the States' motion to intervene. The States primarily ask this Court to allow them to intervene as of right. *See* Mot. 9–22. And the States briefly suggest that they should also be permitted permissive intervention. *See* Mot. 22–23. Neither of those arguments has merit.

To intervene as of right, "1) the application to intervene must be timely, 2) the party must have an interest relating to the property or transaction which is the subject of the action, 3) the party must be so situated that the disposition of the action may, as a practical matter, impair or impede the party's ability to protect that interest, and 4) the party's interest must not be adequately represented by existing parties to the action." *Defs. of Wildlife v. Perciasepe*, 714 F.3d 1317, 1322–23 (D.C. Cir. 2013); *see* Fed. R. Civ. P. 24(a)(2); *Jones v. Prince George's Cnty.*, 348 F.3d 1014, 1017 (D.C. Cir. 2003) (listing the four elements of Rule 24(a) as "timeliness, interest, impairment of interest, and adequacy of representation"). In addition, an applicant seeking to intervene as of right under Rule 24(a) must possess Article III standing to participate in the lawsuit. *See Jones*, 348 F.3d at 1017. A court may grant permissive intervention where the putative intervenor "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b). In determining whether permissive intervention is appropriate, courts assess whether the putative intervenor has presented: "(1) an independent ground for subject matter jurisdiction; (2) a timely motion; and (3) a claim or defense that has a question of law or fact in common with the main action." *E.E.O.C. v. Nat'l Child.'s Ctr., Inc.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998).

Here, the States fail to demonstrate a basis for intervening. The States lack the concrete interest in this suit required by Article III and by the standard for intervention as of right. The States also cannot show that the federal government does not adequately represent their asserted interest in the Rule's enforcement and the administration of the Procedures: The federal

government has vigorously defended the Rule for the last ten months and intends to continue to do so. And the States present no cognizable or substantial equitable or practical reason to permit their participation in this suit.

I.      **Intervention as of Right Should Be Denied.**

A.      **The States Lack a Concrete Interest in This Suit.**

Intervention is designed to allow parties with a cognizable interest in the transaction or other subject of the litigation to participate in the litigation in order to ensure that their interests are not compromised in their absence. Two related doctrines require putative intervenors to demonstrate a legally cognizable interest that might be affected by the case: Article III standing and the requirement of a judicially cognizable interest for purposes of intervention. The States here have no such interest. The D.C. Circuit has held that federal programs that may increase the population of a state and the demand on its resources are insufficient to support Article III standing. Similarly, the Supreme Court has recently held that States have no cognizable interest for standing purposes in the enforcement of the immigration laws against third parties. Given that the States do not even have Article III standing, they have also failed to establish a distinct interest in the litigation as required for intervention.

1.      The States cannot establish standing.

As an initial matter, in order to intervene in this litigation, the States would be required to establish Article III standing, which includes demonstrating a "legally and judicially cognizable" injury tied to the conduct that they challenge. *United States v. Texas*, 599 U.S. 670, 676 (2023) (quotation omitted). The States' assertions about general costs resulting from a projected increase in the number of noncitizens do not constitute a "judicially cognizable" injury or a "legally protected" interest. *Raines v. Byrd*, 521 U.S. 811, 819 (1997). A State "has not suffered an injury in fact to a legally cognizable interest" when "a federal government program is anticipated to

produce an increase in that state's population and a concomitant increase in the need for the state's resources." *Arpaio v. Obama*, 27 F. Supp. 3d 185, 202 (D.D.C. 2014), *aff'd*, 797 F.3d 11 (D.C. Cir. 2015). "To accept such a broad interpretation of the injury requirement would permit nearly all state officials to challenge a host of Federal laws." *Id.*; *see also, e.g.*, *Florida v. Mellon*, 273 U.S. 12, 18 (1927) (holding that Florida lacked standing to challenge a federal inheritance tax that would cause the State financial harm by prompting the withdrawal of property from the State and diminishing the States' tax base, because any such harm was "at most, only remote and indirect").

Here, even an order vacating the Rule and Procedures—an order the Departments do not want and continue to defend against—would not directly injure the States in a legally and judicially cognizable manner. This is not a situation where the federal government has required a State to act or to refrain from acting, determined how much federal funding it receives, or deprived it of a legal right. The Rule and Procedures merely tell federal officials how to enforce and administer federal law in a field that the Constitution commits to the federal government. The indirect effects of those actions on States do not qualify as "legally" and "judicially cognizable" injuries. *Raines*, 521 U.S. at 819. In our federal system, policies regulating people within a State will inevitably have derivative effects on the State's exercise of its own governmental powers. But the autonomy of the national and state sovereigns, acting directly upon individuals "within their respective spheres," *Printz v. United States*, 521 U.S. 898, 920 (1997) (citation omitted), refutes the notion that a State has a judicially cognizable interest in avoiding the indirect effects of federal policies.

The Supreme Court's recent decision in *Texas*, 599 U.S. 670, reinforces the conclusion that the States have no cognizable interest in the resolution of this case. In brief, the Rule's direct effect is to impose a presumption of asylum ineligibility on certain noncitizens in the exercise of the Executive's discretion and thereby potentially subject those noncitizens to removal, including expedited removal, if appropriate. The Procedures apply to the processes DHS employees follow

during expedited removal proceedings. Third parties—including the States—have no "judicially cognizable interest in the prosecution or nonprosecution of another." *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973). An entity that does not face prosecution "lacks standing to contest the policies of the prosecuting authority." *Id.* An entity similarly has "no judicially cognizable interest in procuring" or preventing "enforcement of the immigration laws" against someone else. *Sure-Tan, Inc. v. NLRB*, 467 U.S. 883, 897 (1984).

In *Texas*, the Supreme Court applied those principles to hold that two States lacked standing to challenge the Executive's immigration enforcement priorities. *See Texas*, 599 U.S. at 676. In so holding, the Court rejected the States' argument that they had standing because, for example, the States might spend money on incarceration and social services for "noncitizens who should be (but are not being) arrested by the Federal Government." *Id.* at 674. The Supreme Court held that the States' asserted injury, which flowed from the Executive's exercise of immigration enforcement discretion against third parties, did not overcome the rule of *Linda R.S.* and *Sure-Tan* that no one, including a State, has standing to challenge the exercise of enforcement discretion against others. *See id.* at 676–78. Although the Court did not resolve whether the analysis might be different in a challenge to a policy involving "legal status" or "benefits," *id.* at 683, the same result should follow. A third party, including a State, has no legally cognizable interest in the granting or denial by the federal government of immigration benefits to an individual, much less the procedures followed. And as in *Texas*, the potential downstream effect that a State might expend more on state programs in response does not overcome that barrier to standing.

The principles just described squarely preclude the States' claim to standing—and, a fortiori, their claim to an interest sufficient to support intervention, regardless of whether this Court accepts the federal government's arguments that the Organizational Plaintiffs lack standing entirely and that some of the Individual Plaintiffs lack standing as to certain of the Procedures. *See*

Defs.' Cross-Mot. for Summary Judgment, ECF 53, at 13–17, 26. Like the States in *Texas*, the States here claim an interest in the continued implementation of a discretionary immigration enforcement policy on the basis that any reversal of the policy would cause the States to make additional expenditures—"provid[ing] government resources" to noncitizens and "incurring administrative" and "compliance" costs. Mot. 14. But like the States in *Texas*—a decision movants cite for support but do not attempt to distinguish—the States here cannot leverage the incidental, downstream effects of enforcement policies directed at third parties that may lead the States to make additional expenditures to create standing for the States. Furthermore, even though the pleadings in this case discuss the Procedures in detail, the States entirely fail to explain why they believe they have any interest in the implementation of those Procedures. *See generally* Mot.

Nor can the States evade the bedrock principles just described by asserting a purported interest in avoiding a loss in "political representation and federal funding" if more noncitizens enter and eventually settle in "New York, Illinois, California, and Colorado" in advance of the 2030 census. Mot. 15–16. That asserted interest likewise runs headlong into the core premise of *Texas*: that States (and other third parties) cannot assert any cognizable injury from the downstream effects of Executive enforcement decisions.

In addition, the States' claimed interest in avoiding a loss of "[p]olitical representation" following the 2030 census, Mot. 16, is impermissibly attenuated and speculative. The States' theorized chain of causation includes that the federal government will cease implementing the Rule (despite its vigorous defense to date); that there will be a resulting increase in noncitizens entering the country who will settle disproportionately in States other than the movant States; that the disproportionate nature of those hypothetical future settlement patterns will be sufficiently large and sustained to result in a material difference in the census count six years from now; and that the material difference will happen to result in one or more of the movant States losing a seat in the

House of Representatives. Each of the links in that "highly attenuated chain of possibilities" is speculative; together, they manifestly fail to "satisfy the requirement that threatened injury must be certainly impending," *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013)—notwithstanding the States' unadorned assertion that these concerns are "not speculative," Mot. 16.

Finally, it is difficult to envision how any of the States' projected injuries could result from any potential settlement in this case. The States' theory is that they will be harmed by increased numbers of noncitizens if the Rule does not remain in place. Mot. 12–17. But for this asserted harm to materialize, the Departments would have to somehow agree to amending or rescinding the Rule, which cannot happen through settlement, as the States note. *See* Mot. 18 (citing *Arizona v. City & Cnty. of San Francisco*, 596 U.S. 763, 765 (2022) (Roberts, C.J., concurring)). Again, the States present a "highly attenuated chain of possibilities" that is insufficient to support standing. *Clapper*, 568 U.S. at 410.

2.       The States have not identified a significantly protectable interest

Relatedly, to support a request for intervention as of right, a prospective intervenor needs to demonstrate, among other things, a "significantly protectable interest" at stake in the litigation. *Donaldson v. United States*, 400 U.S. 517, 531 (1971); *see also* Fed. R. Civ. P. 24(a)(2). As the Supreme Court has made clear, that barrier requires that a prospective intervenor do more than articulate some asserted harm or interest related to the action; instead, the intervenor must demonstrate that the interest in question is "legally protectible." *Tiffany Fine Arts, Inc. v. United States*, 469 U.S. 310, 315 (1985); *see Diamond v. Charles*, 476 U.S. 54, 75 (1986) (O'Connor, J., concurring in part and concurring in the judgment) ("Clearly, *Donaldson*'s requirement of a 'significantly protectable interest' calls for a direct and concrete interest that is accorded some degree of legal protection."); *City of Cleveland, Ohio v. Nuclear Regul. Comm'n*, 17 F.3d 1515,

10

1517 (D.C. Cir. 1994) ("The rule impliedly refers not to any interest the applicant can put forward, but only to a legally protectable one."). The Supreme Court has made clear that satisfying that standard requires a substantially more direct interest than does Article III and that indirect financial harms—like those claimed by the States—do not suffice. Additionally, the States do not have any interests under the review scheme implicated here.

Thus, for example, in *Donaldson*, the government sought to enforce administrative summonses issued by the Internal Revenue Service to Donaldson's former employer and its accountant for records related to Donaldson's tax liability. 400 U.S. at 518–20. The Supreme Court rejected Donaldson's argument that he could intervene in that suit as of right. Even assuming that the employer's and accountant's disclosure of records potentially establishing Donaldson's tax liability surely would have injured him as a factual matter in an Article III sense, the Court concluded that Donaldson's claimed interest "cannot be the kind contemplated by Rule 24(a)(2)" because it was not independently legally protected. *See id.* at 530–31.

Moreover, the States do not have a legally protectable interest in the focus of the challenges at the core of this suit—the Departments' adoption of policies and procedures relating to credible fear and the expedited removal system—because they are entirely excluded from the special judicial review scheme for such policies and procedures. Specifically, 8 U.S.C. § 1252(a)(2)(A) bars judicial review of "procedures and policies adopted . . . to implement" the expedited removal provisions. Although 8 U.S.C. § 1252(e)(3) restores narrow jurisdiction to consider very specific claims under very specific circumstances, such suits may only be brought by noncitizens—not advocacy organizations or States. *See Am. Immigr. Laws. Ass'n v. Reno*, 199 F.3d 1352, 1359 (D.C. Cir. 2000) (finding no jurisdiction to consider suit brought by organizations seeking third-party standing, stating "[f]rom all we can gather, Congress must have contemplated that lawsuits challenging [actions] would be brought, if at all, by individual aliens who—during the sixty-day

period—were aggrieved by the statute's implementation"); *Make The Rd. New York v. Wolf*, 962 F.3d 612, 628 (D.C. Cir. 2020) (explaining that organizations suing on behalf of individual noncitizens invoking an associational standing theory of Article III injury may sue under section 1252(e)(3)); *see also Grace v. Barr*, 965 F.3d 883, 891 (D.C. Cir. 2020) (section 1252(e) covers "agency [regulations or] policies governing credible-fear interviews"). Given that the States are not contemplated within this narrowly tailored review scheme, they cannot have a legally protectable interest in this suit.

The States' claimed interest in this litigation stems from their assertions that, if the government were to stop defending or implementing the Rule, they would experience various downstream economic and "political" impacts. (The States make no mention of the projected impact of any failure to defend the Procedures.) As explained, those asserted concerns are noncognizable and overly speculative and cannot support even Article III standing let alone establish a legally protected interest under Rule 24(a)(2)'s standard. The motion thus fails for this reason as well.

### B.    The States' Asserted Interest in the Rule's Enforcement Is Adequately Represented by the Federal Government.

Regardless, the States have not demonstrated that their interests are not "adequately represent[ed]" by the federal government as required to obtain intervention as of right. The federal government has continuously and vigorously defended the Rule and Procedures and has secured their ongoing implementation through seeking a stay of proceedings.

In attempting to make the necessary showing, the States identify their interest as one "in maintaining the Rule" (without mentioning the Procedures). Mot. 15. But—as the States themselves acknowledge—the federal government has "vigorously defended the Rule." Mot. 17. As the federal government's filings in this case and in *East Bay* reflect, the federal government

has repeatedly defended the legality of the Rule and Procedures, both substantively and procedurally, and has explained the extreme negative consequences to federal immigration policy that any vacatur of the Rule and Procedures would occasion.

That vigorous defense has produced substantial results. Although various plaintiffs have brought at least four lawsuits challenging the Rule, none of those suits has produced a preliminary injunction of the Rule. And *East Bay* is the only one that has proceeded to a final judgment. Although the *East Bay* district court vacated the Rule, the federal government requested—and the district court provided—a 14-day administrative stay of that vacatur to permit the federal government to seek emergency relief. *East Bay Sanctuary Covenant v. Biden*, No. 18-CV-06810-JST, 2023 WL 4729278, *19 (N.D. Cal. July 25, 2023). The United States immediately appealed and obtained a stay pending appeal before the expiration of the 14-day administrative stay; and before the expiration of the administrative stay, the Ninth Circuit granted a stay pending appeal. *East Bay Sanctuary Covenant v. Biden*, No. 23-16032 (9th Cir. Aug. 3, 2023).

Thus, the Rule—along with the Procedures not at issue in *East Bay*—has remained in effect every day since it initially took effect in May 2023, in part because the federal government has vigorously defended the Rule and sought emergency relief when required in order to maintain the Rule's implementation. The movant States do not dispute any of that; indeed, they acknowledge the federal government's vigorous defense of the Rule. Instead, the States suggest that because the federal government and Plaintiffs sought a stay of this suit (and of *East Bay*) pending settlement discussions, the federal government has "effectively stopped" defending the Rule. Mot. 8.

That suggestion is unfounded. As explained, because of the stay pending appeal in *East Bay*, the Rule remains in effect while the appeal in that case is in abeyance. And since this Court has not issued any orders impacting the Procedures, those also remain in effect during the stay of

these proceedings. Thus, so long as the two cases remain in abeyance or stayed, the Rule and Procedures will remain in effect; that is exactly the outcome that the moving States desire.

In addition to their concerns about settlement negotiations, the States' main argument centers around their belief that the Departments should have sought discovery into Plaintiffs' standing. *See* Mot. 18 ("At a minimum, the case should proceed to discovery to probe the factual basis for the Plaintiffs' standing and then the motions for summary judgment can be litigated."). But "[a] mere difference of opinion concerning the tactics with which litigation should be handled" does not amount to inadequate representation. *Jones*, 348 F.3d at 1020. This case certainly represents different tactical considerations than cases where only States or organizations have sued based on alleged indirect effects on population and spending, because here, individual noncitizens who were subject to the Rule have also sued. Further, to the extent Plaintiffs are concerned with Defendants' decision to proceed with summary judgment without taking jurisdictional discovery, their intervention request is untimely, as that decision was evident at least as of August 25, 2023, when the parties filed their proposed schedule to proceed on cross-motions for summary judgment on the administrative record.

Regardless, the Departments' engaging in "discussions regarding *implementation* of the challenged rule and related procedures," *see* Stipulation dated Feb. 5, 2024, ECF 66 (emphasis added)—with or without jurisdictional discovery—would inure to the States' benefit. If the Rule can be "implemented" in a way that continues to protect the federal government's paramount interests while also addressing at least some discrete concerns of the Plaintiffs, they might agree to resolve this case and *East Bay*, allowing the litigation to be terminated on terms agreeable to both the federal government and the States. The States' speculation that the ongoing discussions, to which they are not privy, have taken a different course than the parties represented to this Court provides no basis for presuming that the United States will fail to look out for the interests of the

United States and the putative intervenors as well in "reducing irregular migration and channeling migrants to orderly pathways." Defs.' Cross-Mot. for Summary Judgment, ECF 53, at 33. The federal government intends to continue defending the Rule and Procedures, and nothing in the States' motion supports a contrary conclusion.

## II.    Permissive Intervention Should Be Denied.

As explained, the States have no substantial interest in this suit, which concerns the Executive's implementation of discretionary immigration enforcement policies and procedures over which the federal government—not the States—has sole authority. Allowing the States to nevertheless intervene would raise substantial practical and equitable concerns that should preclude their participation in this suit.

First, as discussed above, *see supra* pp. 6–10, the States cannot establish Article III standing. If the Court were to permit intervention despite a lack of standing, "then any organization or individual with only a philosophic identification with a defendant—or a concern with a possible unfavorable precedent—could attempt to intervene and influence the course of litigation." *Deutsche Bank Nat. Tr. Co. v. FDIC*, 717 F.3d 189, 195 (D.C. Cir. 2013) (Silberman, J., concurring) (stating that a party seeking permissive intervention must establish standing).

Regardless, where, as here, an intervenor would "seek[] additional relief beyond that which the" parties seek, "an intervenor of right must demonstrate Article III standing." *Town of Chester, N.Y. v. Laroe Ests., Inc.*, 581 U.S. 433, 439 (2017); *see also Diamond*, 476 U.S. at 68 (When an intervenor seeks to "continue a suit in the absence of the party on whose side intervention was permitted," the intervenor must demonstrate its own standing.). *Compare* Mot. 1 (alleging that the Departments are no longer "vigorously defending the Rule"). The same logic applies to permissive intervenors: "For all relief sought, there must be a litigant with standing," *Laroe Ests.*, 581 U.S. at 439, regardless of how that litigant joins the suit. *See Old Dominion Elec. Coop. v. FERC*, 892

F.3d 1223, 1232 (D.C. Cir. 2018) ("Intervenors become full-blown parties to litigation, and so all would-be intervenors must demonstrate Article III standing."). The States here do not intend merely to participate in the litigation as the parties have formulated it—which they could in any event have done as amicus—but rather seek to intervene "to participate in [settlement] discussions" given their "serious concerns about why the Defendants desire to settle this case with improper Plaintiffs." Mot. 11. Specifically, they "do not believe this case should settle" and that it should instead "proceed into discovery because Defendants[] dispute the Plaintiffs' standing."[2] *Id.* Given the States' stated intent to continue defending the Rule in the absence of the federal government given their belief that the federal government may not do so, they seek to continue this suit in the absence of the proper Defendants and thus must demonstrate standing—which they cannot demonstrate.

Second, permitting intervention here would undermine the authority that Congress has placed in the Executive Branch to conduct litigation. The States' primary apparent justification for intervening would be to permit them to continue the case so as to defend the Rule and Procedures if the federal government were (contrary to all indications) to stop defending it. But it would be inappropriate to permit third parties—and especially third parties with such a marginal interest in the suit—to intervene in that (hypothetical) situation. By statute, the "Solicitor General" and other "officer[s] of the Department of Justice" as the Attorney General may direct have responsibility for "attend[ing] to the interests of the United States" in the courts. 28 U.S.C. § 517. As the Supreme Court has explained, vesting this authority in the Attorney General and Solicitor General "represents a policy choice by Congress." *FEC v. NRA Political Victory Fund*, 513 U.S. 88, 96

---

[2] Despite stating that they are seeking to intervene only as Defendants and disclaiming any plans to bring any counterclaims, the States suggest that they may have crossclaims given their lack of interest in preserving the Rule's exceptions. *See* Mot. 19–20.

(1994). There is certainly no basis to permit the States to intervene and seek to peremptorily usurp this authority, especially at this time, when there is no indication that the federal government intends to take any action that might be contrary to the States' interests in the ultimate outcome of this litigation.

Third, and finally, permitting intervention in this suit would undermine Congress's demonstrated intent to expedite and significantly limit judicial review of expedited removal policies and procedures. As explained at length in the Departments' summary judgment pleadings, the Immigration and Nationality Act curtails judicial review of agency actions implementing the expedited removal system—such as the Procedures and the Rule's provisions relating to credible fear proceedings. *See* Defs.' Cross-Mot. for Summary Judgment, ECF 53, at 17-19; Defs.' Reply in Support of Cross-Mot., ECF 61, at 4. Indeed, the jurisdictional provisions start by barring all review, 8 U.S.C. § 1252(a)(2)(A), and then restore jurisdiction to consider very specific claims under very specific circumstances. Specifically, a noncitizen (but no one else) may (1) challenge the constitutionality or legality of a regulation relating to expedited removal or the legality (but not constitutionality) of a "written policy directive, written policy guideline, or written procedure" relating to expedited removal, (2) within 60 days of the regulation's, policy's, or procedure's first implementation (not its application to the noncitizen), (3) in a suit brought in this Court (and no other). *See* 8 U.S.C. § 1252(e)(3); *Am. Immigr. Laws. Ass'n*, 199 F.3d at 1357–58 (describing the review scheme and affirming district court decision prohibiting the addition of noncitizen plaintiffs in an amended complaint filed more than 60 days after the challenged policy was first implemented); *M.M.V. v. Garland*, 1 F.4th 1100, 1111 (D.C. Cir. 2021) (prohibiting joinder of noncitizens after the 60-day period). These provisions clearly demonstrate Congress's intent to circumscribe the parties who may initiate suits challenging such policies and procedures. Allowing

the States to intervene in such a suit here would frustrate the purpose of this carefully constructed

review scheme, and introduce numerous additional legal issues not presently part of this suit.

## CONCLUSION

For the foregoing reasons, the Court should deny the motion to intervene.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

WILLIAM C. PEACHEY
Director

EREZ R. REUVENI
Counsel

By: /s/ *Christina P. Greer*
CHRISTINA P. GREER
Senior Litigation Counsel
Office of Immigration Litigation
U.S. Department of Justice, Civil Division
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Tel: (202) 598-8770
Email: Christina.P.Greer@usdoj.gov

PATRICK GLEN
KATHERINE J. SHINNERS
Senior Litigation Counsel

Dated: March 21, 2024                          *Attorneys for Defendants*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on March 21, 2024, I electronically filed the foregoing document with the Clerk of the Court for the United States Court District Court for the District of Columbia by using the CM/ECF system. Counsel in the case are registered CM/ECF users and service will be accomplished by the CM/ECF system.


By: <u>*/s/ Christina P. Greer*</u>
      CHRISTINA P. GREER
      Senior Litigation Counsel
      United States Department of Justice
      Civil Division