UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **M.A.**, *et al.* <br><br> Plaintiffs, <br><br> v. <br><br> **KRISTI NOEM**, *et al.*, <br> Secretary of Homeland Security,[1] <br><br> Defendants. | Civil Action No. 23-cv-1843 |

## OPINION AND ORDER

The States' Motion to Intervene is **DENIED**. Mot. to Intervene as Defs. at 1–24, ECF No. 67 ("Mot."). To intervene as of right, the States must show: 1) the motion is timely; 2) a legally protected interest; 3) that the action, as a practical matter, impairs or impedes that interest; and 4) that no party can adequately represent it. Fed. R. Civ. P. 24(a). At the outset, the court must assess whether the States have Article III standing to seek intervention. *Crossroads Grassroots Pol'y Strategies v. Fed. Election Comm'n*, 788 F.3d 312, 316 (D.C. Cir. 2015). They do not.

The States' two-page theory of standing does not show that harm is concrete or imminent. Mot. at 21–22; *Crossroads Grassroots Pol'y Strategies*, 788 F.3d at 316 ("The standing inquiry for an intervening-defendant is the same as for a plaintiff: the intervenor must show injury in fact, causation, and redressability." (citation omitted)). The States argue that if the challenged Rule is vacated in any form, additional migrants may cross the border and enter their territories, causing the States to incur more public education and medical benefit costs, to face administrative

---

[1] Under Federal Rule of Civil Procedure 25(d), the court updates the caption of this opinion and order to reflect the current Secretary of Homeland Security.

difficulties in rationing other benefits they cannot provide, and to risk losing congressional representation in the 2030 census should those migrants disproportionately settle. *See* Mot. at 16, 21–22.

As the Supreme Court recently observed in holding that two states lacked standing to challenge the Executive's immigration enforcement priorities, "federal policies frequently generate indirect effects on state revenues or state spending." *United States v. Texas*, 599 U.S. 670, 680 n.3 (2023). But when a state asserts that a federal law, or vacatur thereof, will produce "*only* those kinds of indirect effects, the State's claim for standing can become more attenuated." *Id.* (emphasis added). That is the case here. The States proffer no evidence supporting their implicit assumption that, if the challenged Rule is vacated, migrants will make the "complex decision[]" to risk "life and limb" to cross the border and settle into their territories. *Arpaio v. Obama*, 797 F.3d 11, 21 (D.C. Cir. 2015); Andrew Arthur Decl. ¶¶ 50–57, ECF No. 67-1 (showing only that noncitizens will migrate in response to changes in federal immigration policy, not that they will venture to the states themselves). Under their theory, any federal policy affecting immigration, not just the challenged Rule here, could risk the States' increased education and medical benefit costs. *Arpaio v. Obama*, 27 F. Supp. 3d 185, 202 (D.D.C. 2014), *aff'd*, 797 F.3d 11 (D.C. 2015) (a state does not suffer an injury in fact when a "federal government program is anticipated to produce an increase in that state's population and a concomitant increase in the need for the state's resources"). Moreover, the States cannot rest their purported harm on a census, five years in the future, and its potential effect on their political representation. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013) (a "threatened injury must be certainly impending").

Date: July 25, 2025

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge