**SUPPLEMENTAL DECLARATION OF JAVIER HIDALGO,
THE REFUGEE AND IMMIGRANT CENTER FOR
EDUCATION AND LEGAL SERVICES (RAICES)**

I, Javier Hidalgo, pursuant to 28 U.S.C. § 1746, declare as follows:

1. I make this declaration based on my personal knowledge except where I have indicated otherwise. If called as a witness, I could and would testify competently and truthfully to these matters.

2. I incorporate my original Declaration in Support of Plaintiffs' Motion for Summary Judgment (Dkt. 37-3) as if fully set forth herein.

3. I am a Legal Director at the Refugee and Immigrant Center for Education and Legal Services (RAICES). I joined RAICES in 2018 and have served in my current role since 2023. Before I assumed my current position I worked as a unit director, supervisor, and previously, as a staff attorney. In my role as Legal Director, I work closely with Asylum Access Services (formerly known as the Pre-Removal Services team) and oversee that program's work, which (among other things) serves people facing expedited removal from the United States and people seeking asylum and related protection.

4. RAICES is a 50l(c)(3) nonprofit, non-partisan organization headquartered in San Antonio, Texas. RAICES's mission is to defend the rights of immigrants and refugees; empower individuals, families, and communities of immigrants and refugees; and advocate for liberty and justice. This mission encompasses striving to ensure access to asylum and protection for noncitizens, including those arriving at the border and subject to expedited removal. RAICES provides free and low-cost immigration legal services to underserved immigrant children, families, and individuals. RAICES also conducts social services programming for immigrants, engages in advocacy work, and provides bond assistance to individuals seeking release from custody of the

Department of Homeland Security (DHS). To execute our mission, we strive to serve as many noncitizens as possible through our various avenues of work.

5.  As discussed in detail below and in my original declaration, RAICES has and will continue to experience substantive harm under the Circumvention of Lawful Pathways Rule (CLP or Rule) issued by DHS and the Department of Justice (DOJ). The Rule directly affects and interferes with RAICES' core work. Most notably, two aspects of the Rule impede our fundamental day-to-day work of representing noncitizens with protection needs. Those aspects of the Rule are (a) the suspension of asylum eligibility for virtually all non-Mexican noncitizens who sought entry without a prescheduled appointment between May 11, 2023 and May 11, 2025, and (b) the heightened screening standards that apply to individuals subjected to the Rule.

6.  The other policies we challenge also interfere with RAICES's core work. Defendants' third-country expedited removal policy and the reduction of the consultation time before a credible fear interview (CFI) from at least 48 to as little as 24 hours have directly impaired our ability to represent people in expedited removal proceedings (and the credible fear process).

### Overview of RAICES' Work

7.  Founded in 1986 as the Refugee Aid Project by community activists in South Texas, RAICES has grown to be the largest immigration legal services provider in Texas. With offices in Austin, Corpus Christi, Dallas, Houston, and San Antonio, RAICES is a frontline organization that combines expertise developed from the daily practice of immigration law with a deep commitment to advocacy. Its staff includes nearly 130 people, including attorneys, legal assistants, advocates, and support staff.

8.  Since RAICES's founding, its staff, volunteers, and pro bono and low-bono attorneys have counseled and represented thousands of noncitizens throughout Texas. RAICES

offers a wide array of legal services. That includes filing "affirmative" asylum applications, which can be submitted to U.S. Citizenship and Immigration Services (USCIS) by noncitizens who are not in removal proceedings. It also includes representing noncitizens—including adults, children, and families—in regular removal proceedings under 8 U.S.C. § 1229a and in bond proceedings before the Executive Office for Immigration Review (EOIR), both in immigration court and before the Board of Immigration Appeals (BIA). In regular proceedings, which are defensive proceedings, we represent people seeking (among other forms of relief from removal) asylum, withholding of removal, and protection under the Convention Against Torture (CAT). RAICES's defensive legal representation also continues into the federal courts, where we have represented clients before the United States Court of Appeals for the Fifth Circuit.

*RAICES' Work with Individuals Facing Expedited Removal and the Credible Fear Process*

9. RAICES also provides services to hundreds of people in expedited removal proceedings each year, including those assessed for protection through the credible fear screening process. Our Asylum Access Services team is most involved in our work serving individuals facing expedited removal. The team represents detained individuals in the expedited removal process. That team now consists of a managing attorney, one senior attorney, two staff attorneys, a DOJ accredited representative, four legal assistants, and three data entry clerks. When fully staffed, the team also includes a supervising attorney. We currently operate hotlines specifically for individuals detained at the Dilley Immigration Processing Center, in Dilley, Texas and the Karnes County Immigration Processing Center in Karnes, Texas, as well as individuals detained in CBP facilities who are subject to enhanced expedited removal.

10. In addition to these hotlines, in 2023 we added our hotline number to a list distributed by EOIR to asylum seekers who are required to undergo their CFI while in CBP

custody. We also post signup sheets in Immigration and Customs Enforcement (ICE) detention centers and receive referrals from both the family members of detained people and other nongovernmental organizations.

11.     In 2024, the Asylum Access Services team provided services to at least 825 individuals in expedited removal proceedings, an average of more than 15 different people served each week. Since the Rule took effect on May 12, 2023, the Asylum Access Services team has seen hundreds of clients and potential clients adversely affected by the Rule and the related policy changes.

*RAICES' Work with Asylum Seekers in Full Removal Proceedings and before USCIS*

12.     Other teams at RAICES serve asylum seekers who are appearing in full removal proceedings under 8 U.S.C. § 1229a and those who are applying affirmatively before USCIS.

13.     At present RAICES has 57 clients who have filed affirmative applications for asylum. This is the core work of a team made up of 20 lawyers. The number of new clients in this pool has dramatically decreased, however.

14.     RAICES's immigration court representation is also heavily focused on people seeking asylum and related forms of protection. RAICES represents individuals in the immigration courts in Dallas, TX; Houston, TX; San Antonio, TX; and other immigration courts via webex. We have approximately 250 pending cases. A substantial portion of our clients in immigration court are seeking asylum, and many of them entered in the time period where CLP was operative, which means that they will have to overcome the bars CLP imposes.

**The Rule Harms RAICES and Interferes With Our Ability to Continue Our Work**

15.     The Rule and the other policies challenged in this suit have directly impacted and interfered with RAICES' core activities of counseling and representing noncitizens in expedited

removal proceedings and providing representation to clients seeking asylum affirmatively and in immigration court proceedings—and they will continue to have these effects if they remain in place. As a result, we are not able to take on as many asylum cases per staff member as we were pre-CLP.

16. The Rule ceased applying to new entrants on May 11, 2025, and was not extended. Despite that, the Rule continues to bar asylum to thousands of refugees who crossed the border into the United States between May 11, 2023, and May 11, 2025. Therefore, we must continue to screen potential affirmative and defensive asylum clients to determine if they are covered by CLP. This will only exacerbate the current drain on our limited resources and detrimental impact on our ability to provide representation to asylum seekers facing removal. If the Rule is allowed to stand, it will continue to interfere with our ability to effectively represent clients for years to come. As explained below, it will also continue to limit the number of clients we can represent, both on affirmative asylum applications and in removal proceedings in immigration court.

17. Nearly all of RAICES's clients enter the United States via the U.S.- Mexico land border; most are from countries other than Mexico; and many enter between ports of entry. None of RAICES's clients have been able to seek lasting protection in Mexico or another transit country.

18. Specifically in connection with our affirmative asylum work, the Rule severely interferes with our ability to represent noncitizens who entered between May 2023 and May 2025—a population that includes a large number of people who could otherwise seek and receive asylum.

19. The Rule prevents us from representing as many clients as we could otherwise—both in affirmative asylum and immigration court proceedings—because CLP cases are more complex and time-sensitive than typical asylum cases, requiring additional investigation and legal

5

research. For example, to assess whether clients are eligible for any of the exceptions under the Rule, our attorneys must conduct intensive fact-finding as it pertains to the applicants' situation in Mexico and in transit countries, all on top of the fact-finding that is relevant as to the client's home country. That additional work would otherwise be unnecessary to determine eligibility for asylum.

20. Specifically, for clients subject to the Rule, RAICES attorneys must collect additional evidence, including medical records, proof of harm in Mexico and in other transit countries (such as police reports), and letters of support going specifically to the Rule's applicability. Because most of the relevant documents are located abroad, attorneys require additional time to collect evidence and assess clients' eligibility for the Rule's exceptions. Evidence of harm in third countries is often impossible to obtain because most clients have no ties to these countries and no ability to participate in this document collection. Witnesses are typically unreachable because the clients, who almost invariably were in the relevant country for only a short time, often do not have their contact information or know their last names. The added cost of providing English translation can place the cost of legal representation out of reach for some clients.

21. In immigration court proceedings, the need to provide evidence as to these additional factors means our attorneys must often ask for continuances, which prolongs proceedings and drains attorney resources that would otherwise be used to represent additional clients. The increased work necessary for CLP cases cuts into our attorneys' capacity, which has forced RAICES to take on fewer clients and interfered with our mission to provide asylum representation and removal defense to as many immigrants as possible. Given all these factors, many of the clients whom we would have previously assisted in seeking asylum are no longer eligible for that relief under the Rule. As a result, those in immigration court proceedings must

focus on seeking withholding of removal and protection under the CAT—claims that are subject to a higher evidentiary standard than asylum, are more time-intensive to pursue, and are tougher to win than asylum claims. These claims also do not allow derivative family members to be included in the principal applicant's case, which means every family member must include their own application. These complicated claims require additional attorney time, preventing us from representing additional clients in removal proceedings.

22. The additional complexity and higher burdens of proof associated with withholding and CAT claims also mean that the number of RAICES cases requiring appeals to the Board of Immigration Appeals and petitions to the Fifth Circuit Court of Appeals will increase. The consequent diversion of resources to handle complex appeals will further impede RAICES's ability to accept new cases and carry out our work of effectively representing clients in securing asylum affirmatively and before immigration judges.

23. As I discussed in my prior declaration, we have also had to redirect resources to train staff who did not previously represent asylum seekers on the Rule and the related policies so that they could effectively advise and advocate for our clients. These diversions of staff time and resources forced our staff to take time away from other core activities.

24. In addition to the impact of the Rule on our affirmative asylum and EOIR practices, the 24-hour CFI consultation period and the third-country expedited removal policy will continue to impede RAICES' ability to provide representation to people in expedited removal. While the Rule is no longer being applied in credible fear interviews for individuals arriving at the border, the government is now detaining and placing into expedited removal proceedings large numbers of people who are already in the affirmative asylum process and immigration court proceedings. This includes people who cannot prove to DHS's satisfaction that they have been in the United

States continuously for two years. Those who express a fear of persecution or a desire to seek asylum should be referred for CFIs. However, most people who entered the United States within the last two years are subject to the Rule's presumption against asylum eligibility and to heightened evidentiary standards. The 24-hour CFI consultation period and the third-country expedited removal policy also apply to this population newly subject to expedited removal (as well as more recent entrants placed into expedited removal proceedings).

25. The reduction of the pre-CFI consultation time to as little as 24 hours will interfere with our ability to represent people in the expedited removal process. This restriction means that many people do not have enough time to reach us before their CFI. As I discussed in my prior declaration, there are numerous reasons why holding CFIs in custody after a reduced 24-hour consultation period fundamentally disrupts our ability to do our work.

26. Whether our staff are providing representation at a CFI or an immigration judge review, they must spend significant time preparing arguments that our clients meet an exception to the asylum bar.

27. Additionally, with increasing frequency, the government is attempting to remove people to countries other than their countries of origin. This means that in addition to advising and preparing them to speak about the Rule's exceptions and their asylum claims, RAICES attorneys must also assess whether they face harm in one or more additional countries and advise and prepare them accordingly.

28. The Rule's application has drained our resources and substantially reduced the number of noncitizens we can represent in either expedited removal or full removal proceedings before the immigration court.

## **CONCLUSION**

29. Overall, the Rule and the related policies, together and independently, directly interfere with RAICES core activities because they severely restrict our ability to effectively serve people facing removal and denial of protection. In short, the Rule is making it nearly impossible for us to serve our client population.

I hereby declare under penalty of perjury that the foregoing is true and correct.

_____
Javier Hidalgo

Executed on the 14th day of August 2025 in San Antonio, Texas.